# COVINGTON & BURLING LLP

620 EIGHTH AVENUE
NEW YORK, NY 10018
TEL 212.841.1000
FAX 212.841.1010
WWW.COV.COM

NEW YORK
WASHINGTON, DC
SAN FRANCISCO
LONDON
BRUSSELS

February 11, 2008

*By Hand*

Honorable William H. Pauley
United States Courthouse
500 Pearl Street, Room 2210
New York, New York 10007

Re: *Segatt v. GSI Holdings Corp. et al.*, 07 CV 11413 (WHP)

Dear Judge Pauley:

I represent defendants Charlesbank Equity Fund V, Limited Partnership ("CB Fund V"), CB Offshore Equity Fund V, L.P., Charlesbank Equity Coinvestment Fund V, Limited Partnership, Charlesbank Coinvestment Partners, Limited Partnership, Charlesbank Equity Fund V GP, Limited Partnership, and Charlesbank Capital Partners, LLC (together, the "Charlesbank Defendants"). I write to request a pre-motion conference in advance of the Charlesbank Defendants' motion to dismiss Plaintiff's Complaint in its entirety.

*The Parties.* Plaintiff Leonardo Segatt was the General Manager of Agromarau Industria e Comercio Ltd., a Brazilian subsidiary of GSI Group, Inc. Compl. ¶¶ 14-15. During his employment, Mr. Segatt had been issued stock, or "quotas," in Agromarau. Compl. Exh. A at 2. In 2005, defendant GSI Holdings Corp. purchased all of the stock of GSI Group. Compl. Exh. B at 1. From 2005 until 2007, GSI Holdings was majority owned by CB Fund V. Compl. Exh. F at 1; Compl. ¶ 48. Other Charlesbank funds owned minority interests in GSI Holdings, as did unrelated investors, consultants and management. *Id.*; Compl. Exh. B at 2. Defendant William Branch is the Chairman of GSI Group and GSI Holdings.

*Plaintiff's Allegations.* In November 2006, Mr. Segatt resigned and entered into a Separation Agreement with Agromarau, GSI Group and GSI Holdings. Compl. Exh. A; Compl. ¶¶ 15, 42. The Separation Agreement provided that Mr. Segatt would execute a Non-Compete and Consulting Agreement; it also provided that 661,725 of his quotas in Agromarau would be exchanged for 3,072 shares in GSI Holdings valued at approximately $150 per share. Compl. Exh. A at 3. In December 2006, the Separation Agreement was amended to provide that, rather than exchanging quotas for shares, Mr. Segatt's quotas would be redeemed in cash and he would have the option to purchase shares. Compl. Exh. D. None of the Charlesbank Defendants was a party to the Separation Agreement or the First Amendment, and there is no allegation in the Complaint that any of the Charlesbank Defendants had any contact with Mr. Segatt or otherwise had any role whatsoever in relation to either of those agreements.

The First Amendment provided that Mr. Segatt's option to purchase shares was conditioned on "sign[ing] the investor documents required by [GSI] Holdings for all of its

investors." *Id.* To this end, Mr. Segatt signed a Stock Purchase and Management Equity Agreement ("SPA"). Compl. Exh. C. The SPA was between GSI Holdings and Mr. Segatt, *id.* at 1, although to effectuate certain of the provisions, the Charlesbank Defendants "[a]ccepted and agreed to [the SPA] for purposes of Sections 5.2, 5.4 and 5.5 only" (relating to repurchase, drag-along and tag-along rights). *Id.* at signature pages. In late December 2006, Mr. Segatt wired funds to GSI Holdings in accordance with the terms of the First Amendment, but did not receive an executed copy of the SPA or a stock certificate. Compl. ¶¶ 27, 28.

On May 3, 2007, Mr. Segatt allegedly went to see Ingo Erhardt, the new General Manager of Agromarau. Compl. ¶ 30. During that meeting, Mr. Erhardt presented Mr. Segatt with a proposed Second Amendment to the Separation Agreement, which would rescind the SPA. *Id.* Mr. Erhardt allegedly made representations concerning Mr. Branch's desire that Mr. Segatt sign the Second Amendment, and suggested that signing the agreement would help Mr. Segatt's other companies do business with Agromarau "without problems." Mr. Segatt signed the Second Amendment the next day, and after a series of administrative delays, received back the money he previously had wired to GSI Holdings to purchase the shares. Compl. ¶ 43.b. None of the Charlesbank Defendants is a party to the Second Amendment, and there is no allegation in the Complaint that any of the Charlesbank Defendants had any contact with Mr. Segatt or otherwise had any role in relation to the Second Amendment.

On June 22, 2007, a Merger Agreement was executed by which the Charlesbank Defendants would sell approximately 80-90% of their shares in GSI Holdings, retaining the rest. Compl. ¶ 53; Compl. Exh. G at 12. Certain members of management also would retain an interest in the surviving corporation, while other investors in GSI Holdings would sell their entire interest. *Id.* The merger consideration was approximately $700 per share.

Plaintiff complains that he was not told, prior to signing the Second Amendment, that a financial advisor had been retained to assist with a potential sale of GSI Holdings, nor of other plans and activities to sell the company. Compl. ¶¶ 16, 58. Plaintiff admits, however, that GSI Group's CEO informed him in September 2006 "that the company was doing well, that it was a good time to sell it and that Defendant Charlesbank Capital Partners might sell it in 2007." Compl. ¶ 58. Plaintiff also admits that, on the date he signed the Second Amendment, he sent an email to Mr. Branch stating he "would have preferred to hold his GSI Holdings shares 'because . . . our Stock be worth much more than when of [sic] the sale of GSI.'" Compl. ¶ 39. Plaintiff concedes that final offers from potential acquirors were not received until June 12, 2007, after the Second Amendment was signed. Compl. ¶ 47.

*Motion to Dismiss.* Plaintiff's claims against the Charlesbank Defendants should be dismissed for at least the following reasons:

*10b-5 Claim.* Mr. Segatt does not allege with particularity any misstatement, deceptive conduct, or any other act whatsoever on the part of the Charlesbank Defendants. The only allegations that even conceivably encompass the Charlesbank Defendants are completely general and impermissibly lump multiple defendants together. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007). Moreover, there is no basis for any duty to disclose in the absence of any contact or transaction between the Charlesbank Defendants and Mr. Segatt. *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d. Cir. 1992). There also are no specific allegations that would give rise to a strong inference of scienter; the only alleged gain

COVINGTON & BURLING

Page 3

to the Charlesbank Defendants was an immaterial, proportionate increase to the merger consideration received by all shareholders. *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001). Nor is there any allegation of "but for" causation, or any use of the instruments of interstate commerce or the mails. Finally, because the alleged fraud post-dated Mr. Segatt's stock purchase, the fraud was not "in connection with" a purchase or sale of securities. *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 598 (2d Cir. 1991).

*Control Person Liability.* Plaintiff does not identify any particular act or statement to create a strong inference that any of the Charlesbank Defendants was a "culpable participant" in the alleged fraud. *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

*Common Law Fraud.* Plaintiff's common law fraud claim fails for the same list of reasons that the 10b-5 claim should be dismissed: no misrepresentation or deceptive act by any of the Charlesbank Defendants is alleged with particularity, no statement or transaction is alleged that would provide a context for imposing a duty to disclose, no particular facts are alleged that would give rise to an inference of scienter, no reliance is alleged to have been placed on any statement or act of the Charlesbank Defendants, and no "but for" causation is alleged.

*Breach of Fiduciary Duty.* The Charlesbank Defendants did not have a duty to disclose in the absence of transacting or communicating with Mr. Segatt. *Lank v. Steiner*, 224 A.2d 242, 245 (Del. Ch. 1966).

*Breach of Contract.* The Charlesbank Defendants cannot have breached the notice provisions of the SPA because that agreement was rescinded by the Second Amendment. In this action, Plaintiff does not seek rescission of the Second Amendment, but rather elected to seek damages. *Ballow Brasted O'Brien & Rusin, P.C. v. Logan*, 435 F.3d 235, 238-39 (2d Cir. 2006). Mr. Segatt also did not tender back the consideration he received.

*Unjust Enrichment.* Plaintiff's unjust enrichment claim cannot be sustained because written agreements govern the subject matter of his stock purchase rights. *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp.2d 275, 311 (S.D.N.Y. 1998). Moreover, the only benefit allegedly received by the Charlesbank Defendants was a proportionate increase in their share of the merger consideration, along with all other shareholders, which is not the type of benefit that in equity and good conscience should be returned.

*General Partner Liability.* The limited partnerships are not liable to Plaintiff; therefore, the general partners are not liable on their behalf.

The Charlesbank Defendants therefore respectfully request a pre-motion conference in anticipation of the motion to dismiss outlined above.

Respectfully,

David W. Haller

cc: Mark P. Zimmett, Esq.
Joseph C. Crawford, Esq.
(by email and First Class Mail)

Application granted. The Court will hold a pre-motion conference on March [illegible], 2008 at [illegible] p.m.

SO ORDERED:

WILLIAM H. PAULEY III U.S.D.J.

2/20/08