UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEONARDO SEGATT                          :
                                         :
                Plaintiff,               :
                                         :
        v.                               :        07 CV 11413 (WHP)
                                         :
GSI HOLDINGS CORP., et. al.              :
                                         :
                Defendants.              :
                                         :

---

## REPLY MEMORANDUM OF DEFENDANTS GSI HOLDINGS CORP. AND WILLIAM J. BRANCH IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Angelo A. Stio, III (AS 7880)
Pepper Hamilton LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08543-5276
(609) 452-0808

Joseph C. Crawford (admitted *pro hac vice*)
Frank H. Griffin, IV (admitted *pro hac vice*)
Pepper Hamilton LLP
Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

*Attorneys for Defendants GSI Holdings Corp
and William J. Branch*

April 28, 2008

# TABLE OF CONTENTS

I.   PLAINTIFF'S CLAIMS UNDER THE FEDERAL SECURITIES LAWS FAIL AS A MATTER OF LAW ................................................................................................ 1

   A.   Plaintiff Has Not Alleged an Actionable Misrepresentation or Omission.......................... 2

      1.   The Terms of the Rescission Agreement Expressly Contradict the Alleged Oral Misrepresentation Regarding the "Issuance" of the Shares............................................. 2

      2. GSI Made an Affirmative and Effective Disclosure of a Potential Sale in 2007 ........... 4

      3. The Purported "Threat" Regarding Plaintiff's Other Businesses is Not Actionable ...... 6

   B.   Plaintiff Has Not Alleged Facts Sufficient to Demonstrate a Strong Inference of Scienter 6

II.   PLAINTIFF'S COMMON LAW CLAIMS ALSO FAIL AS A MATTER OF LAW .......... 8

   A.   Plaintiff's Claim for Breach of Contract Fails Because the Second Amendment Validly Rescinded the Stock Purchase Agreement. ...................................................................... 9

   B.   Plaintiff's Unjust Enrichment Claim Fails As A Matter Of Law. .................................... 10

III.   CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Campienello Imports, Ltd. v. Saporiti Italia, S.p.A.,
    117 F.3d 655 (2d. Cir. 1997)......................................................................................8

Castellano v. Young & Rubicam,
    257 F.3d 171 (2d Cir. 2000).........................................................................1, 2, 9, 10

In re Time Warner Inc. Sec. Litig.,
    9 F.3d 259 (2d Cir. 1993)............................................................................................5

Kennedy v. Josephthal & Co., Inc.,
    814 F.2d 798 (1st Cir. 1987)......................................................................................3

Rizzo v. MacManus Group, Inc.,
    158 F. Supp. 2d 297 (S.D.N.Y. 2001)....................................................................1, 2

SEC v. Jacubowski,
    150 F.3d 675 (7th Cir. 1988)......................................................................................3

Tellabs v. Makor Rights, Inc.,
    127 S. Ct. 2499 (2007)................................................................................................7

Zobrist v. Coal-X, Inc.,
    708 F.2d 1511 (10th Cir. 1983) ................................................................................3

**STATE CASES**

Northville Industries Corp. v. Fort Neck Oil Terminals Corp.,
    474 N.Y.S.2d 122 (N.Y. App. Div. 1984) ................................................................9

State Univ. Const. Fund v. Aetna Cas. & Sur. Co.,
    592 N.Y.S.2d 490 (N.Y. App. Div. 1993) ...............................................................3

**FEDERAL STATUTES**

15 U.S.C.A. § 78u(4)(b)(3)(A) (West 1995) .................................................................8

**REGULATIONS**

17 C.F.R. § 240.10b-5 (West 2008)................................................................................4

I.    **PLAINTIFF'S CLAIMS UNDER THE FEDERAL SECURITIES LAWS FAIL AS A MATTER OF LAW**

Plaintiff's Opposition attempts to portray his securities fraud claims as "astonishingly similar" to the claims made in Castellano v. Young & Rubicam, 257 F.3d 171 (2d Cir. 2000) and Rizzo v. MacManus Group, Inc., 158 F. Supp. 2d 297 (S.D.N.Y. 2001), simply because both cases involved corporations that experienced a sale, merger or recapitalization transaction not long after re-purchasing shares from a former executive.  Opp. at 14-15.  The similarities end there.  In Castellano and Rizzo, the defendants made no disclosure to the plaintiffs of a possible future sale, merger or recapitalization.  In Castellano, the defendants failed to disclose any information about a potential recapitalization to the plaintiff, and affirmatively told him that "nothing was going to change in the near future."  257 F.3d at 176-78.  In Rizzo, the defendants failed to disclose any information about their negotiation of a potential merger, and affirmatively told the plaintiff that "no such transactions were contemplated in the near future."  158 F. Supp. at 300-301.

Precisely the opposite occurred here.  Plaintiff concedes that GSI's CEO told him directly in September 2006 – during the negotiation of the Stock Purchase Agreement – that GSI was doing well; that it was a good time to sell; and that the company might be sold in 2007.  Compl. ¶58.  On May 4, 2007, the day Plaintiff rescinded his contractual right to purchase GSI stock, he acknowledged in writing that a potential sale would increase the value of his stock.  Compl. ¶39.

Plaintiff attempts to minimize GSI's disclosure of the possibility of a sale in 2007 by analogizing it to the plaintiff's recognition of a some "possibility" of a public offering in Castellano, or the "rumors" of a merger that were published in a third party publication in Rizzo.  Opp. at 14-15.  It is one thing to conclude a corporation has not satisfied the affirmative duty of

disclosure when the corporation makes no disclosure and an investor's only knowledge of a

potential transaction comes from speculative third party sources. However, when the

corporation's CEO affirmatively tells the Plaintiff during the negotiations leading to the

execution of the Stock Purchase Agreement that a sale could occur in 2007 (and that is precisely

what ultimately occurs), the corporation has satisfied the affirmative duty of disclosure

recognized in Castellano and Rizzo.

### A.    Plaintiff Has Not Alleged an Actionable Misrepresentation or Omission

Plaintiff's Opposition reduces his 50-page Complaint to allegations that

Defendants did three things to intentionally "deceive" him into rescinding his right to purchase

GSI stock: (1) allegedly misrepresenting that GSI had not issued his shares before the rescission;

(2) allegedly failing to disclose plans to sell GSI Holdings; and (3) allegedly "insinuating a

threat" regarding Agromarau's business with Plaintiff's other companies. Opp. at 2.

### 1.    The Terms of the Rescission Agreement Expressly Contradict the Alleged Oral Misrepresentation Regarding the "Issuance" of the Shares

Plaintiff falsely alleges that Mr. Erhardt (the successor CEO of Agromarau)

misrepresented to him that GSI had not "issued" his shares, but he admits (as he must) that the

express written terms of the one page Second Amendment to the Stock Purchase Agreement (the

"Rescission Agreement") flatly contradict the alleged oral misrepresentation. Opp. at 5-6. As a

matter of law, Plaintiff cannot claim "justifiable reliance" on an alleged oral misrepresentation

contradicted by the Rescission Agreement that he signed.

Plaintiff attempts to excuse his supposed failure to read the Rescission Agreement

by arguing that (a) "the standard by which Plaintiff's presumed oversight is to be judged is

recklessness;" and (b) he is a "Brazilian lay person." Opp. at 19. Neither argument helps

Plaintiff. First, as a matter of law, a Plaintiff cannot allege "justifiable reliance" on alleged oral statements that are contradicted by written documents in the investor's possession. See SEC v. Jacubowski, 150 F.3d 675, 681 (7th Cir. 1988) ("Over and again we say that people claiming to be *victims* of securities fraud may not claim to rely on oral statements inconsistent with written documents (even tedious prospectuses) available to them."); Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 805 (1st Cir. 1987) ("Justifiable reliance cannot be satisfied by this reckless conduct."); Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1518-19 (10th Cir. 1983) (investor acted "recklessly" by relying on oral misrepresentations contrary to written disclosures); *see also* GSI Defs.' Mem. in Support of Mot. to Dismiss ("GSI Mot.") at 11-12 (citing cases). It is similarly settled under New York law that "conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter." State Univ. Const. Fund v. Aetna Cas. & Sur. Co., 592 N.Y.S.2d 490, 492 (N.Y. App. Div. 1993). This rule protects defendants who make accurate written disclosures from needless and costly securities litigation based upon a plaintiff's false claims of ignorance of fully disclosed facts.

Second, Plaintiff's status as a "Brazilian lay person" does not relieve him from the law. Plaintiff admits that he had copies of the one-page Rescission Agreement both in Portuguese and English for at least 24 hours before signing it, *see* Compl. ¶31, so he certainly could read the contract's terms. Moreover, at the time he signed the Rescission Agreement, Plaintiff admittedly knew that he had not consulted his financial advisor about its terms, but ultimately decided to sign the contract anyway. Compl. ¶¶32-33. And even when Plaintiff supposedly learned of the existence of the stock certificate on May 8, 2007, he made no attempt to revoke the Rescission Agreement, which Mr. Branch did not sign on behalf of GSI until May 11, 2007. Compl. ¶¶40, 42.

2.    **GSI Made an Affirmative and Effective Disclosure of a
      Potential Sale in 2007**

Plaintiff admits that GSI's former CEO, William Christman disclosed to him in

September 2006 that GSI was doing well, and that GSI might be sold in 2007 because

Charlesbank considered it a "good time to sell." Compl. ¶58. Yet, Plaintiff attempts to

characterize this disclosure as "too idle and indefinite" to constitute an adequate affirmative

disclosure of the Defendants' plan to consider selling the company in 2007. Opp. at 10. Plaintiff

does not even mention – in fact, he entirely ignores – the Complaint's critical admission that on

May 4, 2007, the day he signed the Second Amendment, Plaintiff told Mr. Branch (GSI's

Chairman) in an email that he would have preferred to hold on to GSI shares because they

"certainly" would be worth more when GSI was sold. Griffin Decl. Ex. 1 (submitted with GSI

Defs.' Mot. to Dimiss). GSI indisputably disclosed the fact that a sale of GSI might occur in

2007; and Plaintiff acknowledged that a sale would increase the value of GSI shares. He signed

the Rescission Agreement anyway. The only thing that is "idle or indefinite" here is Plaintiff's

attempt to deny the legal sufficiency of this clear affirmative disclosure that GSI might be sold in

2007.

Consider what Plaintiff now claims that GSI should have told him as additional

affirmative disclosures: *First*, Plaintiff claims that Defendants did not tell him "that any of the

Defendants had engaged a financial advisor to assist with an auction or sale [of GSI]." Opp. at 9.

But Defendants had already disclosed GSI's interest in a potential sale in 2007. Any reasonable

investor – such as Plaintiff, an experienced CEO – would understand that consideration of a sale

of a corporation invariably involves discussions with outside advisors. The process by which

GSI chose to pursue that sale is legally irrelevant. Omissions are actionable only if they render

affirmative statements materially misleading. See 17 C.F.R. § 240.10b-5 (West 2008). At most,

-4-

GSI's disclosure of the retention of a financial advisor would have confirmed that Mr. Christman meant what he said in his September 2006 disclosure to Plaintiff. *Second*, Plaintiff claims that Defendants did not tell him about "any plans or activities to auction or sell [GSI]." Opp. at 9. This is flatly untrue, and the Complaint admits it. When the Defendant's CEO tells the Plaintiff that "it is a good time" to sell, and that a sale of the company might occur within a year, that constitutes affirmative disclosure of a potential plan to sell the company. At a minimum, such a disclosure provided Plaintiff with sufficient notice to inquire about the status of the sale plans before disposing of his stock, which Plaintiff tellingly did not do here. *Third*, Plaintiff claims that Defendants did not tell him about "any contemplated or actual terms of an auction or sale, including a sales price." Opp. at 9. This argument ignores the admission in the Complaint that GSI did not obtain the ultimately successful bid for the company until June 12, 2007, five weeks after Plaintiff signed the Rescission Agreement. Compl. ¶47. When the Plaintiff acknowledges in writing as he rescinds his Stock Purchase Agreement that a sale of GSI would increase the value of his shares substantially, as Plaintiff did in his May 4, 2007 email to Mr. Branch (Compl. ¶39), how can he challenge the adequacy of GSI's affirmative disclosure that the company might be sold in 2007?

If the written Stock Purchase Agreement (or the Rescission Agreement) had contained a written disclosure substantially identical to the disclosure Plaintiff admits receiving in paragraph 58 of the Complaint, would this Court have even the slightest hesitation about dismissing Plaintiff's Complaint? The result should be no different where, as here, the disclosure occurred in a direct communication between GSI's CEO and Plaintiff during the negotiation of the Stock Purchase Agreement. There is no duty of repetitive disclosure under the securities laws. Defendants had no affirmative duty to tell Plaintiff again on May 4, 2007 that

they might sell GSI in 2007; GSI had already disclosed that fact to him.  And as a matter of law, GSI had no duty to supplement or correct a disclosure that remained true and accurate.  Cf. In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993) (duty to correct or revise a prior statement arises when the disclosure has become misleading due to subsequent events).  The affirmative disclosure by GSI to Plaintiff in September 2006 that GSI was doing well; it was a good time to sell; and GSI might be sold in 2007, remained true and accurate up to and including May 4, 2007 when Plaintiff signed the Rescission Agreement.  The Complaint not only fails to allege any actionable omission, it actually confirms GSI's compliance with any affirmative duty of disclosure.

### 3.   The Purported "Threat" Regarding Plaintiff's Other Businesses is Not Actionable

Finally, Plaintiff alleges that Defendants "insinuate[ed] a threat" regarding Agromarau's possible termination or reduction of its business relationships with Plaintiff's other companies.  In the absence of any other misrepresentation or omission, Plaintiff has not cited any reason why this assertion, which was not false or misleading in any way, is actionable.

### B.   Plaintiff Has Not Alleged Facts Sufficient to Demonstrate a Strong Inference of Scienter

Leaving aside Plaintiff's attempts to quibble with the adequacy of GSI's disclosure, there is no rational basis for the Court to conclude that Defendants intentionally sought to deceive Plaintiff about any aspect of the potential sale of GSI or its likely effect on the value of GSI shares.  To the contrary, Plaintiff concedes that Defendants disclosed the potential sale of GSI to Plaintiff (Compl. ¶58), and never made any misrepresentation that rendered that disclosure misleading.  See Sec. I.A.2., supra.  The Defendants informed Plaintiff of their desire not to implement the Stock Purchase Agreement, and asked Plaintiff to rescind the agreement.  Compl. ¶30.  On the day Plaintiff agreed to rescind the agreement, Plaintiff acknowledged in a

writing to Mr. Branch that Plaintiff was aware that his stock would "certainly" be worth more "when of [sic] the sale of GSI." Compl. ¶39; Griffin Decl. Ex. 1.  Plaintiff's May 4, 2007 email to Mr. Branch (GSI's Chairman) communicated his awareness of the possibility of a sale and its likely effect on the value of GSI shares.  How can the Court then find a strong inference that – one week after receiving that communication – GSI and Mr. Branch fraudulently intended to conceal the possibility of a sale and its likely effect on the value of GSI shares when they executed the Rescission Agreement?

Plaintiff argues that Defendants have not offered a sufficient "nonculpable explanation" under Tellabs v. Makor Rights, Inc., 127 S. Ct. 2499 (2007) and that this somehow satisfies Plaintiff's burden to allege facts that provide a strong inference of scienter.  First of all, this argument ignores GSI's affirmative and effective disclosure of the possibility of a sale of the Company in 2007, because telling the truth certainly constitutes a "non-culpable explanation."  However, even more fundamentally, the law does not require Defendants' to proffer "nonculpable explanations."  As Plaintiff's Opposition Brief admits, the Supreme Court's holding in Tellabs was based on the lower court's failure to consider that the acts alleged to demonstrate an intent to deceive may have been legitimate.  127 S.Ct. at 2511; Opp. at 17.  Under Tellabs, the Court simply views the allegations as a whole and determines whether the inference that Defendants intended to deceive is strong, and at least "as cogent and compelling" as the inference that the Defendants had no such fraudulent intent.

In this case, Plaintiff's scienter argument focuses entirely on conduct at the periphery of the dispute.  Thus, Plaintiff complains that there are no "non-culpable explanations" for, inter alia, Defendants' retention of Plaintiff's stock purchase money for four months before entering into the Rescission Agreement, the fact that GSI did not send Plaintiff a signed Stock

Purchase Agreement, and the fact that the Defendants allegedly did not return certain of

Plaintiff's phone calls or reply to one or more of his emails. Opp. at 17. However, the mere

non-performance of an alleged contractual obligation does not constitute evidence of an intent to

defraud, particularly when the Defendant proposes (and the Plaintiff agrees) to rescind the

agreement. See Campienello Imports, Ltd. v. Saporiti Italia, S.p.A., 117 F.3d 655, 664 (2d. Cir.

1997); see also GSI Mot. at 20-21. More importantly, at bottom, this case turns on whether the

Defendant intentionally deceived Plaintiff about the possibility of a sale of GSI in 2007. GSI

told him this, and – in his May 4, 2007 email to Mr. Branch –Plaintiff confirmed in writing to

GSI and Mr. Branch his awareness of the possibility of a sale of GSI, prior to the execution of

the Rescission Agreement. Against this background, the Court cannot rationally infer that

Defendants intentionally sought to deceive the Plaintiff on the basis of a few unreturned phone

calls or emails, or delay in returning Plaintiff's money before (or after) the execution of the

Rescission Agreement.

   The Private Litigation Securities Reform Act requires that a Plaintiff allege facts

demonstrating a "strong inference" of scienter for a reason. 15 U.S.C.A. § 78u(4)(b)(3)(A)

(West 1995). Congress enacted this reform legislation precisely to prevent the situation here,

where Plaintiff has attempted to create a "fraud by hindsight" case by nitpicking the adequacy

and sufficiency of GSI's admitted affirmative disclosure of the possibility of a sale of GSI in

2007. The Complaint fails to plead facts sufficient to demonstrate a strong and cogent inference

of scienter, and that mandates dismissal of the Complaint.

## II. PLAINTIFF'S COMMON LAW CLAIMS ALSO FAIL AS A MATTER OF LAW

   All of Plaintiff's common law claims also fail as a matter of law for the same

reasons as his securities fraud claims, and also because the Rescission Agreement validly

rescinded the Stock Purchase Agreement. The common law fraud and breach of fiduciary duty claims require no further discussion. GSI Mot at. 22-24; Opp. at 24-26.

### A.    Plaintiff's Claim for Breach of Contract Fails Because the Second Amendment Validly Rescinded the Stock Purchase Agreement.

In the absence of fraud, which Plaintiff has not alleged with legal sufficiency here, the Rescission Agreement bars any claim for breach of contract. GSI Mot. at 24. Plaintiff attempts to frame the issue of whether the Rescission Agreement forecloses his right to bring a breach of contract claim as a question of intent. Opp. at 29. However, the plain language of the Rescission Agreement forecloses any such "question of intent." "[W]here the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement." Northville Industries Corp. v. Fort Neck Oil Terminals Corp., 474 N.Y.S.2d 122, 125 (N.Y. App. Div. 1984). Here, the Rescission Agreement explicitly revokes any contractual right by Plaintiff to purchase the GSI shares. "The parties have mutually agreed to, and hereby do, revoke Section 5 of the Agreement." Compl. Ex. E at 1. Accordingly, Plaintiff's claim can be resolved based on fundamental principles of contract law.

Plaintiff also attempts to create a "question of intent" by denying knowledge of any alleged breach of Stock Purchase Agreement as of the time he signed the Rescission Agreement. That is not true. Plaintiff certainly knew that GSI had not delivered GSI shares, which is one of breaches alleged in the Complaint. Compl. ¶108. The breach of contract claim plainly fails as a matter of law.

**B.**    **Plaintiff's Unjust Enrichment Claim Fails As A Matter Of Law.**

Plaintiff argues that the Second Circuit's decision in <u>Castellano</u> saves his unjust enrichment claim, because the court "reversed the dismissal of Plaintiff's unjust enrichment claim…." Opp. at 30. However, the Second Circuit based that reversal solely on the issue of loss causation. 257 F.3d at 190-91. Here, the existence of two written contracts – the Stock Purchase Agreement and the Rescission Agreement – plainly foreclose any unjust enrichment claim, which could exist only in the absence of any binding contracts.

**CONCLUSION**

In sum, Plaintiff's claims under the federal securities laws fail because he has not alleged an actionable misrepresentation or omission, or facts which demonstrate a strong inference of scienter. The Complaint concedes that the potential sale of GSI was adequately and effectively disclosed to Plaintiff, and GSI never attempted to conceal those plans from Plaintiff. The common law claims are not only duplicative of the securities law claims, but also fail because Plaintiff validly rescinded the Stock Purchase Agreement. Accordingly, the Complaint should be dismissed in its entirety

Respectfully submitted,


Joseph C. Crawford /s/
Angelo A. Stio, III (AS 7880)
Pepper Hamilton LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08543-5276
(609) 452-0808

Joseph C. Crawford (admitted *pro hac vice*)
Frank H. Griffin, IV (admitted *pro hac vice*)
Pepper Hamilton LLP
Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

*Attorneys for Defendants GSI Holdings Corp
and William J. Branch*

April 28, 2008