UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEONARDO SEGATT,

                                    Plaintiff,

        - against -

GSI HOLDINGS CORP., WILLIAM J. BRANCH,
CHARLESBANK EQUITY FUND V, LIMITED
PARTNERSHIP, CB OFFSHORE EQUITY FUND V,
L.P., CHARLESBANK EQUITY COINVEST-
MENT FUND V, LIMITED PARTNERSHIP,
CHARLESBANK COINVESTMENT PARTNERS,
LIMITED PARTNERSHIP, CHARLESBANK
EQUITY FUND V GP, LIMITED PARTNERSHIP
and CHARLESBANK CAPITAL PARTNERS, LLC,

                                    Defendants.

07 Civ. 1413 (WHP)(JCF)
ECF Case

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RELIEF FROM JUDGMENT, RECONSIDERATION AND LEAVE TO AMEND AND SUPPLEMENT HIS COMPLAINT

Plaintiff moves pursuant to Fed. R. Civ. P. 59(e) and 60(b) to set aside or vacate the Judgment entered on August 4, 2008, and based on newly discovered facts, for reconsideration, pursuant to Local Rule 6.3, of this Court's Memorandum and Order entered on August 1, 2008, and, pursuant to Fed. R. Civ. P. 15(a) and (d), for leave to amend and supplement his Complaint.

Because of the narrow and strict time constraints for making this motion within ten days from entry of Judgment (see, Local Rule 6.3, Fed. R. Civ. P. 6(d) and 59(e) and Fed.R. App. P. 4(a)(4)(vi)), Plaintiff is filing this motion now.  This Court's Individual Practices permit the making of this motion without a pre-motion conference (Individual Practices of Judge William H. Pauley III, 3.A.(i)).  Nevertheless, Plaintiff's counsel is available for a conference at the Court's convenience on or anytime after August 18.

I.

AMENDED AND SUPPLEMENTAL
PLEADINGS BASED ON NEWLY
DISCOVERED FACTS ARE FREELY
ALLOWED EVEN AFTER ENTRY OF JUDGMENT.

Grounds justifying reconsideration include "'the availability of new evidence or … to prevent manifest injustice.'" *Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP,* 2008 WL 850163*1 (S.D.N.Y. 2008), *quoting, United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000).

In addition, "leave [to amend] shall be freely given [under Fed. R. Civ. P. 15(a)] when justice so requires" even after entry of judgment. *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). But "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Id.*

"The same standards apply to motions under both Rule 15(a) and Rule 15(d)." *Kurzweil v. Philip Morris Companies, Inc.,* 1997 WL 167043*10 (S.D.N.Y. 1997) (citation omitted).

In *Kurzweil,* the court granted plaintiffs' post-judgment motion to amend and supplement their class action securities fraud complaint. The complaint had been dismissed for failure to state a claim. Eight to nine months after the motion to dismiss had been fully briefed, but one month before the motion had been granted, the *Congressional Record* published new evidence that had been in defendants' possession. Defendants argued that plaintiff's failure to move for leave to amend their complaint when the new evidence became available to them while the then-undecided motion to dismiss was still pending precluded them from obtaining relief under Fed. R. Civ. P. 60(b). The court rejected the argument:

> ... the documents made available publicly included thousands of pages of evidence in the *Congressional Record* which had to be identified, retrieved, reviewed and analyzed.

• • •

> ... the documents could not reasonably have been gathered, organized and presented to the court before the order was issued in September 1995....

• • •

> ... the fact that the evidence could have been discovered shortly before the order was issued will not bar plaintiffs from relief pursuant to Rule 60(b).

*Kurzweil*, 1997 WL 167043*4.   *Accord, Commer v. McEntee*, 2005 WL 1250214 (S.D.N.Y. 2005); *Kai Wu Chan v. Reno*, 1997 WL 122783 (S.D.N.Y. 1997); *Music Deli & Groceries, Inc. v. I.R.S., Dist. of Manhattan*, 781 F.Supp. 992 (S.D.N.Y. 1991) (all granting post-judgment motions for leave to amend or to amend and supplement a complaint).

Admittedly, a motion to vacate or set aside a judgment is a motion for "'extraordinary judicial relief' invoked only if the moving party demonstrates exceptional circumstances." *Ruotolo*, 514 F.3d at 191 (citation omitted).

This case presents such exceptional circumstances.  This Court issued an unusual order directing that discovery proceed notwithstanding the Defendants' motion to dismiss.  From April 4, 2008 to July 31, 2008 the parties served Rule 26(a) disclosure statements, served and responded to interrogatories and produced approximately 70,000 pages of documents.  The document production proceeded as follows:

| Date | Plaintiff's Production | Defendants GSI Holdings and Branch Production | Charlesbank Defendants' Production |
|------|------------------------|-----------------------------------------------|------------------------------------|
| 4/4/08 | LS0001-LS0322 | | |
| 5/14/08 | LS0323-LS0424 | | |
| 5/22/08 | | | CB000001-CB007169 |

- 3 -

| Date | Plaintiff's Production | Defendants GSI Holdings and Branch Production | Charlesbank Defendants' Production |
|---|---|---|---|
| 5/22/08 | | GSI00001-GSI00144 GSI00153-GSI00401 | |
| 6/10/08 | | | CB007170-CB014246 |
| 6/20/08 | | | CB014247-CB014718 (incl. CB012797) |
| 6/23/08 | | GSI00402-GSI01437 GSI01569-GSI04090 | |
| 6/24/08 | | GSI00145-GSI00152 GSI04091-GSI04633 | |
| 7/10/08 | LS0425-LS0439 | | |
| 7/14/08 | | | CB014719-CB037111 |
| 7/18/08 | | | CB000919, CB001404, CB0014130, CB001801, CB005435, CB006051 and CB006594 |
| 7/21/08 | | | CB037112-CB039693 |
| 7/22/08 | | GSI04634-GSI04888 | |
| 7/25/08 | | | CB039694-CB051705 |
| 7/28/08 | | | CB051706-CB064759 |
| 7/31/08 | | GSI04889-GSI05236 GSI01438-GSI01568 | |

The document production revealed new facts, unavailable to Plaintiff prior to discovery, which show that (i) the Charlesbank Defendants were involved in the rescission of Plaintiff's share purchase, and (ii) Defendants acted with intent to deceive in rescinding Plaintiff's share purchase.

II.

THE NEWLY DISCOVERED
EVIDENCE

The newly discovered evidence shows the following:

| Tab | Document No. | Explanation |
|---|---|---|
| 1 | GSI04628 | The GSI Holdings Board consisted of five members: Defendant William J. Branch, Paul Farris (a business school professor) and three Charlesbank executives, Kim Davis, Michael Choe and Andrew Janower. |

| Tab | Document No. | Explanation |
|---|---|---|
| 2 | CB007467 | Plaintiff's share certificate was executed on December 28, 2006, the same day Plaintiff wired payment for the shares. Plaintiff's purchase made him the largest shareholder of anyone at the operating subsidiary level of GSI Holdings (see Tab 10). |
| 3 | CB07466 | On January 3, 2007, unbeknown to Plaintiff, the Charlesbank General Counsel delivered the share certificate into "escrow" in a custodial account, notwithstanding that the Stock Purchase and Management Equity Agreement required that the Certificate be delivered to Plaintiff (Complaint, ¶19). |
| 4 | GSI04746 | Six weeks later, on February 17, 2007, Defendant GSI Holdings' Chief Financial Officer John Henderson asked Rafael Coletta, the Comptroller of GSI Holdings' Brazilian subsidiary Agromarau, to arrange for an audit of transactions between Agromarau and companies in which Plaintiff was believed to have an interest. |
| 5 | Defendants GSI Holdings Corp. and William J. Branch's Privilege Log at 3-4 | In March 2007, the audit was completed and Branch, Henderson and Ingo Erhardt, the new General Manager of Agromarau, spoke and corresponded on at least 14 occasions between March 30, 2007 and May 4, 2007 with Agromarau's lawyer Claudio Moretti, GSI Holdings' lawyers at Pepper Hamilton and, on at least two occasions, on April 17, 2007 and May 4, 2007, with Charlesbank's lawyers at Covington & Burling to discuss generally what to do about Plaintiff's shares and more specifically to prepare the Second Amendment that rescinded Plaintiff's share purchase. |
| 6 | CB018160 | In March 2007, the Merger Agreement was drafted. |
| 7 | CB005663, 68 | By April 4, 2007, the initial bids were received. They were substantially more than $150/share.[1] |
| 8 | CB005732, 37 | Second round bids, higher than the initial bids, were received by May 8, 2007, four days after rescission of Plaintiff's share purchase. |

---

[1]Share price is calculated as ("GSI Enterprise Value" (or "Bid") less "Existing GSI Debt") divided by "Shares" outstanding. Existing GSI Debt is shown as $110.1 million on CB006494, included under Tab 7 . The number of outstanding Shares was 632,500 (Doc. No. CB007194 at Tab 10). Applying the above formula, the initial bid share prices ranged from approximately $498 to approximately $806.

| Tab | Document No. | Explanation |
|-----|-----|-----|
| 9 | CB014618 | On May 19, 2007, Henderson wrote to Janower that "Buying back his [Leonardo's] 3,072 at the $150.00 per share helps all shareholders benefit from less dilution." |
| 10 | CB007194 | Henderson and Branch were among the ten largest individual shareholders of GSI Holdings |

Charlesbank Defendants' Involvement

One can infer from the above facts (set forth opposite Tabs 3 and 5) that the Charlesbank Defendants were involved in the rescission of Plaintiff's share purchase. Lawyers act for and at the request of their clients.  Covington & Burling and the Charlesbank General Counsel acted for the Charlesbank Defendants.


Defendants' Scienter

It is clear that when Defendants rescinded Plaintiff's share purchase at $150/share on May 4, 2007 they did not disclose that they had received bids to purchase GSI Holdings at prices far exceeding $150/share and that they were moving ahead with the sale process.  It is also clear that they profited from the rescission at $150/share, netting approximately $1.7 million.

Why did they do it?  Charlesbank's counsel contends that they did it because they believe Plaintiff had breached his Non-Competition and Consulting Agreement. (Mem. of Law in Support of the Charlesbank Defendants' Motion to Dismiss, n.2 at 6 (Mar. 28, 2008)).  If they were concerned about Plaintiff's competition, why did they agree in the Non-Competition and Consulting Agreement with Plaintiff (Document No. GSI0039, 41 at Tab 11) that the business Agromarau was conducting with Plaintiff's companies could

continue? Why did they agree to reduce the period of certain other restrictions on competition from five years to two? (Document No. LS0113 at Tab 12). Why did they not invoke any of their remedies under the Non-Competition and Consulting Agreement? They never did that until just last month when they filed a lawsuit in Marau, Brazil against Plaintiff (Tab 13) in obvious retaliation for Plaintiff's action in this Court. Instead, they continued to consult Plaintiff  since November 2006 when he left the company and to pay him his monthly consulting fees.

It may be that, as they moved along with the sale process toward a price of $700/share, they became envious and annoyed: envious that Plaintiff had so many shares – more than anyone else at the operating subsidiary level, and annoyed that he was competing with them as he was permitted to do under the Non-Competition and Consulting Agreement.  But, rather than attempt to exercise their remedies under the Non-Competition and Consulting Agreement and risk losing a protracted and expensive litigation, they tried to exercise a little self-help to get back their shares.  "New York law permits an exemplary award against a party that engages in self-help by violating the rights of its adversary rather than relying exclusively on its legal remedies." *MacQuesten General Contracting, Inc. v. HCE, Inc.*, 296 F.Supp.2d 437, 447 (S.D.N.Y. 2003) (general contractor refused subcontractor access to its on-site equipment during payment dispute).

Or, it is possible that the professed concern over Plaintiff's competition was merely a pretext to conceal Defendants' plan to acquire Plaintiff's 15% minority interest in Agromarau at a low price: dangle before him the prospect of a future profit on GSI Holdings shares in exchange for giving up his 15% interest in Agromarau on terms advantageous to GSI Holdings and, therefore, also to Branch and Charlesbank, then withhold from him the GSI Holdings shares, concoct the story about concern over

competition and pressure him to give up the prospect of receiving any profit on the shares. That would explain delivering the share certificate into escrow immediately after it was prepared and six weeks before an audit was even requested. It is consistent with how Henderson referred to the severance negotiations with Plaintiff ("GSI's purchase of the minority interest" in Agromarau (Tab 4)) and explains Henderson's pride in having benefited the GSI Holdings' shareholders (including, most especially, himself and Defendant Branch) from "less dilution" (Tab 10).

These are cogent inferences supported by the documentary evidence. Plaintiff should be allowed to pursue the case, develop the evidence and proceed to trial. It would be miserably unjust to permit Defendants to escape adjudication now.

## CONCLUSION

For the reasons stated above, this Court should set aside or vacate the Judgment entered on August 4, 2008, grant reconsideration of its Memorandum and Order entered on August 1, 2008 and permit Plaintiff to amend and supplement his Complaint.

Dated: New York, New York
      August 6, 2008

                    LAW OFFICES OF MARK P. ZIMMETT

                    By:_____
                        Mark P. Zimmett (MZ 8735)

                        Attorneys for Plaintiff
                        126 East 56th Street
                        New York, New York 10022
                        (212) 755-0808

Tab 1

**Draft**

## THE GSI GROUP, INC.

## MINUTES OF THE BOARD OF DIRECTORS
## MEETING ON NOVEMBER 14-15, 2006

The following were present at the meeting of the Board of Directors held at the corporation's headquarters in Assumption on November 14th and 15th:

William J. Branch, Chairman and CEO; Kim G. Davis; Andrew S. Janower; Michael W. Choe, and Paul W. Farris, constituting the entire board, were present. Also present for the entire meeting were John Henderson (CFO) and Jonathan Greene, of Charlesbank. Various officers and managers of the corporation were present for portions of the meeting.

The Chairman opened the meeting at 10:15 a.m. and reviewed the agenda for the next two days and motioned for Approval of Minutes from the Aug 1st and 2nd meetings. All board members concurred and the minutes were approved.

Mr. Branch was acknowledged as the elected CEO as well as Chairman of the Board.

GSI 04628
CONFIDENTIAL

REDACTED –
NONRESPONSIVE

PHLEGAL: #1808458 v2 (12R#Y02!.DOC)

GSI 04629
CONFIDENTIAL

REDACTED –
NONRESPONSIVE

PHLEGAL: #1808458 v2 (12R#Y02!.DOC)

GSI 04630
CONFIDENTIAL

REDACTED –
NONRESPONSIVE

From 5:00PM to 5:30PM, Mr. Branch reviewed various activities in the Brazilian market including Leo Seagatts exit agreement and GSI's application for a 2 year R$ 5 Million government borrowing which would be secured by accounts receivable balance.

The meeting adjourned for the evening at 5:30PM.

The meeting resume at 8:30AM on November 15th.

PHLJIGAL: #1808458 v2 (12RJFY02I.DOC)

GSI 04631
CONFIDENTIAL

REDACTED –
NONRESPONSIVE

PHLEGAL: #1808458 v2 (12R#Y02I.DOC)

GSI 04632
CONFIDENTIAL

REDACTED –
NONRESPONSIVE

8. RESOLVED, that this Board authorizes Mr. Choe and Mr. Janower to engage UBS Investment Bank to further evaluate a potential sale of the company.   The board directs the appropriate officers of the Corporation to cooperate with UBS for the purposes of this evaluation.

The meeting adjourned at approximately 12:00PM.

GSI 04633
CONFIDENTIAL

REDACTED –
NONRESPONSIVE

Tab 2



STATE OF DELAWARE

NUMBER
48

SHARE

3,072

# GSI HOLDINGS CORP.

TOTAL AUTHORIZED ISSUE
700,000 Shares Common Stock
$ 0.01 Par Value

THIS CERTIFIES THAT   Leonardo Segatt

three thousand seventy-two (3,072)

*is the owner of*

*shares of the Common Stock of*

GSI Holdings Corp.

*transferable on this books of the Corporation by the holder hereof in person or by duly authorized Attorney, upon surrender of this Certificate, properly endorsed.*

IN WITNESS WHEREOF, *the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed.*

*this*   28th   *day of*  December   A.D. 2006

VICE-PRESIDENT

SECRETARY

**CONFIDENTIAL**

**CB007467**

Tab 3

# ‖Charlesbank‖

CAPITAL PARTNERS LLC

*Letter of Instruction*

BOSTON | NEW YORK

DTC / New York Window
55 Water Street
New York, New York 10041

TAMI E. NASON
SENIOR VICE PRESIDENT AND GENERAL COUNSEL

Attention: Robert Mendez for the account of State Street (Fund #NX1A)

**Please accept the enclosed certificate for deposit for the account of State Street Fund
#NX1A.**

| | |
|---|---|
| Security Name: | GSI Holdings Corp. |
| Registered to: | Leonardo Segatt |
| Cusip #: | N/A |
| Shares: | 3,072 Shares of Common Stock |
| Certificate #: | 48 |
| Market Value: | $307,200 |

Vaulting Action:      X_____Deposit to DTC Physical Custody, SSB settlement location NYC

• Vault As Is       _____(Y/N)
  *Vault as is = do not transfer*

No_____Deposit to DTC Book-entry, SSB settlement location DTC

No_____Turnaround – Sell to immediately follow

Authorized by: _____      Date: __1/3/04___

Boston Received:_____      Date: _____

NYC Received: _____      Date: _____

**Comment:** Represents shares being held in escrow.

200 CLARENDON STREET
FLOOR 54
BOSTON, MA 02116
T: 617 619 5466
F: 617 619 5404
tnason@charlesbank.com

Cc: Kevin Brown
     David Kwan
     Zoe Gharibian

**CONFIDENTIAL**                                                                 **CB007466**



STATE OF DELAWARE

SHARES

NUMBER
48

3,072

# GSI HOLDINGS CORP.

TOTAL AUTHORIZED ISSUE
700,000 Shares Common Stock
$ 0.01 Par Value

THIS CERTIFIES THAT   Leonardo Segatt

three thousand seventy-two (3,072)

is the owner of

shares of the Common Stock of

GSI Holdings Corp.

transferable on this books of the Corporation by the holder hereof in person or by duly authorized Attorney, upon surrender of this Certificate, properly endorsed.

IN WITNESS WHEREOF, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed.

this   28th   day of   December   A. D. 2006

VICE PRESIDENT

SECRETARY

**CONFIDENTIAL**

**CB007467**

Tab 4

X-Original-To: rafaelcoletta@gsibrasil.ind.br
Delivered-To: rafaelcoletta@gsibrasil.ind.br
Subject: FW: Request For Follow Up Audit in Brazil by Rakenbach
Date: Mon, 19 Feb 2007 07:09:40 -0600
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
Thread-Topic: Request For Follow Up Audit in Brazil by Rakenbach
Thread-Index: AcdMRR2EBuwDxBEuTCGbyeqAoHQlAwGezAAwAFmoE4A=
From: "John Henderson" <John.Henderson@thegsigroup.biz>
To: <rafaelcoletta@gsibrasil.ind.br>
X-AntiVirus: scanned for viruses by AMaViS 0.2.1 (http://amavis.org/)
X-Spam-Checker-Version: SpamAssassin 3.1.3 (2006-06-01) on
X-Spam-Level:
X-Spam-Status: No, score=-0.7 required=5.0 tests=AWL,BAYES_40 autolearn=ham

Rafael,
I tried to call you a couple times this morning to discuss.   I am tied
up in meetings most of the rest of the morning.   I will try to follow
up towards the end of your day.   I know there is a four hour time
difference.

Regards, John

-----Original Message-----
From: John Henderson
Sent: Saturday, February 17, 2007 1:00 PM
To: rafaelcoletta@gsibrasil.ind.br
Cc: Nathalie Duhaime; Ingo
Subject: Request For Follow Up Audit in Brazil by Rakenbach

Rafael,

I will call you Monday to discuss a follow up audit I would like
Rakenbach & Cia Auditores to conduct over the next couple weeks.  As
part of GSI's purchase of the minority interest, I have become aware of
several related party transactions that have been conducted between GSI
Brazil and several companies that Leo Segatt has significant ownership
in.  While I know some of these relationships have been disclosed in the
past and I am not aware of any specific improprieties, I would like
these business transactions fully documented to understand their scope
and impact on the company.

The scope of the audit would be as follows:
* Review the Net Sales by Distributor for 2006 & 2005.   Understand the
Net Sales, Discounts, Margin and Terms given to distributors with
significant ownership by Leo Segatt as compared to Other GSI
distributors.  Are the pricing practices and terms consistently
implemented across the sales base.
* Review GSI purchases from Businesses with significant ownership by Leo
Segatt in 2005 & 2006 (includes Foco Agricola, Robustec, Tecnotri, etc)
and document amounts purchased along with any cost increases to GSI in

2005 & 2006.
* Review 2005 & 2006 purchases of Company Equipment by Leo Segatt and/or
businesses which he has significant ownership in and validate pricing is
consistent with company documented policies and practices.  Summarize
Sales, Discounts and Gross Margin of the Company for these transactions.

I would like the audit to begin with interviews with Ingo, Claudio
Moretti and you by Rakenbach to further define the details of the scope
of the audit.

It is important that this audit be conducted confidentially with only
the three of you aware of its occurrence.   Under no circumstance,
should this be communicated to Leo Segatt.

I would like to have the audit report delivered to me.

I will call you Monday to discuss.

Regards, John

John W. Henderson
Chief Financial Officer
The GSI Group, Inc.
Office: (217) 226-5468
Office Fax: (217) 226-6468

Tab 6

*Draft 03.19.07*

AGREEMENT AND PLAN OF MERGER

BY AND AMONG

[BUYER],

[MERGER SUB],

CHARLESBANK EQUITY FUND V, LIMITED PARTNERSHIP,
AS PRINCIPAL STOCKHOLDER,

CHARLESBANK CAPITAL PARTNERS, LLC,
AS STOCKHOLDERS' REPRESENTATIVE,

AND

GSI HOLDINGS CORP.

Dated as of [     ], 2007

CONFIDENTIAL

CB018160

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

ARTICLE I  THE MERGER..................................................................................1

SECTION 1.1    The Merger................................................................................1

SECTION 1.2    Effective Time; Closing Date ...................................................1

SECTION 1.3    Effect of the Merger ..................................................................2

SECTION 1.4    Certificate of Incorporation; Bylaws........................................2

SECTION 1.5    Board of Directors and Officers ................................................2

SECTION 1.6    Further Assurances ...................................................................2

ARTICLE II  EFFECTS OF THE MERGER; CONSIDERATION.................................3

SECTION 2.1    Conversion of Company Securities...........................................3

SECTION 2.2    Estimated Adjustment Amount .................................................4

SECTION 2.3    Adjustment Amount ..................................................................4

SECTION 2.4    Exchange Procedures.................................................................8

SECTION 2.5    Payments at Closing ..................................................................9

SECTION 2.6    Payment Annexes; Capital Structure Certificate.......................10

SECTION 2.7    Dissenting Shares ......................................................................10

SECTION 2.8    Contingent Consideration .........................................................11

ARTICLE III  REPRESENTATIONS AND WARRANTIES OF THE COMPANY .....................12

SECTION 3.1    Organization, Standing and Power............................................12

SECTION 3.2    Authority; Approvals.................................................................13

SECTION 3.3    Capitalization; Equity Interests ................................................13

SECTION 3.4    Conflicts; Consents....................................................................14

SECTION 3.5    Financial Information and SEC Reports; Undisclosed Liabilities ...............15

SECTION 3.6    Absence of Changes ..................................................................15

SECTION 3.7    Assets and Properties.................................................................17

SECTION 3.8    Other Agreements......................................................................17

SECTION 3.9    Environmental Matters ..............................................................18

SECTION 3.10    Litigation..................................................................................18

CONFIDENTIAL

CB018161

SECTION 3.11   Compliance; Licenses and Permits............................................................18

SECTION 3.12   Intellectual Property ...............................................................................18

SECTION 3.13   Tax Matters ..............................................................................................19

SECTION 3.14   Labor Relations; Employees. ...................................................................19

SECTION 3.15   Transactions with Related Parties ............................................................21

SECTION 3.17   Brokers.....................................................................................................21

SECTION 3.18   Insurance ..................................................................................................22

ARTICLE IV   REPRESENTATIONS AND WARRANTIES OF BUYER AND MERGER SUB ...................22

SECTION 4.1   Organization; Power and Authority ..........................................................22

SECTION 4.2   Authority; Approvals.................................................................................22

SECTION 4.3   Conflicts; Consents....................................................................................22

SECTION 4.4   Investment Representation.........................................................................23

SECTION 4.5   Brokers.......................................................................................................23

SECTION 4.6   Litigation....................................................................................................23

SECTION 4.7   Funds .........................................................................................................24

SECTION 4.8   Guaranty.....................................................................................................24

ARTICLE V   REPRESENTATIONS AND WARRANTIES OF THE PRINCIPAL STOCKHOLDER...............24

SECTION 5.1   Authority; Binding Agreement .................................................................24

SECTION 5.2   Title to Shares ...........................................................................................25

ARTICLE VI   CERTAIN COVENANTS .................................................................................25

SECTION 6.1   Conduct of Business ..................................................................................25

SECTION 6.2   Access and Information; Confidentiality...................................................26

SECTION 6.3   Approval of the Stockholders of the Company..........................................26

SECTION 6.4   Reasonable Efforts; Further Assurances....................................................27

SECTION 6.5   Public Announcements ..............................................................................27

SECTION 6.6   Indemnification of Directors and Officers.................................................27

SECTION 6.7   Section 280G..............................................................................................28

SECTION 6.8   Expenses ....................................................................................................28

SECTION 6.9   Continuity of Employees and Employee Benefits .....................................28

SECTION 6.10   Supplemental Information ........................................................................28

SECTION 6.11   Tax Matters ..............................................................................................29

SECTION 6.12   Debt Tender Offer and Consent Solicitation ...........................................29

SECTION 6.13   Repayment of Senior Indebtedness ..........................................................31

CONFIDENTIAL

CB018162

SECTION 6.14  Financing ..................................................................................................31

ARTICLE VII  CONDITIONS PRECEDENT...................................................................................32

SECTION 7.1  Conditions Precedent to Obligations of Each Party ....................................32

SECTION 7.2  Conditions Precedent to Obligations of Buyer and Merger Sub.................32

SECTION 7.3  Conditions Precedent to Obligations of the Company and the
Principal Stockholder ................................................................................33

ARTICLE VIII  ESCROW; STOCKHOLDERS' REPRESENTATIVE .................................................34

SECTION 8.1  Net Working Capital Escrow Amount.........................................................34

SECTION 8.2  Stockholders' Representative.......................................................................34

SECTION 8.3  Disbursements from the Net Working Capital Escrow Account;
Adjustment Amount; Payments to Option Holders.....................................36

ARTICLE IX  TERMINATION ..................................................................................................37

SECTION 9.1  Termination by Mutual Consent .................................................................37

SECTION 9.2  Termination by Either Buyer or the Company.............................................37

SECTION 9.3  Termination by the Company ......................................................................37

SECTION 9.4  Termination by Buyer ................................................................................37

SECTION 9.5  Effect of Termination and Abandonment ...................................................38

ARTICLE X  MISCELLANEOUS ...............................................................................................38

SECTION 10.1  Entire Agreement ......................................................................................38

SECTION 10.2  Assignment and Binding Effect .................................................................38

SECTION 10.3  Notices ......................................................................................................38

SECTION 10.4  Amendment and Modification ...................................................................39

SECTION 10.5  Governing Law; Jurisdiction......................................................................39

SECTION 10.6  Waiver of Jury Trial ..................................................................................40

SECTION 10.7  Severability ...............................................................................................40

SECTION 10.8  Counterparts..............................................................................................40

SECTION 10.9  Enforcement...............................................................................................40

SECTION 10.10 Non-Survival of Representations, Warranties and Agreements; No
Recourse....................................................................................................40

SECTION 10.11 No Other Representations and Warranties.................................................41

SECTION 10.12 Damages....................................................................................................41

SECTION 10.13 Disclosure Schedule ................................................................................41

SECTION 10.14 Waiver of Conflicts Regarding Representation; Non-Assertion of
Attorney-Client Privilege............................................................................42

CONFIDENTIAL                                                                                      CB018163

ARTICLE XI  DEFINED TERMS; INTERPRETATION.................................................................43

    SECTION 11.1   Defined Terms.................................................................................43

    SECTION 11.2   Interpretation...................................................................................48

EXHIBITS

*Exhibit A*      Form of Option Acknowledgement

*Exhibit B*      Form of Written Consent of the Principal Stockholder

*Exhibit C*      Form of Escrow Agreement

ANNEXES

*Annex 1*      Calculation of Net Working Capital

*Annex 2*      Form of Closing Indebtedness Annex

*Annex 3*      Form of Transaction Expenses Annex

SCHEDULES

*Schedule 6.1*   Conduct of Business

*Schedule 6.12*  Terms of Debt Tender Offer

*Schedule 11.1*  Knowledge of the Company

DISCLOSURE SCHEDULE

CONFIDENTIAL

CB018164

INDEX OF DEFINED TERMS

Adjustment Amount ....................................7
Affiliate ...................................................44
Aggregate Merger Consideration ............44
Agreement ................................................1
Amendments ...........................................30
Business Day ..........................................44
Buyer ......................................................1
Buyer Material Adverse Effect.................44
Capital Structure Certificate ...................45
Certificate of Merger ................................1
Certificates.............................................8
Closing ....................................................
Closing Balance Sheet..............................5
Closing Date ............................................2
Closing Date Net Working Capital ............5
Closing Date Statement .............................5
Closing Indebtedness ..............................45
Closing Indebtedness Annex....................10
COBRA ..................................................29
Code ......................................................45
Common Stock ........................................45
Company...................................................1
Company Financials ...............................45
Company Material Adverse Effect ...........45
Competition Laws ...................................15
Confidentiality Agreement.......................45
Contingent Consideration .......................11
Contingent Consideration Notice ............11
Contingent Consideration Notice of
    Objection .........................................11
Control ...................................................45
Current Representation ...........................44
Debt Commitment Letter ..........................24
Debt Financing.......................................24
Debt Payment Expenses ..........................32
Debt Tender Offer ...................................30
Defeasance Costs ....................................46
Designated Person ..................................44
Determination Date...................................6
DGCL ......................................................1
Disclosure Schedule ...............................13
Disputed Items ..........................................6
Dissenters' Rights Notice ........................27
Dissenting Shares....................................10
Effective Time ...........................................1
Encumbrances.........................................46

Enterprise Value......................................46
Environmental Laws ................................46
Equity Commitment Letter .......................24
ERISA ....................................................46
ERISA Affiliate .......................................46
Escrow Agent ..........................................46
Escrow Agreement...................................46
Estimated Adjustment Amount ...................4
Estimated Closing Date Net Working
    Capital ..............................................4
Estimated Merger Consideration .............47
Estimated Net Transaction Tax
    Benefit Amount ................................46
Estimated Option Cancellation
    Payment ...........................................47
Estimated Per Share Merger
    Consideration ...................................47
Exchange Act ..........................................15
Financing................................................24
GAAP......................................................47
Governmental Entity................................47
GSI Group...............................................47
Guaranty ..................................................1
Hazardous Substances .............................47
HSR Act..................................................15
Independent Accountant ............................6
Intellectual Property...............................47
knowledge of the Company......................47
Laws.......................................................48
Letter of Transmittal...............................48
Lien........................................................48
Merger .....................................................1
Merger Sub ..............................................1
Net Transaction Tax Benefit Amount ........48
Net Working Capital................................48
Net Working Capital Escrow
    Account .............................................48
Net Working Capital Escrow Amount .......48
Notice of Objection....................................5
Offer Documents .....................................31
Option Acknowledgment.............................4
Option Cancellation Payment...................48
Option Holder .........................................49
Option Plan .............................................49
Options...................................................49
Paying Agent ..........................................49

CB018165

Per Share Merger Consideration..............49
Performance Vested Options ....................49
Person...........................................................49
Plan ..............................................................20
Post-Closing Representation ...................43
Principal Stockholder...................................1
Principal Stockholder Shares ..................25
Representative Section 2.3 Expenses ..........7
Representative Section 2.8 Expenses ........12
Representatives ..............................................6
Requisite Consent.....................................30
Schedules .....................................................13
SEC................................................................12
SEC Reports...............................................12
Securities Act ............................................49
Senior Notes................................................49
Senior Notes Indenture .............................49

Shares .........................................................49
Stockholder ................................................49
Stockholders' Representative .....................1
Subsidiary ...................................................49
Sukup Litigation ........................................11
Surviving Corporation.................................1
Target Net Working Capital .....................49
Tax................................................................50
Tax Return ..................................................50
Tender Offer Expenses .............................30
Time Vested Options...................................50
to the Company's knowledge ...................47
Transaction Expenses ...............................50
Transaction Expenses Annex ...................10
Transfer Taxes............................................30
Wachovia Credit Agreement .....................50
Written Consent.........................................27

CONFIDENTIAL

CB018166

AGREEMENT AND PLAN OF MERGER (this "*Agreement*"), dated as of [__], 2007, by and among [BUYER], a [____] ("*Buyer*"), [MERGER SUB], a Delaware corporation ("*Merger Sub*"), Charlesbank Equity Fund V, Limited Partnership, a Delaware limited partnership ("*Principal Stockholder*"), Charlesbank Capital Partners, LLC, a Delaware limited liability company, solely in its capacity as representative of the holders of the Company's capital stock ("*Stockholders' Representative*"), and GSI Holdings Corp., a Delaware corporation (the "*Company*").

<u>INTRODUCTION</u>

The respective Boards of Directors of each of Buyer, Merger Sub and the Company have unanimously (i) approved, and declared advisable and in the best interests of Buyer, Merger Sub and the Company and their respective stockholders, the merger of Merger Sub with and into the Company (the "*Merger*") in accordance with the provisions of the Delaware General Corporation Law, as amended (the "*DGCL*"), and subject to the terms and conditions of this Agreement and (ii) approved this Agreement.

As an inducement for the Company to enter into this Agreement, [*Equity Sponsor*], the sole stockholder of Buyer, has, on the date hereof, executed and delivered to the Company a guaranty (the "*Guaranty*") of the obligations of Buyer and Merger Sub hereunder.

Certain capitalized terms have the meanings set forth in Section 11.1.

In consideration of the mutual representations, warranties, covenants and other agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I

<u>THE MERGER</u>

SECTION 1.1    <u>The Merger</u>.  At the Effective Time, subject to the terms and conditions of this Agreement and in accordance with the DGCL, (i) Merger Sub shall be merged with and into the Company, (ii) the separate corporate existence of Merger Sub shall cease and (iii) the Company shall be the surviving corporation (the "*Surviving Corporation*") and shall continue its legal existence under the DGCL.

SECTION 1.2    <u>Effective Time; Closing Date</u>.  Subject to the terms and conditions of this Agreement, the Company and Merger Sub shall cause the Merger to be consummated by filing a certificate of merger with the Secretary of State of the State of Delaware (the "*Certificate of Merger*") and all other filings or recordings required by the DGCL in connection with the Merger.  The Merger shall become effective at such time as the Certificate of Merger is duly filed in accordance with the provisions of Section 251 of the DGCL, or at such later time as may be stated in the Certificate of Merger (the "*Effective Time*").

CONFIDENTIAL

CB018167

presumption or burden of proof shall arise favoring or disfavoring any party hereto by virtue of the authorship of any of the provisions of this Agreement.

(b)    For purposes of this Agreement: (i) the table of contents and headings contained in this Agreement are for reference purposes only and shall in no way modify or restrict any of the terms or provisions hereof, (ii) except as expressly provided herein, the terms "include," "includes" or "including" are not limiting and "or" and "either" are not exclusive, (iii) the words "hereof" and "herein" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, (iv) article, section, paragraph, exhibit, annex and schedule references are to the articles, sections, paragraphs, exhibits, annexes and schedules of this Agreement unless otherwise specified, (v) the meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term, and words denoting any gender shall include all genders, (vi) a reference to any party to this Agreement or any other agreement or document shall include such party's successors and permitted assigns, (vii) a reference to any Laws or other legislation or to any provision of any Law or legislation shall include any amendment to, and any modification or re-enactment thereof, any provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto, (viii) all references to "$" or "dollars" shall be deemed references to United States dollars and (ix) capitalized terms used and not defined in the exhibits, annexes and schedules attached to this Agreement shall have the respective meanings set forth in this Agreement.

*[Signature Page Follows]*

CONFIDENTIAL

CB018215

The parties hereto, intending to be legally bound hereby, have duly executed this Agreement and Plan of Merger as of the date first above written.

[BUYER]

By:_____
    Name:
    Title:


[MERGER SUB]

By:_____
    Name:
    Title:


GSI HOLDINGS CORP.

By: _____
    Name:
    Title


PRINCIPAL STOCKHOLDER:

CHARLESBANK EQUITY FUND V, LIMITED PARTNERSHIP

By: Charlesbank, Limited Partnership,
    its General Partner

    By: Charlesbank Capital Partners, LLC, its
        General Partner

    By:_____
        Name:
        Title:

    By:_____
        Name:
        Title:

CONFIDENTIAL

STOCKHOLDERS' REPRESENTATIVE:

CHARLESBANK CAPITAL PARTNERS, LLC

By:_____
    Name:
    Title:


By:_____
    Name:
    Title:

CONFIDENTIAL

CB018217

*Annex 1*

CALCULATION OF NET WORKING CAPITAL

[*Calculation to come*]

CONFIDENTIAL

CB018218

*Annex 2*

### CLOSING INDEBTEDNESS ANNEX

[*Calculation to come*]

CONFIDENTIAL

CB018219

*Annex 3*

TRANSACTION EXPENSES ANNEX

[*Calculation to come*]

CONFIDENTIAL

CB018220

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LEONARDO SEGATT, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 07 CV 11413 (WHP) |
| | ) | |
| -against- | ) | ECF Case |
| | ) | |
| GSI HOLDINGS CORP., WILLIAM J. BRANCH, | ) | |
| CHARLESBANK EQUITY FUND V, LIMITED | ) | |
| PARTNERSHIP, CB OFFSHORE EQUITY FUND V, | ) | |
| L.P., CHARLESBANK EQUITY COINVESTMENT | ) | |
| FUND V, LIMITED PARTNERSHIP, | ) | |
| CHARLESBANK COINVESTMENT PARTNERS, | ) | |
| LIMITED PARTNERSHIP, CHARLESBANK | ) | |
| EQUITY FUND V GP, LIMITED PARTNERSHIP | ) | |
| and CHARLESBANK CAPITAL PARTNERS, LLC, | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANTS GSI HOLDINGS CORP. AND
## WILLIAM J. BRANCH'S PRIVILEGE LOG

Pursuant to Federal Rule of Civil Procedure 26(b)(5) and Local Rule 26.2,

Defendants GSI Holdings Corp. and William J. Branch ("GSI") submit the following privilege

log in response to Plaintiff's First Requests for the Production of Documents.  Pursuant to Local

Rule 26.2(a), GSI states that its claims of attorney-client privilege are governed by New York

and/or Brazilian law.  In the tables below, claims of attorney-client privilege are identified as

"ACP" and claims of work-product protection are identified as "AWP."  For ease of reference,

attorneys referenced in the tables are designated with an asterisk.  As discovery continues, GSI

will supplement this privilege log as necessary pursuant to Federal Rule of Civil Procedure

26(e).

## INDIVIDUALS REFERENCED IN GSI'S PRIVILEGE LOG

| Abbreviation | Full Name | Affiliation |
|---|---|---|
| J. Arnold | Joan Arnold, Esq. | Pepper Hamilton LLP |
| A. Barbosa | Arline Barbosa | Agromarau |
| R. Barcellos | Ricardo Barcellos, Esq. | Trench, Rossi & Watanabe |
| K. Bowsher | Kate Bowsher | GSI Holdings Corp. |
| W. Branch | William Branch | GSI Holdings Corp. |
| S. Chappell | Sara Chappell | GSI Holdings Corp. |
| M. Chloe | Michael Chloe | Charlesbank Partners |
| R. Christman | Richard Christman | GSI Holdings Corp. |
| P. Clauss | Peter Clauss, Esq. | Pepper Hamilton LLP |
| R. Colletta | Rafael Colletta | Agromarau |
| M. Crippa | Maurecio Crippa | Agromarau |
| K. Davis | Kim Davis | Charlesbank Partners |
| M. Drachemberg | Maristella Drachemberg, Esq. | Trench, Rossi & Watanabe |
| N. Duhaime | Natalie Duhaime | GSI Holdings Corp. |
| I. Erhardt | Ingo Erhardt | Agromarau |
| J. Henderson | John Henderson | GSI Holdings Corp. |
| S. Infante | Steven Infante, Esq. | Covington & Burling LLP |
| A. Janower | Andrew Janower | Charlesbank Partners |
| E. Mason | Emily Mason, Esq. | Covington & Burling LLP |
| J. McGeehan | John McGeehan | GSI Holdings Corp. |
| A. Ment | Andrew Ment, Esq. | Covington & Burling LLP |
| A. Montgomery | Ann Montgomery | GSI Holdings Corp. |
| C. Moretti | Claudio Moretti, Esq. | Trench, Rossi & Watanabe |
| R. Silva | Rodrigo Silva, Esq. | Trench, Rossi & Watanabe |
| C. Taylor | Carolyn Taylor, Esq. | Covington & Burling LLP |
| E. Toole | Edward Toole, Esq. | Pepper Hamilton LLP |
| M. Tzartouras | Mark Tzartouras, Esq. | Covington & Burling LLP |

**DOCUMENTS WITHHELD FROM PRODUCTION**

| Date | To | From | cc | Description | Privilege |
|---|---|---|---|---|---|
| 12/10/07 | E.Toole* | W. Branch | | E-mail requesting legal advice regarding Agromarau and companies affiliated with L. Segatt | ACP |
| 07/25/07 | P. Clauss* J. Henderson | W. Branch | | E-mail reflecting legal advice regarding Equity Contribution Agreement and Merger Agreement | ACP |
| 07/25/07 | W. Branch J. Henderson | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding Equity Contribution Agreement and Merger Agreement | ACP |
| 07/25/07 | P. Clauss* W. Branch | J. Henderson | | E-mail discussing legal advice regarding Equity Contribution Agreement and Merger Agreement | ACP |
| 07/25/07 | P. Clauss* J. Henderson | W. Branch | | E-mail discussing legal advice regarding Equity Contribution Agreement and Merger Agreement | ACP |
| 07/25/07 | W. Branch J. Henderson | P. Clauss* | P. Clauss | E-mail providing legal advice regarding Equity Contribution Agreement and Merger Agreement | ACP |
| 05/04/07 | P. Clauss* S.Infante* | W. Branch | | E-mail requesting legal advice regarding L. Segatt's rescission of stock purchase agreement | ACP |
| 04/17/07 | C. Moretti*, W. Branch J. Henderson | P. Clauss* | P. Clauss* | E-mail discussing legal advice regarding draft of Second Amendment to Separation Agreement | ACP |
| 04/17/07 | P. Clauss* W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding draft of Second Amendment to Separation Agreement | ACP |
| 04/17/07 | E. Mason* | P. Clauss* | P. Clauss* | E-mail requesting legal advice regarding draft of Second Amendment to Separation Agreement | ACP |

| 04/13/07 | W. Branch<br>J. Henderson<br>C. Moretti* | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding draft of Second Amendment to Separation Agreement | ACP |
|---|---|---|---|---|---|
| 04/11/07 | W. Branch<br>J. Henderson<br>C. Moretti* | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding negotiation of potential rescission agreement with L. Segatt | ACP |
| 04/11/07 | W. Branch<br>J. Henderson<br>P. Clauss* | C. Moretti* | | E-mail providing legal advice regarding negotiation of potential rescission agreement with L. Segatt | ACP |
| 04/09/07 | W. Branch<br>J. Henderson<br>C. Moretti* | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding negotiation of potential rescission agreement with L. Segatt | ACP |
| 04/09/07 | P. Clauss*<br>W. Branch<br>J. Henderson | C. Moretti* | | E-mail providing legal advice regarding Segatt's Separation and Non-Competition Agreements | ACP |
| 04/02/07 | W. Branch<br>J. Henderson<br>C. Moretti* | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding Segatt's Separation and Non-Compete Agreements | ACP |
| 04/07 | | P. Clauss* | | Draft of Second Amendment of Separation Agreement | ACP<br>AWP |
| 03/30/07 | J. Henderson<br>I. Erhardt | W. Branch | C. Moretti*<br>P. Clauss* | E-mail requesting legal advice regarding Rokembach audit findings | ACP |
| 03/30/07 | W. Branch<br>J. Henderson<br>C. Moretti<br>I. Erhardt | P. Clauss* | P. Clauss* | E-mail discussing legal advice regarding Rokembach audit findings | ACP |
| 03/30/07 | C. Moretti*<br>J. Henderson<br>I. Erhardt<br>P. Clauss* | W. Branch | | E-mail informing counsel on communications with L. Segatt regarding Rokembach audit | ACP |

| 03/29/07 | J. Henderson<br>I. Erhardt<br>P. Clauss* | C. Moretti* | W. Branch | E-mail informing GSI and counsel on communications with L. Segatt regarding Rokembach audit | ACP |
|---|---|---|---|---|---|
| 03/28/07 | P. Clauss*<br>W. Branch<br>J. Henderson<br>I. Erhardt | | | Agenda for conference call to discuss findings of Rokembach audit | ACP |
| 03/28/07 | | P. Clauss* | | Handwritten notes reflecting conference call with W. Branch, J. Henderson, and Ingo Erhardt regarding Rokembach audit findings | ACP<br>AWP |
| 03/27/07 | J. Henderson<br>I. Erhardt<br>P. Clauss* | C. Moretti* | W. Branch | E-mail discussing request for legal advice regarding Rokembach audit findings | ACP |
| 03/27/07 | J. Henderson<br>I. Erhardt<br>C. Moretti* | P. Clauss* | | E-mail discussing request for legal advice regarding Rokembach audit findings | ACP |
| 03/27/07 | C. Moretti* | W. Branch | | E-mail requesting legal advice regarding Rokembach audit findings | ACP |
| 03/27/07 | P. Clauss* | W. Branch | J. Henderson | E-mail requesting legal advice regarding Rokembach audit findings | ACP |
| 03/26/07 | I. Erhardt<br>C. Moretti*<br>P. Clauss* | J. Henderson | W. Branch | E-mail requesting legal advice regarding Rokembach audit findings | ACP |
| 03/26/07 | | P. Clauss* | | Handwritten notes reflecting communications with W. Branch regarding Rokembach audit findings | ACP<br>AWP |

| 03/12/07 | P. Clauss* | W. Branch | J. Henderson | E-mail requesting legal advice regarding agreements between Agromarau and companies affiliated with L. Segatt | ACP |
|----------|-----------|-----------|--------------|-----|-----|
| 03/12/07 | P. Clauss* W. Branch | C. Moretti* | J. Henderson I. Erhardt R. Colletta | E-mail providing legal advice regarding agreements between Agromarau and companies affiliated with L. Segatt | ACP |
| 01/02/07 | P. Clauss* R. Colletta J. Henderson | C. Moretti* | | E-mail providing legal advice regarding interest payments due to L. Segatt | ACP |
| 01/02/07 | R. Colletta J. Henderson | P. Clauss* | C. Moretti* P. Clauss* | E-mail providing legal advice regarding interest payments due to L. Segatt | ACP |
| 01/02/07 | J. Henderson | R. Colletta | C. Moretti* P. Clauss* | E-mail requesting legal advice regarding interest payments due to L. Segatt | ACP |
| 12/19/06 | C. Moretti* R. Colletta | P. Clauss* | J. Henderson W. Branch, | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/19/06 | P. Clauss* R. Colletta | C. Moretti* | J. Henderson W. Branch | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/18/06 | R. Colletta | P. Clauss* | C. Moretti* J. Henderson W. Branch P. Clauss* | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/18/06 | C. Moretti* | P. Clauss* | W. Branch P. Clauss* | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/18/06 | P. Clauss* | C. Moretti* | J. Henderson W. Branch | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |

| 12/18/06 | E. Mason* | P. Clauss* | C. Taylor P. Clauss* | E-mail discussing legal advice regarding First Amendment to Separation Agreement | ACP |
|---|---|---|---|---|---|
| 12/18/06 | R. Colletta | P. Clauss* | C. Moretti* J. Henderson W. Branch P. Clauss* | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/16/06 | P. Clauss* | R. Colletta | C. Moretti* J. Henderson W. Branch | E-mail requesting legal advice on First Amendment to Separation Agreement | ACP |
| 12/15/06 | P. Clauss* | E. Mason* | C. Taylor E. Mason* | E-mail providing legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/15/06 | E. Mason* | P. Clauss* | P. Clauss* | E-mail requesting legal advice regarding First Amendment to Separation Agreement | ACP |
| 12/14/06 | C. Moretti* | P. Clauss* | W. Branch, R. Colletta J. Henderson P. Clauss* | E-mail providing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
| 12/13/06 | P. Clauss* | C. Moretti* | W. Branch J. Henderson R.Colletta P. Clauss* | E-mail providing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
| 12/12/06 | C. Moretti* J. Henderson W. Branch R. Colletta | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
| 12/08/06 | C. Moretti* | P. Clauss* | W. Branch, P. Clauss* | E-mail requesting legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
| 12/08/06 | P. Clauss* E. Mason* | A. Janower | C. Taylor | E-mail discussing legal advice regarding Separation Agreement | ACP |

| 12/08/06 | P. Clauss*<br>W. Branch<br>J. Henderson | C. Moretti* | | E-mail providing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
|---|---|---|---|---|---|
| 12/08/06 | E. Mason*<br>A. Janower | P. Clauss* | C. Taylor*<br>P. Clauss* | E-mail providing legal advice regarding Separation Agreement | ACP |
| 12/06/06 | E. Mason*<br>A. Janower | P. Clauss* | C. Taylor<br>P. Clauss* | E-mail providing legal advice regarding Stock Purchase Agreement and Information Statement | ACP |
| 12/06/06 | P. Clauss*<br>A. Janower | E. Mason* | C. Taylor* | E-mail discussing legal advice on Stock Purchase Agreement and Information Statement | ACP |
| 12/05/06 | P. Clauss*<br>W. Branch | C. Moretti* | | E-mail providing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
| 12/05/06 | C. Moretti*<br>W. Branch | P. Clauss* | | E-mail requesting legal advice regarding Agromarau distributor agreements | ACP |
| 12/05/06 | E. Mason* | P. Clauss* | C. Taylor*<br>P. Clauss* | E-mail providing legal advice regarding GSI Stockholder's Agreement and L. Segatt | ACP |
| 12/05/06 | A. Janower<br>P. Clauss* | E. Mason* | C. Taylor* | E-mail providing legal advice regarding Stock Purchase Agreement and related documents | ACP |
| 12/04/06 | C. Moretti* | W. Branch | P. Clauss* | E-mail discussing legal advice regarding Agromarau Articles of Formation | ACP |
| 12/05/06 | | P. Clauss* | | DRAFT GSI Holdings Information Statement | ACP<br>AWP |
| 12/05/06 | | P. Clauss* | | DRAFT Stock Purchase and Management Equity Agreement | ACP<br>AWP |

| 12/01/06 | P. Clauss* | E. Mason* | C. Taylor* | E-mail requesting legal advice regarding GSI Stockholder's Agreement and L. Segatt | ACP |
|---|---|---|---|---|---|
| 12/01/06 | E. Mason* | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding L. Segatt's purchase of GSI shares | ACP |
| 12/01/06 | P. Clauss* J. Henderson | C. Moretti* | W. Branch R. Colletta I. Erhardt | E-mail providing legal advice regarding L. Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 12/06 | | P. Clauss* | | DRAFT Stock Transfer Power | ACP AWP |
| 12/06 | | P. Clauss* | | DRAFT Joinder Agreement | ACP AWP |
| 12/06 | | P. Clauss* | | DRAFT First Amendment of Separation Agreement | ACP AWP |
| 11/30/06 | P. Clauss* | E. Mason* | | E-mail discussing request for legal advice regarding L. Segatt's purchase of GSI shares | ACP |
| 11/30/06 | E. Mason* | P. Clauss* | P. Clauss* A. Janower | E-mail requesting legal advice regarding L. Segatt's purchase of GSI shares | ACP |
| 11/30/06 | P. Clauss* J. Henderson C. Moretti* | P. Clauss* | W. Branch R. Colletta I. Erhardt P. Clauss* | E-mail providing legal advice regarding L. Segatt's Separation and Non-Competition agreements | ACP |
| 11/30/06 | J. Henderson C. Moretti* | P. Clauss* | W. Branch R. Colletta I. Erhardt P. Clauss* | E-mail providing legal advice regarding L. Segatt's Separation and Non-Competition agreements | ACP |
| 11/30/06 | J. Henderson, P. Clauss* | C. Moretti* | W. Branch R. Colletta I. Erhardt | E-mail providing and requesting legal advice regarding amendment to Agromarau Articles of Association | ACP |

| 11/29/06 | | | | Draft of 19th Amendment to the Articles of Incorporation of Agromarau | ACP AWP |
|----------|---|---|---|---|---|
| 11/29/06 | K. Bowsher | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding draft 8-K statement | ACP |
| 11/29/06 | P. Clauss* | K. Bowsher | P. Clauss* | E-mail requesting legal advice regarding draft 8-K statement | ACP |
| 11/28/06 | R. Colletta | C. Moretti* | | E-mail requesting information for purposes of providing legal advice regarding L. Segatt's Separation Agreement | ACP |
| 11/27/06 | A. Janower P. Clauss* | W. Branch | | E-mail reflecting legal advice regarding exchange of L. Segatt Agromarau quotas | ACP |
| 11/24/06 | P. Clauss* W. Branch | C. Moretti* | | E-mail providing legal advise regarding exchange of L. Segatt Agromarau quotas | ACP |
| 11/22/06 | P. Clauss* W. Branch | C. Moretti* | | E-mail reflecting legal advice regarding negotiations with L. Segatt | ACP |
| 11/22/06 | C. Moretti* W. Branch | P. Clauss* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/21/06 | C. Moretti* W. Branch | P. Clauss* | J. Henderson | E-mail requesting legal advice on Non-Competition and Consulting Agreement | ACP |
| 11/21/06 | W. Branch | C. Moretti* | J. Henderson P. Clauss* | E-mail providing legal advice on Non-Competition and Consulting Agreement | ACP |
| 11/21/06 | C. Moretti* | W. Branch | P. Clauss* | E-mail discussing legal advice regarding Non-Competition and Consulting Agreement | ACP |

| 11/21/06 | C. Moretti* | W. Branch | | E-mail discussing legal advice regarding Non-Competition and Consulting Agreement | ACP |
|---|---|---|---|---|---|
| 11/20/06 | C. Moretti* | W. Branch | P. Clauss* J. Henderson | E-mail reflecting legal advice regarding Non-Competition and Consulting Agreement | ACP |
| 11/20/06 | W. Branch P. Clauss* | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/19/06 | P. Clauss* | R. Colletta | C. Moretti* W. Branch R. Christman | E-mail discussing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |
| 11/18/06 | C. Moretti* | P. Clauss* | | E-mail requesting legal advice regarding agreements with L. Segatt | ACP |
| 11/17/06 | P. Clauss* C. Moretti* W. Branch J. Henderson | P. Clauss* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/17/06 | R. Colletta | C. Moretti* | | E-mail requesting information for purposes of providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/16/06 | | P. Clauss* | | Handwritten notes regarding telephone call with W. Branch | ACP AWP |
| 11/16/06 | C. Moretti*, W. Branch J. Henderson | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/16/06 | P. Clauss* W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/15/06 | P. Clauss* W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |

| 11/13/06 | | P. Clauss* | | Handwritten notes regarding changes to Segatt's agreements | ACP AWP |
|---|---|---|---|---|---|
| 11/13/06 | P. Clauss* W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/13/06 | C. Moretti*, W. Branch J. Henderson | P. Clauss* | | E-mail requesting legal advice regarding negotiations with L. Segatt | ACP |
| 11/10/06 | | P. Clauss* | | Handwritten Notes: telephone call with W. Branch | ACP AWP |
| 11/10/06 | W. Branch J. Henderson | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding potential revisions to Separation and Non-Competition and Consulting Agreements | ACP |
| 11/10/06 | C. Moretti*, W. Branch J. Henderson P. Clauss* | P. Clauss* | | E-mail providing legal advice regarding potential revisions to Separation and Non-Competition and Consulting Agreements | ACP |
| 11/10/06 | C. Moretti* W. Branch J. Henderson | P. Clauss* | | E-mail providing legal advice regarding potential revisions to Separation and Non-Competition and Consulting Agreements | ACP |
| 11/10/06 | C. Moretti* | P. Clauss* | P. Clauss* | E-mail communication regarding potential revisions to Separation and Non-Competition and Consulting Agreements | ACP |
| 11/10/06 | P. Clauss* | C. Moretti* | | E-mail communication regarding potential revisions to Separation and Non-Competition and Consulting Agreements | ACP |

| 11/09/06 | W. Branch | J. Henderson | P. Clauss* C. Moretti* R. Christman | E-mail discussing legal advice regarding Separation and Non-Competition and Consulting Agreements | ACP |
|---|---|---|---|---|---|
| 11/09/06 | C. Moretti* | P. Clauss* | P. Clauss* | E-mail communication regarding potential revisions to Separation and Non-Competition and Consulting Agreements | ACP |
| 11/09/06 | P. Clauss* R. Christman W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/09/06 | C. Moretti* R. Christman W. Branch J. Henderson | P. Clauss* | P. Clauss* | E-mail requesting legal advice regarding negotiations with L. Segatt | ACP |
| 11/09/06 | P. Clauss* R. Christman W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/09/06 | W. Branch | P. Clauss* | P. Clauss* | E-mail regarding conflicts check | ACP |
| 11/09/06 | P. Clauss* | W. Branch | | E-mail regarding conflicts check | ACP |
| 11/08/06 | C. Moretti* R. Christman W. Branch J. Henderson | P. Clauss* | | E-mail requesting legal advice regarding negotiations with L. Segatt | ACP |
| 11/08/06 | | P. Clauss* | | Handwritten notes regarding telephone call with W. Branch and R. Christman | ACP |
| 11/08/06 | W. Branch R. Christman | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding Non-Competition and Consulting Agreement | ACP |
| 11/07/06 | P. Clauss* | A. Montgomery | J. Henderson, N. Duhaime | E-mail discussing legal advice for 8-K filing | ACP |
| 11/07/06 | A. Montgomery | P. Clauss* | J. Henderson N. Duhaime P. Clauss* | E-mail providing legal advice regarding 8-K filing | ACP |

| 11/07/06 | P. Clauss* | A. Montgomery | J. Henderson N. Duhaime | E-mail requesting legal advice regarding 8-K filing | ACP |
|---|---|---|---|---|---|
| 11/06/06 | R. Christman, P. Clauss* W. Branch J. Henderson | C. Moretti* | | E-mail providing legal advice regarding negotiations with L. Segatt | ACP |
| 11/04/06 | C. Moretti* P. Clauss* R. Christman W. Branch J. Henderson R. Colletta | R. Christman | | E-mail discussing legal advice regarding negotiations with L. Segatt | ACP |
| 11/03/06 | R. Christman | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding Separation and Non-Competition and Consulting Agreements | ACP |
| 11/03/06 | P. Clauss* | R. Christman | | E-mail responding to inquiry of counsel regarding Separation and Non-Competition and Consulting Agreements | ACP |
| 11/03/06 | R. Christman C. Moretti* W. Branch J. Henderson R. Colletta | P. Clauss* | | E-mail requesting information regarding L. Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 11/03/06 | P. Clauss* C. Moretti* R. Christman W. Branch J. Henderson R. Colletta | R. Christman | | E-mail responding to inquire of counsel regarding for L. Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 11/02/06 | P. Clauss* | W. Branch | | E-mail discussing legal advice regarding negotiations with L. Segatt | ACP |
| 11/02/06 | W. Branch | P. Clauss* | P. Clauss* | E-mail providing legal advice on negotiations with L. Segatt | ACP |
| 11/02/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding negotiations with L. Segatt | ACP |

| 11/02/06 | P. Clauss*<br>R. Colletta | J. Henderson | | E-mail responding to inquiry of counsel regarding negotiations with L. Segatt | ACP |
|---|---|---|---|---|---|
| 11/02/06 | C. Moretti*<br>R. Christman<br>W. Branch<br>J. Henderson<br>R. Colletta | P. Clauss* | P. Clauss* | E-mail requesting legal advice regarding negotiations with L. Segatt | ACP |
| 11/02/06 | | P. Clauss* | | Handwritten notes reflecting attorney-client communications with : with W. Branch | ACP |
| 11/01/06 | P. Clauss* | R. Colletta | W. Branch<br>J. Henderson<br>R. Christman<br>C. Moretti* | E-mail discussing legal advice regarding L. Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 10/31/06 | R. Colletta | P. Clauss* | P. Clauss* | E-mail correspondence regarding Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 10/31/06 | P. Clauss* | R. Colletta | W. Branch<br>J. Henderson | E-mail responding to inquiry of counsel regarding Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 10/31/06 | | P. Clauss* | | Handwritten Notes regarding Brazil borrowing | ACP<br>AWP |
| 10/31/06 | R. Colletta | C. Moretti* | | E-mail providing legal advice regarding L. Segatt's Separation Agreement | ACP |
| 10/26/06 | | P. Clauss* | | Handwritten notes regarding telephone call with J. Henderson, R. Colatta, & N.Duhaime | ACP |
| 10/22/06 | P. Clauss*<br>R. Colletta | C. Moretti* | W. Branch<br>R. Christman | E-mail providing legal advice regarding redemption of L. Segatt's Agromarau quotas | ACP |

| 10/20/06 | R. Colletta | P. Clauss* | C. Moretti*<br>W. Branch<br>R. Christman | E-mail providing legal advice regarding exchange of GSI shares and Agromaru quotas | ACP |
|---|---|---|---|---|---|
| 10/18/06 | J. Henderson | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding exchange of GSI shares and Agromarau quotas | ACP |
| 10/18/06 | P. Clauss* | J. Henderson | | E-mail requesting legal advice regarding exchange of GSI shares and Agromarau quotas | ACP |
| 10/18/06 | C. Moretti* | P. Clauss* | | E-mail requesting legal review of draft Separation Agreement | ACP |
| 10/16/06 | | P. Clauss* | | Handwritten Notes regarding L. Segatt's quotas | ACP<br>AWP |
| 10/16/06 | P. Clauss*<br>W. Branch<br>R. Christman | C. Moretti* | R. Colletta | E-mail providing legal advice regarding exchange of GSI shares and Agromaru quotas | ACP |
| 10/16/06 | C. Moretti*<br>W. Branch<br>R. Christman | P. Clauss* | | E-mail discussing legal advice regarding terms of L. Segatt separation | ACP |
| 10/16/06 | P. Clauss*<br>W. Branch<br>R. Christman | C. Moretti* | | E-mail providing legal advice regarding terms of L. Segatt separation | ACP |
| 10/16/06 | C. Moretti*<br>W. Branch<br>R. Christman | P. Clauss* | | E-mail providing legal advice regarding terms of L. Segatt separation | ACP |
| 10/10/06 | J. Henderson | P. Clauss* | W. Branch<br>N. Duhaime<br>P. Clauss* | E-mail providing legal advice regarding terms of L. Segatt separation | ACP |
| 10/04/06 | J. Henderson<br>P. Clauss* | P. Clauss* | R. Colatta<br>N. Duhaime<br>W. Branch | E-mail providing legal advice regarding terms of L. Segatt separation | ACP |
| 10/03/06 | P. Clauss*<br>C. Moretti* | W. Branch | R. Christman | E-mail discussing legal advice regarding amendment of Agromarau articles of association | ACP |

| 10/03/06 | C. Moretti* | P. Clauss* | W. Branch R. Christman | E-mail discussing legal advice regarding amendment of Agromarau articles of association | ACP |
|---|---|---|---|---|---|
| 10/03/06 | P. Clauss* | C. Moretti* | W. Branch R. Christman | E-mail providing legal advice regarding amendment of Agromarau articles of association | ACP |
| 09/29/06 | W. Branch R. Christman | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding L. Segatt Separation and Non-Competition and Consulting Agreements | ACP |
| 09/27/06 | J. Henderson | P. Clauss* | R.Colatta, N. Duhaime P. Clauss* | E-mail providing legal advice regarding terms of L. Segatt separation | ACP |
| 09/27/06 | J. Henderson | P. Clauss* | R.Colatta N.Duhaime P. Clauss* | E-mail providing legal advice regarding L. Segatt Non-Competition and Consulting Agreement | ACP |
| 09/27/06 | P. Clauss* | J. Henderson | R. Colletta N. Duhaime | E-mail requesting legal advice regarding terms of L Segatt separation | ACP |
| 09/22/06 | W. Branch A. Janower M. Choe | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding terms of L. Segatt separation | ACP |
| 09/15/06 | P. Clauss* | C. Moretti* | W. Branch R. Christman | E-mail providing legal advice on terms of L. Segatt separation | ACP |
| 09/15/06 | P. Clauss* W. Branch | C. Moretti | | Memorandum regarding taxation of stock plans | ACP |
| 09/07/06 | C. Moretti* | P. Clauss* | P. Clauss* W. Branch | E-mail requesting legal advice on terms of L. Segatt separation | ACP |
| 09/07/06 | W. Branch R. Christman | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding of L. Segatt Non-Competition and Consulting Agreement | ACP |

| 08/29/06 | W. Branch C. Moretti* R. Colletta | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
|---|---|---|---|---|---|
| 08/28/06 | | P. Clauss* | | Handwritten Notes regarding telephone call with R. Colletta | ACP AWP |
| 08/28/06 | P. Clauss* | R. Colletta | W. Branch C. Moretti* | E-mail response to inquiry of counsel regarding proposed terms of L. Segatt separation | ACP |
| 08/28/06 | W. Branch C. Moretti* R. Colletta P. Clauss* | P. Clauss* | | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/27/06 | W. Branch | P. Clauss* | | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/26/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/25/06 | W. Branch C. Moretti* R. Colletta | P. Clauss* | | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/24/06 | P. Clauss* | R. Colletta | W. Branch, C. Moretti* | E-mail discussing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/22/06 | R. Colletta | C. Moretti* | P. Clauss* | E-mail discussing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/21/06 | P. Clauss* | C. Moretti* | | E-mail providing legal advice  regarding proposed terms of L. Segatt separation | ACP |
| 08/18/06 | | P. Clauss* | | Handwritten notes regarding telephone call with W. Branch | ACP |

| 08/17/06 | W. Branch<br>C. Moretti*<br>R. Colletta | P. Clauss* | | Memorandum regarding exit payments to L. Segatt | ACP |
|---|---|---|---|---|---|
| 08/17/06 | W. Branch<br>R. Colletta<br>C. Moretti* | P. Clauss* | | E-mail regarding proposed terms of L. Segatt separation | ACP |
| 08/16/06 | W. Branch | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/15/06 | W. Branch | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 08/15/06 | P. Clauss* | R. Colletta | W. Branch | E-mail discussing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 07/27/06 | W. Branch | P. Clauss* | | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 07/27/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding exit payments to L. Segatt | ACP |
| 07/26/06 | | P. Clauss* | | Handwritten notes regarding exit payments to L. Segatt | ACP<br>AWP |
| 07/25/06 | W. Branch | P. Clauss* | | E-mail providing legal advice regarding exit payments to L. Segatt | ACP |
| 07/25/06 | W. Branch | P. Clauss* | | E-mail providing legal advice regarding exit payments to L. Segatt | ACP |
| 07/25/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding exit payments to L. Segatt | ACP |
| 07/25/06 | W. Branch | P. Clauss* | | E-mail providing legal advice regarding exit payments to L. Segatt | ACP |
| 07/25/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding exit payments to L. Segatt | ACP |

| 07/21/06 | W. Branch | P. Clauss* | P. Clauss* | E-mail providing legal advice regarding proposed Non-Competition and Consulting Agreement | ACP |
|---|---|---|---|---|---|
| 07/21/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding proposed Non-Competition and Consulting Agreement | ACP |
| 06/30/06 | C. Moretti* W. Branch R. Christman | P. Clauss* | F. Lamb | E-mail discussing legal advice regarding proposed Non-Competition and Consulting Agreement | ACP |
| 06/30/06 | P. Clauss* W. Branch R. Christman | C. Moretti | F. Lamb | E-mail providing legal advice regarding proposedNon-Competition and Consulting Agreement | ACP |
| 06/28/06 | W. Branch P. Clauss* | P. Clauss* | R. Christman | E-mail providing legal advice regarding proposed terms of L. Segatt separation | ACP |
| 06/27/06 | W. Branch | P. Clauss* | | E-mail requesting legal advice regarding proposed terms of L. Segatt separation | ACP |
| 06/26/06 | C. Moretti* P. Clauss* | P. Clauss* | W. Branch R. Christman | E-mail providing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/26/06 | P. Clauss* | C. Moretti* | W. Branch R. Christman | E-mail providing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/26/06 | J. Henderson | P. Clauss* | P. Clauss* | E-mail requesting information regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/23/06 | C. Moretti* P. Clauss* | P. Clauss* | W. Branch R. Christman | E-mail providing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |

| 06/22/06 | P. Clauss* | C. Moretti* | W. Branch R. Christman | E-mail providing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
|---|---|---|---|---|---|
| 06/19/06 | C. Moretti* | P. Clauss* | W. Branch R. Christman | E-mail discussing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/19/06 | P. Clauss* | C. Moretti* | W. Branch R. Christman | E-mail providing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/14/06 | P. Clauss* W. Branch R. Christman | C. Moretti | | Memorandum regarding tax consequences of repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/12/06 | C. Moretti* P. Clauss* | P. Clauss* | W. Branch R. Christman | E-mail discussing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/12/06 | P. Clauss* | C. Moretti* | W. Branch R. Christman | E-mail providing legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/12/06 | C. Moretti* | P. Clauss* | W. Branch R. Christman P. Clauss | E-mail requesting legal advice regarding repurchase of L. Segatt's Agromarau quotas | ACP |
| 06/05/06 | | P. Clauss* | | Handwritten Notes regarding telephone call with W. Branch | ACP AWP |
| 05/23/06 | P. Clauss* | W. Branch | | E-mail discussing legal advice regarding L. Segatt's resignation | ACP |
| 05/23/06 | W. Branch P. Clauss* | P. Clauss* | | E-mail providing legal advice regarding L. Segatt's resignation | ACP |
| 05/23/06 | W. Branch P. Clauss* | P. Clauss* | | E-mail providing legal advice regarding L. Segatt's resignation | ACP |
| 05/23/06 | P. Clauss* | W. Branch | | E-mail requesting legal advice regarding L. Segatt's resignation | ACP |
| 05/18/06 | P. Clauss* | P. Clauss* | W. Branch | E-mail providing legal advice regarding L. Segatt's resignation | ACP |

-21-

| 05/18/06 | P. Clauss* | P. Clauss* | W. Branch | E-mail providing legal advice regarding L. Segatt's resignation | ACP |
| 01/24/06 | J. Arnold* | P. Clauss* | P. Clauss* | E-mail regarding L. Segatt's U.S. tax obligations | ACP |
| 01/24/06 | P. Clauss* | J. Arnold* | | E-mail regarding L. Segatt's U.S. tax obligations | ACP |
| 01/24/06 | J. Arnold* | P. Clauss* | P. Clauss* | E-mail regarding L. Segatt's U.S. tax obligations | ACP |
| 01/24/06 | P. Clauss* | J. Arnold* | | E-mail regarding L. Segatt's U.S. tax obligations | ACP |

## DOCUMENTS PRODUCED IN REDACTED FORM

| Doc ID | Date | To | From | cc | Description of Redaction | Privilege |
|---|---|---|---|---|---|---|
| 4638 | 12/10/07 | W. Branch | I. Erhardt | | Discussion of communications with C. Moretti* | ACP |
| 4641 | 12/10/07 | W. Branch | I. Erhardt | | Discussion of communications with C. Moretti* | ACP |
| 4642, 4655 | 07/05/07 | J. Henderson | I. Erhardt. | W. Branch | Discussion of communications with C. Moretti* | ACP |
| 4684 | 07/12/07 | J. Henderson I. Erhardt | C. Moretti* | | Legal advice regarding amendment to Agromarau articles of association | ACP |
| 4685 | 06/19/07 | J. Henderson I. Erhardt | C. Moretti* | P. Clauss* A. Ment* M. Tzartzouras* | Legal advice regarding amendment to Agromarau articles of association | ACP |
| 4686 | 06/16/07 | C. Moretti* I. Erhardt | J. Henderson | P. Clauss* A. Ment* M. Tzartzouras* | Request for legal advice regarding amendment to Agromarau articles of association | ACP |

| 4686 | 06/14/07 | C. Moretti*<br>I. Erhardt<br>J. Henderson | P. Clauss* | W. Branch<br>N. Duhaime<br>P. Clauss* | Legal advice regarding amendment to Agromarau articles of association | ACP |
|------|----------|----|----|----|----|----|
| 4687 | 06/13/07 | C. Moretti*<br>I. Erhardt | J. Henderson | P. Clauss*<br>W. Branch<br>N. Duhaime | Request for legal advice regarding amendment to Agromarau articles of association | ACP |
| 4687-88 | 06/06/07 | J. Henderson<br>W. Branch | C. Moretti* | P. Clauss<br>I. Erhardt | Legal advice regarding amendment to Agromarau articles of association | ACP |
| 4691<br>4693 | 07/27/07 | J. Henderson<br>W. Branch | I. Erhardt | J. McGeehan | Description of discussions with C. Moretti* | ACP |
| 4699<br>4706 | 10/25/07 | J. Henderson | C. Moretti* | M. Crippa<br>N. Duhaime<br>S. Chappell | Legal advice regarding return of funds to L. Segatt | ACP |
| 4700<br>4706 | 10/25/07 | M. Crippa<br>J. Henderson | C. Moretti* | N. Duhaime | Legal advice regarding return of funds to L. Segatt | ACP |
| 4701<br>4708 | 10/18/07 | J. Henderson<br>M. Crippa | C. Moretti* | N. Duhaime | Legal advice regarding return of funds to L. Segatt | ACP |
| 4702<br>4708 | 10/18/07 | M. Crippa<br>C. Moretti* | J. Henderson | N. Duhaime | Request for legal advice regarding return of funds to L. Segatt | ACP |
| 4702 | 10/18/07 | J. Henderson | M. Crippa | N. Duhaime | Discussion of communications with C. Moretti* regarding return of funds to L. Segatt | ACP |
| 4727 | 9/27/06 | P. Clauss* | J. Henderson | R. Colletta<br>N. Duhaime | Request for legal advice regarding L. Segatt separation agreements | ACP |
| 04775 | | | | | Handwritten notes of P. Clauss* | ACP<br>AWP |
| 04779 | | | | | Handwritten notes of P. Clauss* | ACP<br>AWP |

| 04785 | | | | | Handwritten notes of P. Clauss* | ACP AWP |
|---|---|---|---|---|---|---|
| 04786 | | | | | Handwritten notes of P. Clauss* | ACP AWP |
| 04810 | 08/10/07 | J. Henderson M. Drachemberg * | C. Moretti* | R. Barcellos* R. Silva* N. Duhaime M. Crippa A. Barbosa | E-mail providing legal advice regarding return of funds to L. Segatt | ACP |
| 04815 | 07/26/06 | R. Colletta | W. Branch | | E-mail attachment consisting of excerpts of legal memorandum prepared by P. Clauss* | ACP |

Dated: Philadelphia, PA
      July 22, 2008

                    PEPPER HAMILTON LLP

                    By:_____
                      Frank H. Griffin, IV
                      3000 Two Logan Square
                      Eighteenth and Arch Streets
                      Philadelphia, PA 19103-2799
                      (215) 981-4247

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of July 2008, a copy of Defendants GSI

Holding Corp. and William J. Branch's Rule Privilege Log was served by Federal Express

overnight delivery on the following:

> Mark P. Zimmett, Esq.
> Law Offices of Mark P. Zimmett
> 126 East 56th Street
> New York, New York 10022
>
> *Attorneys for Plaintiff*
>
> David W. Haller, Esq.
> Covington & Burling LLP
> The New York Times Building
> 620 Eighth Avenue
> New York, NY 10018
>
> *Attorneys for the Charlesbank Defendants*

Frank H. Griffin, IV

Tab 7

| From: | Jeremy.Somers@ubs.com |
|---|---|
| Sent: | Wednesday, April 4, 2007 8:16 PM |
| To: | Janower, Andrew <AJanower@charlesbank.com>; Choe, Michael <MChoe@charlesbank.com>; Greene, Jonathan <jgreene@charlesbank.com> |
| Cc: | Matthew.Spain@ubs.com; Amy.Fujimoto@ubs.com; James.Nappo@ubs.com; Andrew.Gladston@ubs.com; Andrew.Sinclair@ubs.com; Michael.Cooper@ubs.com; Rachel.Senko@ubs.com |
| Subject: | GSI – Initial Bid Summary |
| Attach: | GSI Initial Bid Summary - Sent 4-4-07.pdf;disclaim.txt |

All,

Attached please find our summary of initial bids in preparation of our review call tomorrow. Please note that all bid letters are included in the Appendix of the attached file.

Due to a scheduling conflict, we would like to propose moving tomorrow's call to 8:00pm Eastern / 5:00pm Pacific. Does that time work for everyone? Please let us know and we will send out dial-in information. If that does not work with everyone's schedules, we will stick with our original 6:00pm Eastern proposed time for the call.

Please let me know if you have any questions.

Thank you,

Jeremy

---

Jeremy Somers
UBS Investment Bank
1999 Avenue of the Stars, 34th Floor
Los Angeles, CA  90067
Phone: (310) 556-6709
Fax: (310) 712-2841
E-mail: jeremy.somers@ubs.com

<<GSI Initial Bid Summary - Sent 4-4-07.pdf>>

**CONFIDENTIAL**                                                                 **CB005663**

STRICTLY CONFIDENTIAL



The GSI Group

Overview of Initial Indications of Interest

UBS Investment Bank

April 2007

CONFIDENTIAL

CB005664

# Executive Summary

## Buyer interest in The GSI Group proved high through the initial indication of interest period

- As of April 4, 2007, UBS has received 17 initial indications of interest for The GSI Group

**Buyer Process Summary**

|  | Strategic Buyers | Financial Buyers | Total Buyers |
|---|---|---|---|
| Parties contacted | 47 | 137 | 184 |
| Parties signing CA and receiving CIM | 3 | 50 | 53 |
| **Total first round bids received to date** | **1** | **16** | **17** |

 UBS Investment Bank

# Initial Indications of Interest

## 53 parties received CIMs, of which 17 have submitted initial indications of interest as of April 4, 2007

| Parties Signing Confidentiality Agreement and Receiving CIM | | Initial IOIs Received |
|---|---|---|

**Financial Buyers**

| | | **Strategic Buyers** |
|---|---|---|
| Advent International Corporation | Leonard Green & Partners, L.P. | AG Growth Income Fund |
| AEA Investors LLC | Metalmark Capital LLC | Crown Family |
| American Capital Strategies, Ltd. | MSD Capital L.P. | The Maschhofs, Inc. |
| American Securities Capital Partners, L.P. | Nautic Partners, LLC | |
| Ares Management | NGP Energy Capital Management | |
| Audax Group | Noovest Equity Partners | |
| Aurora Capital Group | Odyssey Investment Partners, L.L.C. | |
| Berkshire Partners | Olympus Partners | |
| Calera Capital (formerly Fremont) | Platinum Equity, LLC | |
| Castle Harlan, Inc. | Quad-C Management | |
| Caxton-Iseman Capital, Inc. | Rhone Capital, L.L.C. | |
| Centerbridge Partners | Soros Private Equity | |
| Claus Corp. (Kanders & Company) | Sterling Group L.P., The | |
| Code Hennessy & Simmons, LLC | Sterling Investment Partners, L.P. | |
| Court Square Capital Partners | Sun Capital Partners, Inc. | |
| Crestview Partners | Wellspring Capital | |
| CVC International | Weston Presidio Capital | |
| DLJ Merchant Banking Partners | York Capital Management | |
| Evercore Partners Inc. | | |
| Ewing Management Group | | |
| Genstar Capital, L.P. | | |
| Gilbert Global Equity Partners | | |
| The Goes Group, LLC | | |
| GSO Capital Partners | | |
| HBK Investments L.P. | | |
| HM Capital Partners LLC | | |
| JVST Equity Partners (Stone Tower) | | |
| Joseph Littlejohn & Levy (JLL Partners) | | |
| Jordan Company, L.P., The | | |
| Kelso & Company | | |
| Kohlberg & Company | | |
| Lehman Brothers Inc. | | |

**Strategic Buyers**

The Maschhofs, Inc.

**Financial Buyers**

Advent International
AEA Investors
American Capital
Castle Harlan
Clarus Corp. (Kanders & Company)
Code Hennessy & Simmons
Crestview Partners
CVC International
Gilbert Global Equity Partners
GSO Capital Partners
JVST Equity Partners - Stone Tower
Kelso & Company
Metalmark Capital
MSD Capital
NGP Midstream & Resources
Rhone Capital


UBS Investment Bank

CONFIDENTIAL

2

# Preliminary Bid Summary

## Enterprise Value ($mm)

| Bidder | Enterprise Value (US$mm) |
|---|---|
| GSO Capital Partners | 590 – 620 |
| American Capital | 545 – 595 |
| Clarus Corp. (Kanders & Co.) | 514 – 547 |
| Advent International | 500 – 550 |
| Crestview Partners | 500 – 550 |
| MSD Capital | 500 – 550 |
| Rhone Capital | 500 – 550 |
| Kelso & Company | 510 – 525 |
| Gilbert Global Equity Partners | 480 – 515 |
| Code Hennessy & Simmons | 475 – 505 |
| AEA Investors | 500 |
| Metalmark Capital | 480 – 500 |
| VST Equity Partners – Stone Tower | 475 – 500 |
| CVC International | 480 |
| NGP Midstream & Resources | 425 – 475 |
| Castle Harlan | 460 |
| The Maschhoffs | |

3


UBS Investment Bank

CONFIDENTIAL                                                    **CB005667**

Preliminary Bid Summary

($ in millions)

| Prospective Buyer | Fund Size (mm) | Bid¹ | EBITDA Basis | Multiple Range | 2006A Multiple |
|---|---|---|---|---|---|
| GSO Capital Partners² | $7,500 | $590 – $620 | 6/30/07 LTM ($67.0mm) | 8.8x – 9.3x | 9.2x – 9.6x |
| American Capital | 1,000 | $545 – $595 | 2006 ($64.3mm) | 8.5x – 9.3x | 8.5x – 9.3x |
| Clarus Corp. (Kanders & Co.) | -- | $514 – $547 | 2006 ($64.3mm) | 8.0x – 8.5x | 8.0x – 8.5x |
| Advent International | 3,300 | $500 – $550 | 2006 ($64.3mm) | 7.8x – 8.6x | 7.8x – 8.6x |
| Crestview Partners | 1,500 | $500 – $550 | -- | -- | 7.8x – 8.6x |
| MSD Capital, L.P. | -- | $500 – $550 | 2006E ($63.8mm) | 7.8x – 8.6x | 7.8x – 8.6x |
| Rhone Capital | 470 | $500 – $550 | -- | -- | 7.8x – 8.6x |
| Kelso & Company | 2,100 | $510 – $525 | -- | -- | 7.9x – 8.2x |
| Gilbert Global Equity Partners | 1,259 | $480 – $515 | 2006 ($64.3mm) | 7.5x – 8.0x | 7.5x – 8.0x |
| Code Hennessy & Simmons | 1,300 | $475 – $505 | 2006 ($64.3mm) | 7.4x – 7.9x | 7.4x – 7.9x |
| AEA Investors | 1,000 | $500 | 2006 ($64.3mm) | 7.8x | 7.8x |
| Metalmark Capital | 3,000 | $480 – $500 | -- | -- | 7.5x – 7.8x |
| JST Equity Partners – Stone Tower | 2,000 | $475 – $500 | 2006E ($63.8mm) | 7.4x – 7.8x | 7.4x – 7.8x |
| CVC International | 1,700 | $480 | -- | -- | 7.5x |
| NGP Midstream & Resources | 1,500 | $425 – $475 | 2007E ($68.0mm) | 6.3x – 7.0x | 6.6x – 7.4x |
| Castle Harlan, Inc. | 1,200 | $460 | 2006E ($63.8mm) | 7.2x | 7.2x |
| The Maschhoffs | -- | -- | 2006 Protein EBITDA | 6.0x – 8.0x | -- |

Note:
1. Assumes all bids are on a cash-free, debt-free basis
2. Bid range of $566 million to $595 million (8.8x – 9.3x) based on 2006A Adjusted EBITDA of $64.3 million

UBS Investment Bank

CONFIDENTIAL

CB005668

# Overview of Initial Bids

| Buyer (Related Investments) | TEV Range (US $mm) | Comments | Diligence / Advisors | Terms / Conditions / Other |
|---|---|---|---|---|
| **GSO Capital Partners** (Axx Max Custom Chemicals) | $590 – $620 | • Anticipate using the UBS staple financing | • Timing: 90 days<br>• Business, legal, financial, tax, accounting, and environmental | |
| **American Capital** (AS Alliance Biofuels) (CST Holdings – manufacturing) (United Food Group) | $545 – $595 | • Acknowledged UBS staple and will consider; if need be, is prepared to fund entire capital structure at closing | • Timing: no later than 60 days<br>• Anticipate accounting, legal, business, insurance, operations, industry and environmental due diligence (diligence partners listed) | • Open to members of senior management investing alongside, support options incentives<br>• Available for presentation on April 26th and 27th |
| **Clarus Corp. (Kanders & Co.)** (Armor Holdings – defense manufacturing) | $514 – $547 | • Significant experience acquiring businesses<br>• Acknowledged UBS staple and will consider it along with other lenders' offerings | • Timing: four to six weeks<br>• Financial, legal, tax and accounting advisors already assembled | • Expects to fund equity portion with $83mm of cash and a private placement with Kanders, affiliated investors or other Clarus shareholders<br>• Clarus maintains $220mm in NOLs; projected to allow for $80mm in tax savings |
| **Advent International** (Boart Longyear – manufacturing) (Moeller – manufacturing) (Aviagen – agribusiness) | $500 – $550 | • Global manufacturing and agribusiness expertise<br>• Have discussed with lenders and will raise debt financing | • Timing: 45 days<br>• Financials, management, growth prospects, key customers, legal accounting, environmental | • Interested in Bill Branch continuing equity ownership and establishing equity incentive plan for management |
| **Crestview (and ContiGroup)** (ContiGroup – leader in integrated pork and poultry production and cattle feeding) | $500 – $550 | • Bidding with select limited partners and ContiGroup Companies, Inc.<br>• Expects to use UBS staple as financing source | • Interview management and key customers<br>• Drivers of growth, operating expense assumptions, capex requirements, dealer network, acquisition opportunities, new products, cyclicality | • Available for presentation on April 24, 25 or 26 |
| **MSD Capital** | $500 – $550 | • Anticipate using the UBS staple financing | • Timing: 42 to 56 days<br>• Financial, key customers, legal, business, accounting | • Would provide senior management with opportunity for tax-free rollover of equity and additional equity incentives<br>• Need to get comfortable with EBITDA adjustments |

 UBS Investment Bank

5

**CONFIDENTIAL**

CB005669

## Overview of initial bids

| Buyer (Related Investments) | TEV Range (US $mm) | Comments | Diligence / Advisors | Terms / Conditions / Other |
|---|---|---|---|---|
| Rhone Capital | $500 – $550 | ● Anticipate using the UBS staple financing | ● Business, growth projections, commercial, operations, benefits, environmental, financial, tax, IT and legal<br>● focus on review of model | ● Would welcome Bill Branch as an advisor and require a transition period<br>● Will structure an incentive program for management, or invite to invest alongside<br>● Subject to Investment Committee approval |
| Kelso & Company (Masland Industries, partnered with Bill Branch) (American Standard) (Custom Building Products) | $510 – $525 | ● Will secure debt financing | ● Product statistics, raw material input statistics, detail behind EBITDA adjustments, acquisition opportunities | ● Subject to Investment Committee approval<br>● Will create equity incentive for management |
| Gilbert Global Equity Partners | $480 – $515 | ● Acknowledged UBS staple and will consider it along with other lenders' offerings | ● Timing: 42 days<br>● Management, financials, growth projections, legal, environmental | |
| Code Hennessy & Simmons (Woods Equipment Company – manufacturing) | $475 – $505 | ● Will raise debt financing<br>● Would like to include ex-Woods Equipment CEO Mike Kerney in discussions; Kerney has been contacted as a potential GSI CEO | ● Customers, suppliers, financials, environmental, legal | ● Subject to Investment Committee approval<br>● Need to get comfortable with EBITDA adjustments |
| AEA Investors | $500 | ● Acknowledged UBS staple and will consider it along with other lenders' offerings | ● Also have an extensive industrial-focused advisory team<br>● financials, legal, business, environmental | ● Need to get comfortable with EBITDA adjustments |
| Metalmark Capital | $480 – $500 | ● Acknowledged UBS staple and will consider it along with other lenders' offerings | ● Working with expert Bruce Scherr, senior advisor to Metalmark, served as CEO of Informa Economics, specializing in agricultural and commodity market research<br>● Also have an extensive advisory board<br>● Business, legal, environmental, tax, accounting | ● Subject to Investment Committee approval<br>● Will want to confirm EBITDA adjustments as non-recurring in nature |

6


UBS Investment Bank

CONFIDENTIAL

CB005670

## Summary of initial bids

| Buyer (Related Investments) | TEV Range (US $mm) | Comments | Diligence / Advisors | Terms / Conditions / Other |
|---|---|---|---|---|
| J/ST Equity Partners – Stone Tower | $475 – $500 | • Will raise debt financing | • Timing: 45 days<br>• Business, financial, accounting, legal | • Expect to create equity incentive for management |
| CVC International | $480 | | | • Management would be encouraged to participate as equity investors on an equal basis, also would offer an incentive plan |
| NGP Midstream & Resources | $425 – $475 | • Will raise debt financing; envisions capital structure comprising 65-70% debt and 25-30% equity | • Timing: 45-75 days<br>• Legal, financial, capex, environmental, regulatory, dealer network, international operations, lean, working cap | • Has received approval needed to provide delivery of a definitive proposal subject to diligence<br>• Available for presentation on April 16th and 17th |
| Castle Harlan, Inc. | $460 | • Acknowledged UBS staple and will consider it along with other lenders' offerings | | • Expect to create or continue substantial equity and cash incentive for management |
| The Maschhoffs | 6x-8x Protein EBITDA | • Only interested in the protein division of the business | • Timing: 90 days<br>• Business, accounting, legal, environmental, management | • Subject to Board approval<br>• Available for presentation any day except April 25th |

7



UBS Investment Bank

CONFIDENTIAL

CB005671

| | |
|---|---|
| **From:** | Andrew.Gladston@ubs.com |
| **Sent:** | Monday, February 12, 2007 3:06 PM |
| **To:** | Janower, Andrew <AJanower@charlesbank.com>; Choe, Michael <MChoe@charlesbank.com>; Greene, Jonathan <jgreene@charlesbank.com> |
| **Cc:** | Matthew.Spain@ubs.com; Andrew.Gladston@ubs.com; Jeremy.Somers@ubs.com; Rachel.Senko@ubs.com; James.Nappo@ubs.com; Andrew.Sinclair@ubs.com; Eyal.Karsh@ubs.com; Amy.Fujimoto@ubs.com |
| **Subject:** | Ag Growth Income Fund Analysis |
| **Attach:** | Ag Growth - IPO vs Sale Analysis Sent 2.12.07.pdf;John McGinty Bio.ppt;disclaim.txt |

Team -

Based on the materials provided, attached please find an analysis regarding the Ag growth Income Fund opportunity. The analysis compares the potential proceeds from a sale of GSI versus a dividend to GSI shareholders followed by a combination with the Ag Growth Income Fund and a subsequent IPO.   In reviewing the IPO alternative, we obtained feedback and comments from John McGinty (bio attached), a senior advisor to our IBD team that was a former research analysts focused on the agriculture and manufacturing industry for almost 30 years.

Once you have reviewed the attached materials, please let us know some times that work for your team to discuss the analysis this week.

Regards,

Andrew

---

**From:** Janower, Andrew [mailto:AJanower@charlesbank.com]
**Sent:** Friday, February 02, 2007 12:49 PM
**To:** Spain, Matthew-IBD+
**Subject:** FW: GSI presentation_Final.ppt

-----Original Message-----
**From:** Tutun, Theodore [mailto:Ted.Tutun@us.cibc.com]
**Sent:** Tuesday, January 30, 2007 10:47 AM
**To:** Janower, Andrew
**Subject:** GSI presentation_Final.ppt

Andrew:

Attached please find some further analysis on a possible AG Growth/GSI combination in preparation for our meeting tomorrow.

Call me to review if you have time.

I look forward to seeing you tomorrow.

Thanks,

Ted

Theodore Tutun

CIBC WM

300 Madison Avenue, 4th Floor

**CONFIDENTIAL**

**CB006492**

New York NY

10017
212-856-3848

Information in this message reflects current market conditions and is subject to change without notice. It is believed to be reliable, but is not guaranteed for accuracy or completeness. Details provided do not supersede your normal trade confirmations or statements. Any product is subject to prior sale. CIBC World Markets Corp, its affiliated companies, and their officers or employees, may have a position in or make a market in any security or instrument described above, and may act as an investment banker or advisor to the issuer of such. Although CIBC World Markets Corp. is an indirect, wholly owned subsidiary of Canadian Imperial Bank of Commerce ("CIBC"), it is solely responsible for its contractual obligations. Unless otherwise agreed in writing, any securities products recommended, purchased, or sold in any client accounts by CIBC World Markets Corp. (i) will not be insured by the FDIC,(ii) will not be deposits or obligations of CIBC,(iii) will not be endorsed or guaranteed by CIBC, and (iv) will be subject to risks, including possible loss of principal invested.

CONFIDENTIAL

CB006493

**Value to GSI Shareholders - Sale Process vs. Ag Growth Transaction - Excluding Synergies**

| | | | | | |
|---|---|---|---|---|---|
| ***Value to GSI Shareholders - Sale Process*** | | | | | |
| Estimated GSI Enterprise Value | $475.0 | $500.0 | $525.0 | $550.0 | $575.0 |
| *Implied Multiple of 2006 GSI Adjusted EBITDA* | *7.5x* | *7.9x* | *8.3x* | *8.7x* | *9.1x* |
| Less: Existing GSI Debt | (110.1) | (110.1) | (110.1) | (110.1) | (110.1) |
| **Estimated Equity Value to GSI Shareholders** | **$364.9** | **$389.9** | **$414.9** | **$439.9** | **$464.9** |
| **Estimated Equity Value to CB** | **277.3** | **296.3** | **315.3** | **334.3** | **353.3** |
| | | | | | |
| ***Value to GSI Shareholders - Ag Growth Transaction*** | | | | | |
| Pre-Transaction Dividend[1] | $214.9 | $239.9 | $264.9 | $289.9 | $314.9 |
| Value of GSI Ownership of NewCo IPO Equity Value | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 |
| **Estimated Equity Value to GSI Shareholders** | **$364.9** | **$389.9** | **$414.9** | **$439.9** | **$464.9** |
| **Estimated Equity Value to CB** | **277.3** | **296.3** | **315.3** | **334.3** | **353.3** |
| | | | | | |
| Post-Money IPO Equity Value | $422.4 | $448.8 | $475.2 | $501.7 | $528.1 |
| Plus: NewCo Debt, Pre-IPO[2] | 239.4 | 238.0 | 236.6 | 235.1 | 233.7 |
| Post-Money IPO Enterprise Value | $661.8 | $686.8 | $711.8 | $736.8 | $761.8 |
| | | | | | |
| **Statistics** | | | | | |
| NewCo PF Debt / 2006E EBITDA | 2.8x | 2.8x | 2.8x | 2.7x | 2.7x |
| Fully Distributed Valuation | | | | | |
| NewCo Enterprise Value / 2007E Sales | 1.3x | 1.3x | 1.4x | 1.4x | 1.5x |
| NewCo Enterprise Value / 2007E EBITDA | 7.6x | 7.9x | 8.2x | 8.5x | 8.8x |
| NewCo Equity Value / 2007E Net Income | 12.9x | 13.6x | 14.4x | 15.2x | 15.9x |
| | | | | | |
| NewCo Enterprise Value / 2008E Sales | 1.1x | 1.2x | 1.2x | 1.3x | 1.3x |
| NewCo Enterprise Value / 2008E EBITDA | 6.4x | 6.7x | 7.0x | 7.2x | 7.5x |
| NewCo Equity Value / 2008E Net Income | 10.3x | 11.0x | 11.6x | 12.2x | 12.8x |
| IPO Valuation | | | | | |
| NewCo Enterprise Value / 2007E Sales | 1.2x | 1.2x | 1.2x | 1.3x | 1.3x |
| NewCo Enterprise Value / 2007E EBITDA | 6.8x | 7.0x | 7.3x | 7.6x | 7.8x |
| NewCo Equity Value / 2007E Net Income | 10.9x | 11.6x | 12.2x | 12.9x | 13.5x |
| | | | | | |
| NewCo Enterprise Value / 2008E Sales | 1.0x | 1.1x | 1.1x | 1.1x | 1.2x |
| NewCo Enterprise Value / 2008E EBITDA | 5.8x | 6.0x | 6.2x | 6.4x | 6.7x |
| NewCo Equity Value / 2008E Net Income | 8.8x | 9.3x | 9.8x | 10.4x | 10.9x |

1) Est. dividend required to achieve 50%/50% equity ownership of combined company, pre-IPO, with Ag Growth Income Fund at GSI EBITDA Valuation multiples shown

2) Includes GSI debt of $110.1mm, debt related to GSI dividend, and Ag Growth Income Fund debt of $36.8mm

3) Based on assumed cost of debt of 9% and tax rate of 38%.

**CONFIDENTIAL**

**CB006494**

**NewCo IPO Valuation Excluding Synergies**

*(US$ mm)*

| Valuation Multiple[1] | 2008E EBITDA Multiple | | | | |
|---|---|---|---|---|---|
| | 6.4x | 6.7x | 7.0x | 7.2x | 7.5x |
| 2008 NewCo EBITDA[2] | $114.4 | $114.4 | $114.4 | $114.4 | $114.4 |
| Implied TEV | 736.3 | 766.0 | 795.7 | 825.3 | 855.0 |
| Less: PF Debt[3] | (239.4) | (238.0) | (236.6) | (235.1) | (233.7) |
| **Fully-Distributed Equity Value** | **496.9** | **528.0** | **559.1** | **590.2** | **621.3** |
| Less: 15% IPO Discount | (74.5) | (79.2) | (83.9) | (88.5) | (93.2) |
| **Post-Money IPO Equity Value** | **422.4** | **448.8** | **475.2** | **501.7** | **528.1** |
| **Post-Money IPO Enterprise Value** | **661.8** | **686.8** | **711.8** | **736.8** | **761.8** |
| Total Offering | 122.3 | 148.7 | 175.2 | 201.6 | 228.0 |
| % Float | 29.0% | 33.1% | 36.9% | 40.2% | 43.2% |
| **Post-IPO NewCo Ownership** | | | | | |
| Existing Owners | 71.0% | 66.9% | 63.1% | 59.8% | 56.8% |
| IPO Investors | 29.0% | 33.1% | 36.9% | 40.2% | 43.2% |
| Ag Growth Ownership | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 |
| Ownership % | 35.5% | 33.4% | 31.6% | 29.9% | 28.4% |
| GSI Ownership | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 |
| Ownership % | 35.5% | 33.4% | 31.6% | 29.9% | 28.4% |
| **Total Value to GSI Shareholders** | | | | | |
| Equity Value of NewCo Ownership % | 150.0 | 150.0 | 150.0 | 150.0 | 150.0 |
| Proceeds from Dividend | 214.9 | 239.9 | 264.9 | 289.9 | 314.9 |
| **Total Value to GSI Shareholders** | **$364.9** | **$389.9** | **$414.9** | **$439.9** | **$464.9** |

Notes:

1) Valuation multiples determined such that total proceeds from an IPO plus a dividend equal to expected proceeds from sale values

2) GSI EBITDA per management projections, Ag Growth Income Fund EBITDA per IBES estimates plus estimated EBITDA from Hansen;
   does not include any potential transaction synergies or public company expenses

3) Includes GSI debt of $110.1mm, debt related to GSI dividend, and Ag Growth Income Fund debt of $36.8mm. Assumes offering proceeds used to pay down debt.

## Ag Growth Income Fund and GSI Combination Analysis

**The GSI Group**
*($ in USD mm)*

| 2007E Adj. EBITDA | $70.1 | $70.1 | $70.1 | $70.1 | $70.1 |
|---|---|---|---|---|---|
| Valuation Multiple | 6.8x | 7.1x | 7.5x | 7.8x | 8.2x |
| **Total Est. Enterprise Value** | **$475.0** | **$500.0** | **$525.0** | **$550.0** | **$575.0** |
| Less: Total Debt | (110.1) | (110.1) | (110.1) | (110.1) | (110.1) |
| **Total Equity Value** | **$364.9** | **$389.9** | **$414.9** | **$439.9** | **$464.9** |
| Less: Req'd. Dividend to achieve 50% NewCo Ownership | (214.9) | (239.9) | (264.9) | (289.9) | (314.9) |
| **Total Adjusted Equity Value** | **$150.0** | **$150.0** | **$150.0** | **$150.0** | **$150.0** |

**Leverage**

| 2006 Adj. EBITDA | $63.3 | $63.3 | $63.3 | $63.3 | $63.3 |
|---|---|---|---|---|---|
| Total Debt, Pre-Dividend | 110.1 | 110.1 | 110.1 | 110.1 | 110.1 |
| Total Debt, Post-Dividend | 325.0 | 350.0 | 375.0 | 400.0 | 425.0 |
| Existing Total Debt / 2006 EBITDA | 1.7x | 1.7x | 1.7x | 1.7x | 1.7x |
| Total Debt, Post-Dividend / 2006 EBITDA | 5.1x | 5.5x | 5.9x | 6.3x | 6.7x |

**NewCo Equity and Leverage**
*($ in USD mm)*

| NewCo Equity | | % of total | | | |
|---|---|---|---|---|---|
| Ag Growth | $150.0 | 50.0% | | | |
| GSI (Post-Dividend) | 150.0 | 50.0% | | | |
| **Total NewCo Equity Value** | **$300.1** | **100.0%** | | | |

| NewCo Debt | | | | | |
|---|---|---|---|---|---|
| GSI Existing Debt | $110.1 | $110.1 | $110.1 | $110.1 | $110.1 |
| GSI Dividend-Related Debt | 214.9 | 239.9 | 264.9 | 289.9 | 314.9 |
| **GSI Total Debt** | **325.0** | **350.0** | **375.0** | **400.0** | **425.0** |
| Ag Growth Debt | 36.8 | 36.8 | 36.8 | 36.8 | 36.8 |
| **Total NewCo Debt** | **$361.7** | **$386.7** | **$411.7** | **$436.7** | **$461.7** |

| NewCo 2006E EBITDA | | | | | |
|---|---|---|---|---|---|
| Ag Growth PF EBITDA (incl. Hansen) | $22.6 | $22.6 | $22.6 | $22.6 | $22.6 |
| GSI Adj. EBITDA | 63.3 | 63.3 | 63.3 | 63.3 | 63.3 |
| **Combined NewCo 2006E EBITDA** | **$85.9** | **$85.9** | **$85.9** | **$85.9** | **$85.9** |
| Synergies | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 |
| **Combined NewCo 2006E EBITDA with Synergies** | **$90.9** | **$90.9** | **$90.9** | **$90.9** | **$90.9** |

| IPO Size without Synergies | | | | | |
|---|---|---|---|---|---|
| NewCo Net Debt / 2006 EBITDA | 4.2x | 4.5x | 4.8x | 5.1x | 5.4x |
| Target NewCo Net Debt / EBITDA | 2.9x | 2.9x | 2.9x | 2.9x | 2.9x |
| Required Reduction to NewCo Debt | $115.6 | $140.6 | $165.6 | $190.6 | $215.6 |
| Plus: IPO Fees | 6.6 | 8.1 | 9.5 | 11.0 | 12.4 |
| **Total IPO Size** | **$122.3** | **$148.7** | **$175.2** | **$201.6** | **$228.0** |

| IPO Size with Synergies | | | | | |
|---|---|---|---|---|---|
| NewCo Net Debt / 2006 EBITDA | 4.0x | 4.3x | 4.5x | 4.8x | 5.1x |
| Target NewCo Net Debt / EBITDA | 2.9x | 2.9x | 2.9x | 2.9x | 2.9x |
| Required Reduction to NewCo Debt | $101.3 | $126.3 | $151.3 | $176.3 | $201.3 |
| Plus: IPO Fees | 5.8 | 7.3 | 8.7 | 10.1 | 11.6 |
| **Total IPO Size** | **$107.1** | **$133.6** | **$160.0** | **$186.4** | **$212.9** |

**CONFIDENTIAL**

**CB006496**

**Ag Growth Income Fund and GSI Combination Analysis**

| Ag Growth Income Fund | | Notes |
|---|---|---|
| *($ in mm CAD, except per unit items)* | | |
| Unit Price (2/6/07) | C$17.15 | |
| Less: Est. Value of Income Trust Status | (1.33) | Canaccord Adams research report 12/22/06, p. 11 |
| Unit Price, Net | C$15.82 | |
| Units Outstanding | 11.225 | As per 9/30/06 quarterly report, p. 3 |
| **Equity Value, Net** | **C$177.58** | |
| Plus: Total Debt | 43.5 | As per CIBC presentation, PF for Hansen acq. |
| **Total Enterprise Value, Net** | **C$221.08** | |
| | | |
| 2006E EBITDA | C$22.4 | |
| 2006PF EBITDA (Incl. Hansen) | C$26.7 | |
| 2007E EBITDA | C$27.3 | |
| 2007PF EBITDA (Incl. Hansen) | C$32.3 | |
| | | |
| TEV / 2006E EBITDA | 9.9x | |
| TEV / 2006PF EBITDA (Incl. Hansen) | 8.3x | |
| TEV / 2007E EBITDA | 8.1x | |
| **TEV / 2007PF EBITDA (Incl. Hansen)** | **6.8x** | |

| Ag Growth Income Fund | |
|---|---|
| *($ in mm USD, except per unit items)* | |
| Unit Price (2/6/07) | $14.49 |
| Less: Est. Value of Income Trust Status | (1.12) |
| Unit Price, Net | $13.37 |
| Units Outstanding | 11.225 |
| **Equity Value, Net** | **$150.0** |
| Plus: Total Debt | 36.8 |
| **Total Enterprise Value, Net** | **$186.8** |
| | |
| 2006E EBITDA | 18.9 |
| 2006PF EBITDA (Incl. Hansen) | 22.6 |
| 2007E EBITDA | 23.1 |
| 2007PF EBITDA (Incl. Hansen) | 27.3 |
| | |
| TEV / 2006E EBITDA | 9.9x |
| TEV / 2006PF EBITDA (Incl. Hansen) | 8.3x |
| TEV / 2007E EBITDA | 8.1x |
| **TEV / 2007PF EBITDA (Incl. Hansen)** | **6.8x** |

**CONFIDENTIAL**

Tab 8

| | |
|---|---|
| **From:** | Jeremy.Somers@ubs.com |
| **Sent:** | Wednesday, May 9, 2007 5:28 PM |
| **To:** | Jeremy.Somers@ubs.com; Davis, Kim <kdavis@charlesbank.com>; Janower, Andrew <AJanower@charlesbank.com>; Choe, Michael <MChoe@charlesbank.com>; Greene, Jonathan <jgreene@charlesbank.com> |
| **Cc:** | Amy.Fujimoto@ubs.com; Matthew.Spain@ubs.com; James.Nappo@ubs.com; Andrew.Gladston@ubs.com; Andrew.Sinclair@ubs.com; Rachel.Senko@ubs.com; Michael.Cooper@ubs.com |
| **Subject:** | RE: GSI - 6PM ET/3PM PT Call |
| **Attach:** | GSI - Second Round Bids - Sent 5.9.2007pm.pdf;disclaim.txt |

All,

In preparation for our call at 6:00pm Eastern/3:00pm Pacific, attached please find a revised bid summary for GSI reflecting the recent submission from Code Hennessy.

Thank you,

Jeremy

<<GSI - Second Round Bids - Sent 5.9.2007pm.pdf>>

---

**From:** Somers, Jeremy-IBD+
**Sent:** Wednesday, May 09, 2007 11:01 AM
**To:** kdavis@charlesbank.com; 'AJanower@charlesbank.com'; 'MChoe@charlesbank.com'
**Cc:** Spain, Matthew-IBD+; Nappo, James-IBD+; Gladston, Andrew-IBD+ [LA]; Sinclair, Andrew-IBD+; Senko, Rachel-IBD+; Cooper, Michael-IBD+

**Subject:** GSI - 6PM ET/3PM PT Call

All,

Attached please find the summary of second round bids for GSI and the individual bid letters we have received to this point. Dial-in information for our call later today to discuss these bids is below:

| | |
|---|---|
| Date: | May 9, 2007 (Wednesday) |
| Time: | 6:00 PM Eastern / 3:00 PM Pacific |

| | |
|---|---|
| Internal: | 19337.0070 |
| External: | (203) 719-0070 |
| Toll Free: | (877) 315-5218 |

| | |
|---|---|
| Participant PIN: | 677493 |

Please let us know if you have any problems with the dial-in or the attachment.

Thank you,

Jeremy

**CONFIDENTIAL**                                                                    **CB005732**

Jeremy Somers
UBS Investment Bank
1999 Avenue of the Stars, 34th Floor
Los Angeles, CA  90067
Phone: (310) 556-6709
Fax: (310) 712-2841
E-mail: jeremy.somers@ubs.com

**CONFIDENTIAL**

**CB005733**

STRICTLY CONFIDENTIAL



The GSI Group

Overview of 2nd Round Interim Bids

May 9, 2007

UBS Investment Bank

May 2007

CONFIDENTIAL

CB005734

# Executive Summary

- The interim bid objectives include: 1) identifying the most interested and qualified buyers and 2) obtaining updated views on valuation post management meetings and a review of data room materials

- As of May 9, 2007, UBS has received 5 second round interim bids for GSI

**Buyer Process Summary**

| | Total Buyers |
|---|---|
| Initial Indications Received | 17 |
| Attended Management Presentations | 9 |
| 2nd Round Interim Bids Received | 5 |



CONFIDENTIAL

CB005735

# 2nd Round Interim Bid Summary

**Enterprise Value ($mm)**

Enterprise Value (US$mm)

GSO — $640, $665

Code Hennessy & Simmons — $475, $520, $535, $505, $550

Kelso & Company — $510, $525

Metalmark — $510, $525

Crestview Partners — $480, $500, $550, $506, $515, $500, $550, $590, $620

$450  $475  $500  $525  $550  $575  $600  $625  $650  $675  $700

Legend:
- Second Round Bid
- Initial Verbal Indication
- Initial Indication

CONFIDENTIAL



## Project [...] Summary

($ in millions)

| Prospective Buyer | Fund Size (mm) | 2nd Round Interim Bid¹ 5-8-07 | Initial Bid¹ 4-4-07 | 2nd Round Interim Bid 6/30/07 LTM Multiple | Key Considerations |
|---|---|---|---|---|---|
| **CAPITAL PARTNERS** | $7,500 | $640 – $665 | $590 – $620 | 9.0x – 9.3x | • Had a follow up diligence meeting with management on 5/2/07<br>• Will ask management to rollover approx 50% of after-tax proceeds into the transaction and will grant management options (10% of equity)<br>• 2007 projected average revolver balance of not greater than $10.0 million<br>• Anticipated signing by June 4th and closing by June 30th; willing to accelerate timeframe if granted a 15-day exclusivity period<br>• Engaged full team of advisors and outside consultants<br>• Intends to utilize UBS staple |
| Code Hennessy & Simmons LLC | 1,300 | $520 – $535 | $475 – $505 | 7.3x – 7.5x | • Will support management with additional capital for add-on acquisitions or intrinsic growth opportunities<br>• Intends to utilize other third party financing |
| Kelso & Company | 2,100 | $510 – $525 | $510 – $525 | 7.1x – 7.3x | • Will encourage management to make meaningful equity investment and will install equity incentive plans<br>• Intends to utilize UBS staple |
| Metalmark Capital | 3,000 | $510 – $525 | $480 – $500 | 7.1x – 7.3x | • Will encourage management to rollover equity and would provide management with various incentives<br>• Engaged legal, accounting and tax advisors<br>• Intends to utilize UBS staple or other third-party financing |
| Crestview Partners | 1,500 | $500 – $515 | $500 – $550 | 7.0x – 7.2x | • Will encourage management to rollover a portion of its equity and provide management with an equity participation and bonus incentive plan<br>• Intends to utilize UBS staple |

Note:
1  Assumes all bids are on a cash-free, debt-free basis

UBS Investment Bank

CONFIDENTIAL

Tab 9

| | |
|---|---|
| **From:** | John Henderson <John.Henderson@thegsigroup.biz> |
| **Sent:** | Saturday, May 19, 2007 4:05 PM |
| **To:** | Janower, Andrew <AJanower@charlesbank.com> |
| **Subject:** | RE: GSI Holdings Wire Transfer to Leo Segatt: 2nd Amendment of Separation Agreement Canceling Purchase of GSI Holding Shares |

He owns "Zero" Shares in GSI Holdings.  Buying back his 3,072 at the $150.00 per share helps all shareholders benefit from less dilution.

-----Original Message-----
From: Janower, Andrew [mailto:AJanower@charlesbank.com]
Sent: Saturday, May 19, 2007 3:01 PM
To: John Henderson
Subject: Re: GSI Holdings Wire Transfer to Leo Segatt: 2nd Amendment of Separation Agreement Canceling Purchase of GSI Holding Shares

Cool, so does he own any shares of holdings or no shares?

------------------------------------------------------------------------
----------------
Please excuse any typos -- sent via Blackberry.

----- Original Message -----
From: John Henderson <John.Henderson@thegsigroup.biz>
To: Janower, Andrew
Cc: Choe, Michael; Davis, Kim; Greene, Jonathan
Sent: Sat May 19 15:31:58 2007
Subject: FW: GSI Holdings Wire Transfer to Leo Segatt: 2nd Amendment of Separation Agreement Canceling Purchase of GSI Holding Shares

This is a done deal.  GSI Holdings returned Leo's money on Friday, May 11th.

I plan to post the original, 1st and (attached) 2nd separation agreements/amendments for Leo to the data warehouse.

Bill and I can discuss this further with you on Monday\Tuesday.
Thanks to Ingo for the execution on this.

Regards, John

_____

From: John Henderson
Sent: Friday, May 11, 2007 6:35 PM

CONFIDENTIAL

CB014618

To: Moretti, Claudio M.
Cc: 'Ingo'; 'Clauss, Peter'; Wjbranch@aol.com; Taylor, Carolyn; Nathalie Duhaime
Subject: GSI Holdings Wire Transfer to Leo Segatt: 2nd Amendment of Separation Agreement Canceling Purchase of GSI Holding Shares

REDACTED

John W. Henderson

Chief Financial Officer

The GSI Group, Inc.

CONFIDENTIAL

CB014619

E-Mail: john.henderson@thegsigroup.biz
<mailto:john.henderson@thegsigroup.biz>

Office: (217) 226-5468

Office Fax: (217) 226-6468

_____

From: Rafael Coletta [mailto:rafaelcoletta@gsibrasil.ind.br]
Sent: Thursday, May 10, 2007 3:57 PM
To: John Henderson
Subject: RE: Return of Funds to Leo Segatt


Amount:   1,029,138.74 Real - Transfer is Local Currency

Bank Name: Banco do Brasil S.A. - New York

ABA#: 026003557

Account Number: 001072690000157333

Name on Account: Leonardo Segatt

SWIFT: BRASUS33

CONFIDENTIAL

CB014620

Tab 10

# GSI Holdings
## Capitalization on June 1, 2007 Proforma

| | | | Original Investment | Common Shares | Options | Strike Price | Time Vested | Performance Vested | Shares as of 5/07 | Comment |
|---|---|---|---|---|---|---|---|---|---|---|
| **Institutional Investors** | | | | | | | | | | |
| Total Unaffiliated | | | 48,635,000 | 495,350 | - | - | - | - | 495,350 | |
| Unaffiliated Institutional Investors | | | 1,750,000 | 17,500 | - | - | - | - | 17,500 | Branch time vest: 2,500 upon grant, 5,000 over 5 years |
| Other non-management co-investors | | | 800,000 | 8,000 | 12,500 | 100 | 7,500 | 5,000 | 495,350 | Christman invested $500k on 10/4, and another $500k by 10/28 |
| **Management co-investors** | | | | | | | | | | |
| Branch | Bill | Chairman | 500,000 | 5,000 | 12,500 | 100 | 7,500 | 5,000 | 17,500 | Christman invested $500k on 10/4, and another $500k by 10/28 |
| Christman | Richard | CEO | 1,000,000 | 10,000 | 2,000 | 100 | 2,000 | | 12,000 | Christman time vested are 100% vested as of 12/31/07 |
| Sub-total | | | 1,500,000 | 15,000 | 14,500 | | 9,500 | 5,000 | 29,500 | |
| **Original Shareholders under prior owner** | | | | | | | | | | |
| Anfabla | Dave | Chran | 250,000 | 2,500 | 4,750 | 100 | 4,750 | | 7,250 | |
| Basham | Steve | HR | 200,000 | 2,000 | 3,250 | 100 | 3,250 | | 5,250 | |
| Brotherton | Mike | COO | 200,000 | 2,000 | 3,250 | 100 | 3,250 | | 6,250 | |
| Brown | Ricardo | International | 100,000 | 1,000 | 1,250 | 100 | 1,250 | | 2,250 | |
| Dietrich | Al | Sales | 250,000 | 2,500 | 4,750 | 100 | 4,750 | | 7,250 | |
| Gluck | Donald | Production control | 175,000 | 1,750 | 2,750 | 100 | 2,750 | | 4,500 | |
| Oakter | Mark | Chran | 75,000 | 750 | 750 | 100 | 750 | | 1,500 | |
| Jorden | Charlie | Poultry | 75,000 | 750 | 750 | 100 | 750 | | 1,600 | |
| Meyer | Doug | Purchasing | 150,000 | 1,500 | 2,250 | 100 | 2,250 | | 3,750 | |
| Montgomery | Ann | Finance | 100,000 | 1,000 | 800 | 100 | 800 | | 1,800 | |
| Nload | Don | Chran | 180,000 | 1,500 | 2,250 | 100 | 2,250 | | 3,750 | |
| Pollock | Gene | R&D | 70,000 | 700 | 700 | 100 | 700 | | 1,400 | |
| Prejbent | Larry | International | 28,000 | 280 | 250 | 100 | 250 | | 500 | |
| Shuler | Bud | Chran | 100,000 | 1,000 | 1,250 | 100 | 1,250 | | 2,250 | |
| Stallman | Tom | Sales | 175,000 | 1,750 | 2,750 | 100 | 2,750 | | 4,500 | |
| Vestel | David | International | 250,000 | 2,500 | 4,750 | 100 | 4,750 | | 7,250 | |
| Wisman | Craw | Chran | 250,000 | 2,500 | 4,750 | 100 | 4,750 | | 7,250 | |
| Sub-total | | | 2,585,000 | 26,950 | 40,650 | | 40,650 | | 66,000 | |
| **Additional Shareholders under Christman/Fx** | | | | | | | | | | |
| Baker | Mike | Manufacturing | 60,000 | 600 | 600 | 100 | 600 | | 1,000 | Bond vesting start date is 12/19/05 |
| Bond | Mike | Manufacturing | 60,000 | 600 | 600 | 100 | 600 | | 1,000 | Duhaime vesting start date is 6/5/06 |
| Duhaime | Nathalie | Finance | 57,000 | 600 | 600 | 115 | 600 | | 1,000 | |
| Frymen | Tom | Production control | 76,000 | 750 | 600 | 100 | 600 | | 1,250 | |
| Ge | Yan | Malaysia | 60,000 | 384 | 600 | 100 | 800 | | 584 | Henderson vesting start date is 2/13/06 |
| Henderson | Jim | CFO | 250,000 | 2,500 | 2,000 | 100 | 1,000 | 1,000 | 4,500 | McQuelhan vesting start date is 1/30/06 |
| Lumber | Jim | Manufacturing | 50,000 | 600 | 600 | 100 | 1,000 | | 2,000 | |
| McQuelhan | John | VP of HR | 100,000 | 1,000 | 1,000 | 100 | 500 | | 600 | |
| Mountz | David | IT | | | 500 | 100 | 500 | | 500 | Schletper vesting start date is 12/25/05 |
| Pittman | Rex | Manufacturing | | | 500 | 100 | 1,000 | | 3,500 | Watson vesting start date is 1/21/05 |
| Schletger | Dennis | Grain Division President | 250,000 | 2,500 | 1,000 | 100 | 1,000 | | 3,100 | Zabick exercised vested options on 9/30/07 |
| Watson | Vijil | VP of Engineering | 210,000 | 2,100 | 1,000 | 100 | 1,000 | | 100 | Adams vesting start date is 10/16/06 |
| Zabick | Matt | Purchasing | 100 | | | 100 | | | 500 | Berth vesting start date is 7/31/06 |
| Adams | Don | US | - | 600 | 150 | 900 | | | 500 | Colette vesting start date is 5/16/05 |
| Berth | Joy | Product Management | - | 500 | 150 | 900 | | | 200 | Enhardt vesting start date is 10/25/06 |
| Colette | Ref | Brazil | - | 1,000 | 150 | 1,000 | | | 1,000 | Fuqua vesting start date is 9/14/06 |
| Enhardt | Ingo | President, Agromarex | - | 1,000 | 150 | 1,000 | | | 1,000 | Garrett vesting start date is 11/14/05 |
| Fuqua | Mike | Supply Chain | - | 500 | 150 | 500 | | | 500 | Sardin vesting start date is 5/1/05 |
| Garrett | Tim | Marketing | - | 200 | 150 | 200 | | | 200 | |
| Sardin | Alexandre | Brazil | - | | 150 | | | | | |
| Segati | Leo | Brazil | - | | 100 | | | | | |
| Sub-total | | | 1,142,500 | 11,284 | 12,000 | | 11,900 | 1,000 | 24,184 | |
| Total Management | | | 5,227,500 | 53,234 | 68,350 | | 65,350 | 6,000 | 120,884 | |
| GRAND TOTAL | | | $ 54,662,500 | 656,484 | 68,350 | | 65,350 | 6,000 | 654,584 | |
| | | | | | | | Less: unvested | | (2,584) | |
| | | | | | | | fully diluted at exit | | 652,000 | |

* Vesting for these individuals on change of control is pro-rata to month prior to closing plus 12 months

**Notes:**
CEO "direct reports" includes Deutsch, Bond, Heidmann, McQuelhan, Schletger, Watson, Enhardt & Fuqua (n=8)
Former Senior executives includes Christman, Montgomery, Zabick & Segati (n=4)
Other Senior management includes everyone else
Cap table excludes GoC shares to be allocated (TBD, but most likely economic equivalent of 12,000 incremental options at $100 per share)

GSI Confidential

CONFIDENTIAL

CB007194

Tab 11

# NON-COMPETITION AND CONSULTING AGREEMENT

THIS AGREEMENT, dated November 13, 2006, by and among **Agromarau Industria e Comercio Ltda.**, a Brazilian limited liability quota company having its principal address at the City of Marau, state of Rio Grande do Sul, Brazil, at Rodovia RS 324, Km 80,13, CEP 99150-000 ("Agromarau"); **The GSI Group, Inc.**, a company organized and existing under the laws of the state of Delaware, United States of America, and the majority quotaholder in Agromarau, having its principal address at 1004 E. Illinois St., Assumption, IL 62510 ("GSI"), in this Agreement acknowledged by itself and also represented by its Chairman, William J. Branch, an American citizen, resident in the United States of America, at the city of Wilmington, State of North Carolina, 114 Old Camp Road; **GSI Holdings Corp.**, a company organized and existing under the laws of the state of Delaware, United States of America, and the parent company of GSI, having its principal address at 1004 E. Illinois St., Assumption, IL 62510, (Holdings") in this Agreement acknowledged by itself and also represented by one of its directors, William J. Branch, (same as above); **Leonardo Segatt**, ("Segatt"), a Brazilian citizen and businessman, married, registered with the SSP under No. 2021837899 and at the Taxpayer's Registry (CPF/MF) under No. 374.013.430-53, and resident at Marau, State of Rio Grande do Sul, at Rua Duque de Caxias, No. 444-ZIP 99.150-000; **and Colloni Participações Ltda.** ("Colloni"), a Brazilian company, controlled by Segatt, with its principal address at Av. Julio Barella, 1065, sala 203, Marau, Rio Grande do Sul, registered at the Taxpayer's Registry ("CNPJ") under n° 05913948/0001-51, in this Agreement acknowledged by itself and also represented by its director, Leonardo Segatt.

#1924013 v5

GSI0039

WHEREAS, Segatt has voluntarily resigned from his duties as General Manager of Agromarau, effective November 4, 2006; and

WHEREAS, Agromarau and its majority quotaholder, GSI, desire to protect and preserve the business of Agromarau; and

WHEREAS, Segatt agrees that in his capacity as the former General Manager of Agromarau he has acquired valuable information and knowledge, much of which is confidential, regarding its business and business relationships; and

WHEREAS, Segatt agrees that Agromarau and GSI are entitled to the fullest protection at law and in equity against competition or interference from Segatt in the businesses of Agromarau in the geographical area and for the period of time hereinafter provided; and

WHEREAS, Agromarau and GSI are desirous of protecting the market share of Agromarau in the farm equipment industry and are willing to pay Segatt to derive exclusive use of Segatt's general and specific knowledge in the industry and with respect to Agromarau's business, and to deny that expertise to Agromarau's competitors; and

WHEREAS, Holdings has permitted Segatt to invest in its common stock, partly in reliance upon Segatt's undertakings set forth in this Agreement.

NOW THEREFORE, in consideration of the respective promises and agreements contained herein, the parties hereto agree as follows:

1.    Consideration.  Upon the signing of this Agreement, Agromarau agrees to pay at the time of execution by all parties of this Agreement and that certain Separation Agreement dated the same date, $217,000 (Brazilian Reals) to Segatt in a lump sum as consideration for Segatt's undertakings pursuant to Sections 2, 3, 4, 5 and 7 of this Agreement.

-2-

No further amounts shall be due and owing pursuant to this Agreement to Segatt from either Agromarau, GSI or Holdings (except as provided in Section 6 hereof).

2.    Restrictive Covenant.  Segatt expressly covenants, warrants and agrees that for the separate consideration set forth in Section 1 of this Agreement, he will not, for a period of two (2) years from the date of this Agreement, for any reason, and whether voluntary or involuntary, directly or indirectly, individually or as an officer, manager, director, shareholder, employee, consultant, advisor, partner or co-venturer for or with, or on behalf of, any third party, nor in association with any other person, entity, firm or corporation, engage in any services for, or acquire any financial or beneficial interest in , the operation of any business substantially similar to the businesses engaged in by Agromarau on the date of this Agreement, including without limitation thereof, the designing, manufacturing, distributing, marketing or selling of agricultural equipment and products of a similar nature to those engaged in by Agromarau on the date of this Agreement, within that geographic area encompassing the countries of Brazil, Argentina, Chile, Uruguay, Paraguay and Ecuador; but provided however, that this paragraph shall not be construed or interpreted so as to prohibit Segatt from (i) engaging in the three businesses in which he has been and is currently engaged, which are Foco Agricola (a dealer in Agromarau products), Robustec (a manufacturer of winches to poultry equipment manufacturers in Brazil) and Tecnotri (a service business involving plastic roto-molding products for some customers in Brazil), nor (ii) a passive investment in a publicly-held company which may be engaged in such business activities as Agromarau so long as Segatt's investment therein does not exceed more than 2% of such publicly-held company's outstanding debt or equity; and (iii) the services to be provided by Segatt to Aromarau as an independent contractor pursuant to the terms of Section 6 of this Agreement. If Segatt does not comply with the provisions set forth in this

-3-

GSI0041

Section, he shall pay a penalty to Agromarau in Brazilian currency equivalent to US$ 300,000. The collection of the penalty will not avoid the enforceability of the provisions of the agreement or the compensation of any damage arising out from the breach of Segatt's obligation.

      3.    <u>Non-interference and Solicitation</u>.  Segatt further expressly covenants, warrants and agrees that for the same consideration set forth in Section 1 of this Agreement and for the same period of time as specified in Section 2 of this Agreement he shall not, directly nor indirectly, nor in association with any person, entity, firm or corporation (i) divert or attempt to divert any business from, or any of the customers, suppliers or licensors of, Agromarau in any manner which would create or constitute a breach under Section 2 above or which would be to Agromarau's detriment, nor (ii) hire or attempt to hire for any position or employment, or encourage the resignation of, managerial employees of Agromarau and those who works with development of products, as of the date of this Agreement for any reason. . If Segatt does not comply with the provisions set forth in this Section, he shall pay a penalty to Agromarau in Brazilian currency equivalent to US$ 300,000. The collection of the penalty will not avoid the enforceability of the provisions of the agreement or the compensation of any damage arising out from the breach of Segatt's obligation.

      4.    <u>Severability</u>.  The parties to this Agreement expressly agree and acknowledge that they are familiar with the business of Agromarau and believe that the covenants set forth in Sections 2 and 3 above are reasonable.  However, they understand, notwithstanding such agreement and acknowledgement, that if any portion of the covenants set forth in Sections 2 or 3 above are held by any final, non-appealable judgment of a court of competent jurisdiction to be unreasonable, arbitrary, against public policy or otherwise unenforceable, then that portion of those covenants shall be considered devisable as to their

-4-

GSI0042

duration or geographic scope, as applicable.  In such event, a lesser time period or geographic area, or both, that is determined to be reasonable, non-arbitrary, not against public policy and enforceable, shall be substituted.

5.     <u>Confidential and Proprietary Information</u>.  Segatt recognizes and acknowledges that the business, operations, methods, customer and supplier lists, licensing arrangements, trade secrets and other confidential or proprietary information concerning Agromarau are valuable, special and unique to its business.  Segatt expressly covenants, warrants and agrees that for the same consideration set forth in Section 1 of this Agreement and for the same period of time as set forth in Sections 2 and 3 of this Agreement, he shall keep confidential any trade secrets, confidential or proprietary information of Agromarau which are now known, or which hereafter may become known, to him, and he shall not, directly or indirectly, disclose any such information to any person, firm or corporation other than Agromarau and its corporate affiliates.  For purposes of this Section 5, "trade secrets and other confidential or proprietary information," shall mean information (i) which is unique to the business of Agromarau and which has a significant business purpose and is not known or generally available from sources outside Agromarau or from typical industry practice, or (ii) the disclosure of which would have a material adverse effect on the business of Agromarau, but shall not include information lawfully obtained from a source other than Agromarau or its corporate affiliates and otherwise in the public domain.  If Segatt does not comply with the provisions set forth in this Section, he shall pay a penalty to Agromarau in Brazilian currency equivalent to US$ 300,000. The collection of the penalty will not avoid the enforceability of the provisions of the agreement or the compensation of any damage arising out from the breach of Segatt's obligation.

-5-

#1924013 v5

GSI0043

6.    Consultation.  Segatt agrees to make himself available for a period of twenty-four (24) months, until the second anniversary of this Agreement, as an independent consultant to Agromarau for such reasonable, but limited, advice and consultation as Agromarau shall require, upon reasonable advance notice, but not to exceed a total of 15 hours per month during the first year and 10 hours per month during the second year.  In consideration for such availability and services, Agromarau shall pay Segatt a monthly retainer, as set forth below, exclusive of expenses, for his availability and services rendered.  Agromarau also shall pay Segatt reimbursement of his out-of-pocket expenses incident to such services rendered, pursuant to expense vouchers and invoices in such detail as Agromarau shall reasonably request for reasonable reimbursable expenses, including transportation costs, hotel accommodations, meals for Segatt and business associates, or other business entertainment reasonably incurred, all consistent with Agromarau's policies for senior management, and such other expenses as Agromarau may deem appropriate for reimbursement.  The monthly retainers to Segatt shall be as follows:

(a)    For the first nine (9) months, Agromarau shall pay him $15,000 (Brazilian Reals) and GSI shall pay him $3,000 (U.S.) to be deposited in his New York bank account.

(b)    For the remaining fifteen (15) months, Agromarau shall pay him $6,000 (Brazilian Reals) and GSI shall pay him $3,000 (U.S.) to be deposited in his New York bank account.

-6-

GSI0044

(c)    Segatt shall receive fees aboveferred through Colloni Participações Ltda, which is a company controlled by Segatt (99% of capital belongs to Segatt and 1% belongs to his sun, Vinicius Segatt).

(d)    Segatt shall complete and sign Internal Revenue Service Form W-2BEN and deliver same to GSI with respect to the monthly payments in U.S. Dollars.

7.    <u>Right of First Refusal for Cooperative Ventures</u>.  In further consideration of the undertakings in this Agreement, in the event that Segatt or any of the three companies enumerated in Section 2(i) (or their successors in interest) shall within two (2) years of the date of this Agreement (whether or not the other provisions hereof are terminated or expire by their terms), develop any new product, technology or concept which may be of interest to, or which possibly could conflict with, products or businesses of Agromarau in which Agromarau was involved as of the date of this Agreement, Segatt agrees to offer a first right of refusal to Agromarau to cooperatively exploit such product, invention or concept to the extent that he shall inform Agromarau of such and then bargain in good faith with Agromarau in an effort to arrive at a mutually beneficial supply, license or co-development arrangement with respect to such product, invention or concept, and further agrees not to take such to any direct competitor of Agromarau unless, following reasonable good faith negotiations, it is determined that Agromarau has no interest or the parties are unable to agree upon mutually acceptable terms.

8.    <u>Specific Remedies</u>.  The parties acknowledge that a breach of this Agreement, and particularly a breach by Segatt under Sections 2, 3, 5 and 7 hereof, may cause substantial injury to Agromarau which may be irreparable and/or in amounts which are difficult or impossible to ascertain.  Therefore, Segatt covenants and agrees that in the event he breaches

-7-

#1924013 v5

GSI0045

this Agreement, and particularly Sections 2, 3, 5 and 7 hereof, Agromarau and GSI shall have, in addition to all other remedies available at law, including the right of set-off with respect to payments under Section 6 hereof, the right to injunctive and other equitable relief.  In addition, Agromarau shall have the specific right to cancel the consulting retainer set forth in Section 6 and Holdings shall have the specific right to require Segatt to surrender, sell and assign all of his shares in Holdings to Holdings, and Segatt irrevocably promises to surrender, sell and assign all of his shares in Holdings to Holdings for their same value when issued to him in the event of a breach by him of Sections 2, 3, 5 or 7 hereof, and at their current fair market value in the event of conduct proscribed in Sections 2, 3, 5 or 7 hereof after the particular term applicable to those covenants contained in such sections as are applicable.  The provisions of this Section 8 shall survive the termination or expiration of this Agreement.

9.    <u>Governing Law and Arbitration.</u> This Agreement shall be governed by and construed and enforced in accordance with the laws of Brazil.

9.1    The Parties undertake to adopt the principle of good faith and to use their best efforts towards an amicable solution as a definitive settlement for any claim, controversy or dispute related to this Agreement.

9.2    Considering the specific aspects of the issue, any Party may refrain from seeking an amicable solution or interrupt at any time the negotiations in course and elect to request immediately an arbitration proceeding, upon written notice to the other party according to the provisions of Section 12 hereof.

9.3    The arbitration proceeding shall be governed by Brazilian law and shall be held in the city of Porto Alegre, State of Rio Grande do Sul. The parties hereby elect the Panel of

-8-

#1924013 v5

GSI0046

the Brazil-Canada Chamber of Commerce (the "Panel of Arbitrators") and undertake to accept its rules effective as of the date on which the arbitration request is presented, except being admitted any amendments convened between the Parties.

9.4    If any party hereto refuses to sign the arbitration covenant, the other party may pursue the remedies provided under the applicable law to proceed with the arbitration. If the claim is accepted, such refusal shall be considered unjustified, and the party that refused to sign the arbitration covenant shall be subject to a fine of $ 25,000 (Brazilian Reals).  In such event, this Agreement, together with the decision on the remedy referred to above, and a certificate that attests the irrevocability of such decision, shall be sufficient for the enforcement of this fine in court (título executivo extrajudicial). The parties hereby convene that, in the event of rejection of the claim referred to above, the claimant shall not be subject to the payment of the fine.

9.5    The arbitrators shall be appointed according to the rules and terms established by the Panel of Arbitrators. In the event of the absence of provisions for this purpose in the Panel of Arbitrator's rules, each Party that has a conflicting interest shall be entitled to appoint one (1) arbitrator within thirty (30) days as of the presentation of the issue to arbitration. The arbitrators shall jointly appoint a third arbitrator to preside over the Panel of Arbitrators within thirty (30) days from the date of appointment of the second arbitrator. If any party hereto fails to appoint an arbitrator or the arbitrators fail to elect the President arbitrator, the latter shall be appointed by the Panel of Arbitrators, according to its rules.

9.6 The Panel of Arbitrators shall issue its award in writing within 90 days as of the commencement of the arbitration proceeding and such award shall state the fees owed to the

-9-

#1924013 v5

GSI0047

legal counsel of the prevailing party, if applicable. This decision shall be definitive and shall bind the Parties and be enforceable in accordance with the law.

9.7    All expenses related to the arbitration proceeding shall be borne by the defeated party or as otherwise determined in the Panel of Arbitrator's rules.

9.8    The subjection of the Parties to arbitration shall not prevent them from seeking protection in court against violation of their rights, by way of injunctive relief or any other kind of provisional measure, which depends on a coercive order issued by a court to be valid and effective.

9.9    The filing or granting of an injunction of any kind, which, due to its urgency and importance, cannot be obtained through arbitration shall not be considered a violation of this covenant. The provisions of section VII of article 267 of the Brazilian Code of Civil Procedure shall not be applicable in this event.

9.10.    The Parties accept and convene that, for the purposes and effects of the applicable law, the request for the initiation of an arbitration proceeding shall be equivalent to the filing of a lawsuit with the same object.

10.    No-Third Party Rights.  The parties hereto do not intend, and nothing in this Agreement shall be construed, to give any person other than the parties hereto and their respective successors and assigns, any legal or equitable benefit, right, remedy or claim, and no person other than the parties hereto and their respective successors and assigns shall have standing to assert the same.

-10-

GSI0048

11.   <u>Entire Agreement</u>. This Agreement constitutes the entire understanding of the parties hereto with respect to the matters referred to herein and supersedes all prior arrangements or understandings, written or oral, with respect thereto.

12.   <u>Notices</u>. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and will be deemed to have been given when personally delivered or mailed by first class international mail, return receipt requested, or by fax, evidence of receipt supplied, or by overnight courier delivery service evidence of receipt supplied. Notices, demands and communications to the parties will, unless another address is specified in writing, be sent to their addresses listed above in the introduction to this Agreement.

IN WITNESS WHEREOF, intending to be legally bound hereby, the parties hereto have executed this Agreement as of the date first above written.

AGROMARAU INDUSTRIA e COMMERCIO LTDA.

WITNESS: _____  BY: _____
Name: _____                Name:
                                    Title:

COLLONI PARTICIPAÇÕES LTDA.

WITNESS: _____  BY: _____
Name: _____                Name:
                                    Title:

THE GSI GROUP, INC

WITNESS: _____  BY: _____
Name                                Name:   W. J. BRANCH
                                    Title:  C EO

-11-

#1924013 v5

GSI0049

**TABELIONATO DE NOTAS - TRENTIN**
    Av. Júlio Borella, 894 - Marau/RS
RECONHEÇO verdadeira(s) a(s) firma(s) *retro*
*de Leonardo Segat assinada*
*perante mim. Dou fé.*
Marau (RS) 23 de *grodio* de 2006
Em testemunho *06fp* da verdade

☑ Bel. Nelci Maria Trentin Pilatti -Tabeliã
☐ Helder Abrahão Trentin - Substituto
☐ Francisco Scandolara - Substituto
☐ Fabiana Bergamini Trentin - Substituta
☐ Matheus Trentin Silveira - Substituto
☐ Gentil Trentin - Substituto ▪ Emolumento R$ 2,10

**TABELIONATO DE NOTAS - TRENTIN**
    Av. Júlio Borella, 894 - Marau/RS
RECONHEÇO verdadeira(s) a(s) firma(s) *retro de*
*Leonardo Segatt, que assina pela*
*firma Collemi Participações Ltda,*
*assinado perante mim e dou fé.*
Marau (RS) 22 de *Novembro* de 2006
Em testemunho *06fp* da verdade

☑ Bel. Nelci Maria Trentin Pilatti -Tabeliã
☐ Helder Abrahão Trentin - Substituto
☐ Francisco Scandolara - Substituto
☐ Fabiana Bergamini Trentin - Substituta
☐ Matheus Trentin Silveira - Substituto
☐ Gentil Trentin - Substituto ▪ Emolumento R$ 2,10

GSI0050

GSI HOLDINGS CORP.

BY: _____

Name: W. J. BRANCH

Title: CEO

WITNESS:_____
          Name:

LEONARDO SEGATT

By:_____

Name:

Title:

WITNESS:_____
          Name:

**TABELIONATO DE NOTAS - TRENTIN**
Av. Júlio Borella, 894 - Marau/RS
RECONHEÇO. verdadeira(s) a(s) firma(s)

Marau (RS) 22 de _____ de 200

Em testemunho _____ da verdade

☑ Bel. Nelci Maria Trentin Pilatti -Tabeliã
☐ Helder Abrahão Trentin - Substituto
☐ Francisco Scandolara - Substituto
☐ Fabiana Bergamini Trentin - Substituta
☐ Matheus Trentin Silveira - Substituto
☐ Gentil Trentin - Substituto = Emolumento R$

-12-

GSI0051

Tab 12

-----Original Message-----
From: Richard Christman <Richard.Christman@thegsigroup.biz>
To: Clauss, Peter <CLAUSSP@pepperlaw.com>; wjbranch@aol.com
<wjbranch@aol.com>; John Henderson <John.Henderson@thegsigroup.biz>; Moretti,
Claudio M.; Rafael Coletta <rafaelcoletta@gsibrasil.ind.br>
Sent: Thu Nov 02 11:09:51 2006
Subject: RE: Leo's two agreements

Gents,

I just finished meeting with Leo and Rafael on the agreements. There are a couple of
adjustments that need to be made and then hopefully we are finished.

1. It appears that in the calculation of the amounts that are due to Leo, we have included
the R$217,000 of separation pay in the value of the company and not as a separate
payment. The total payments should be:

| | |
|---|---|
| Value of the 15% Capital Interest as of Sept. | R$5,384,497 |
| Interest | 646,676 |
| Separation Agreement | 217,000 |
| | |
| Total Due | R$6,248,173 |

What we actually pay Leo would be this Total Due less the R$1,000,000 that we be
exchanged for shares in Holdings.

Rafael's suggestion would be that we increase the dividend amount shown in Item 2 from
R$2,823,354 to R$3,040,354 an increase of R$217,000

2. In Item 7, we state that the final payment will be made upon certain disbursement of
funds from Banco de Brazil. Leo is a little concerned that this is open ended. We believe
that we should be able to conclude the loan (subject to satisfaction of the next point) in the
next few weeks. This if we simply add to the end of the sentence... "but no later than
December 1, 2006" that should give us time to resolve.

3. Banco do Brazil is asking for a personal guarantee from Ingo or Rafael for the Loan.
Ingo is OK with him doing the personal guarantee if he receives a "hold harmless"
agreement from GSI that we will pay any obligations he may incur from this agreement.

4. In the non-compete agreement, Leo and I agreed that we will limit to 2 years instead of 5
years... so that all contractual obligations of both parties are concluded in the next 2 years.

Leo is still waiting for a Portugese translation, but in going thru the English documents,
these appear to be the only outstanding issues.


If you are in agreement, we can work to get the documents executed while I am here.
Please advise both myself and Rafael if you are in agreement and send revised documents
to both of us.


Richard

LS 0113

Tab 13

MIELKE, LUCENA & SCHIMIDT
Lawyers

Fábio Luiz Gomes
Consultant

Jaqueline Mielke Silva                     Clarissa Porto Alegre Schimidt

Clarissa Santos Lucena                    Marcelo Santos Lucena


To the Honorable Judge of Law of the Civil Court of the City of Marau/RS


GSI     BRASIL     INDÚSTRIA     COMÉRCIO     EQUIPAMENTOS
AGROPECUÁRIOS LTDA., a corporate company, enrolled in the CNPJ under
the nº 01.770.039/0001-50, with headquarters at Road 324, Km 80, city of
Marau, RS, by its Attorneys in law (exhibit 1), with respect brings the ACTION
FOR DAMAGES WITH COLLECTION ACTION FOR CONTRACTUAL
PENALTY, against LEONARDO SEGATT, Brazilian citizen, married, with ID nº
2021837899 and CPF nº 374013430-53, resident at 444, Duque de Caxias
Street, Marau, RS, ROBUSTEC INDÚSTRIA E COMÉRCIO LTDA., a company
with headquarters at 1.402, Antônio Vilela Street, Pavilion 02, São Crsitóvão
District, Marau, TECNOTRI IND. COM. E REPRESENTAÇÃO LTDA., a
corporate company enrolled in the CNPJ under the nº 04452774/0001-04, with
headquarters at 1401, Antônio Vilela Street, Pavilion 01, São Cristóvão District,
Marau, RS, FOCO AGRÍCOLA LTDA., a corporate company enrolled in the
CNPJ under the nº 73.718.108/0001-98, with headquarters at Road 324, km 87,
city of Marau, RS, ALVO AGRÍCOLA LTDA., a corporate company enrolled in
the CNPJ under the nº 05.112.936/0001-28, with headquarters at 1224,
Presidente Vargas, QD 31, LT 13, Jardim Presidente District, Zip Code 75908-
420, city of Rio Verde, GO, GLOBAL SOLUÇÕES AGRÍCOLAS LTDA., a
corporate company enrolled in the CNPJ under the nº 08397287/0001-47, with
headquarters at CSG 02, 01/02, Taguatinga Sul District, Zip Code: 72035-502,
Distrito Federal, DF and COLLONI PARTICIPAÇÕES LTDA., a corporate

d.3) the condemnation of LEONARDO SEGATT the payment of the fine of US$ 300,000.00 (three hundred thousand American dollars), to be converted into Reals by observing the exchanging rate of the date of the effective payment, having in mind the besieging and the deviation of employees from the plaintiff GSI Brazil for his companies:

d.4) the immediate notification of the Co-Defendant Robustec so they may be impeached of commercializing the product, under the penalty of immediate and subsequently being filed the safety measure of the rights of the Plaintiff;

e) the condemnation of the Defendants for the payment in value to be inspected in awarded calculation, because of the moral damages;

f) condemning the Defendants for the payment of the court costs and attorneys' fees, being worth 20% of the condemnation.


In the terms, requests for granting,

The estimate value of R$ 15, 000, 000.00 (fifteen millions reals)

From the City of Porto Alegre to Marau, July 2nd, 2008.



Fabio Luiz Gomes        Jaqueline Mielke    Clarissa Porto Alegre Schmidt

OAB/RS 10.686        OAB/RS 29.586  OAB/RS 46.206