UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
Leonardo Segatt,                                                    :
                                                                    :
                                    Plaintiff,                      :        07 Civ. 11413 (WHP)(JCF)
                                                                    :
            -against-                                               :
                                                                    :        ECF Case
GSI Holdings Corp., William J. Branch, Charlesbank                  :
Equity Fund V, Limited Partnership, CB Offshore                     :
Equity Fund V, L.P., Charlesbank Equity                             :
Coinvestment Fund V, Limited Partnership,                           :
Charlesbank Coinvestment Partners, Limited                          :
Partnership, Charlesbank Equity Fund V GP, Limited                  :
Partnership, and Charlesbank Capital Partners, LLC,                 :
                                                                    :
                                    Defendants.                     :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE CHARLESBANK DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM
## JUDGMENT, RECONSIDERATION AND LEAVE TO AMEND

Covington & Burling LLP

The New York Times Building
620 Eighth Avenue
New York, New York  10018-1405
(212) 841-1000

*Attorneys for Defendants Charlesbank
Equity Fund V, Limited Partnership, CB
Offshore Equity Fund V, L.P., Charlesbank
Equity Coinvestment Fund V, Limited
Partnership, Charlesbank Coinvestment
Partners, Limited Partnership, Charlesbank
Equity Fund V GP, Limited Partnership, and
Charlesbank Capital Partners, LLC*

**Table of Contents**

Table of Authorities ........................................................................................................ ii

Argument ........................................................................................................................ 1

I.      Plaintiff Has Not Shown "Extraordinary Circumstances" That Would Justify a
        Decision to Vacate This Court's Judgment. ...................................................... 1

II.     Plaintiff's Motion to Amend Should Be Denied For Failing to Attach a Copy of
        the Proposed Amended Complaint. ................................................................... 4

III.    Any Amendment of the Claims Asserted Against the Charlesbank Defendants
        Would be Futile.................................................................................................. 5

        A.      The "New Evidence" Does Not Support an Inference That Any of the
                Charlesbank Defendants Made Any Misrepresentation or Otherwise
                Defrauded Plaintiff................................................................................... 8

        B.      The "New Evidence" Does Not Support a Strong Inference That Any of
                the Charlesbank Defendants Acted with Scienter.................................. 10

        C.      Other "New Evidence," Not Specifically Identified By Plaintiff as
                Supporting Claims Against the Charlesbank Defendants, Likewise Does
                Not Bolster Plaintiff's Case. .................................................................. 10

Conclusion ..................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006) ...............................10

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ..................................................6

*Blanchard v. Edgemark Fin. Corp.*, No. 94 C 1890, 2001 WL 587861
 (N.D. Ill. Mar. 12, 2001) ...................................................................................................9

*Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994 (CM)(GAY),
 2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)...............................................................6

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001)...............................9

*In re Champion Enters., Inc. Sec. Litig.*, 145 F. Supp. 2d 871 (E.D. Mich. 2001).........5

*In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 2589482
 (S.D.N.Y. Sept. 7, 2007)...................................................................................................4

*Dagen v. CFC Group Holdings LTD*, No. 00 Civ. 5682 (CBM), 2004 WL 830057
 (S.D.N.Y. Apr. 13, 2004) ..................................................................................................3

*Deluca v. Smithkline Beecham Corp.*, No. 06 Civ. 2153 (NRB), 2007 WL 541656
 (S.D.N.Y. Feb. 20, 2007) ..................................................................................................4

*DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994)......................................................3

*In re Evergreen Mutual Funds Fee Litig.*, 240 F.R.D. 115 (S.D.N.Y. 2007)..............2, 3

*Glazer v. Formica Corp.*, 964 F.2d 149 (2d Cir. 1992).....................................................9

*Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999)................................................6

*In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004) ................3

*Index Fund, Inc. v. Hagopian*, 609 F. Supp. 499 (S.D.N.Y. 1985) ................................10

*Jackson v. City of New York*, No. 06 Civ. 721 (RWS) (MHD), 2006 WL 3208512
 (S.D.N.Y. Nov. 3, 2006) ....................................................................................................1

*Kai Wu Chen v. Reno*, 932 F. Supp. 535 (S.D.N.Y. 1996)...............................................2

*In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100 (D. Mass. 2002) ...................3

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) ................................2

*In re Livent Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001)......................................................10

*McKinnon v. Hermes of Paris, Inc.*, No. 06 Civ. 1001 (NRB), 2007 WL 1098707
    (S.D.N.Y. Apr. 10, 2007)........................................................................................................4, 5

*Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341 (S.D.N.Y. 2002) ...........................................2

*Nat'l Fire & Marine Ins. Co. v. R.R. Resource & Recovery, Inc.*, No. 93 Civ. 6379
    (RLC), 1994 WL 606049 (S.D.N.Y. Nov. 3, 1994) .................................................................5

*Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240 (2d Cir. 1991).....................1, 4

*Nemazier v. Baker*, 793 F.2d 58 (2d Cir. 1986).............................................................................3

*Pasha v. William M. Mercer Consulting, Inc.*, No. 00 Civ. 8362 (RWS),
    2004 WL 1474694 (S.D.N.Y. June 30, 2004) ..........................................................................1

*Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390 (S.D.N.Y. 2000)....................2

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)............................................................1

*Sanluis Devs. L.L.C. v. CCP Sanluis L.L.C.*, 556 F. Supp. 2d 329 (S.D.N.Y. 2008) .....................1

*State Teachers Retirement Board v. Fluor Corp.*, 500 F. Supp. 278 (S.D.N.Y. 1980),
    *rev'd on other grounds*, 654 F.2d 843 (2d Cir. 1981)...............................................................9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008)*............................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) .............................................6

*Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP*, No. 06 Civ. 14211 (GBD),
    2008 WL 850163 (S.D.N.Y. March 27, 2008) ........................................................................2

*Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78 (S.D.N.Y. 2003).............................1, 2

*Yurman v. Chaindom Enters., Inc.*, No. 99 Civ. 9307 (JFK), 2000 WL 217480 |
    (S.D.N.Y. Feb. 22, 2000).........................................................................................................2

*Zito v. Leasecomm Corp.*, No. 02 Civ. 8074 (GEL), 2004 WL 2211650
    (S.D.N.Y. Sept. 30, 2004)......................................................................................................4, 5

## STATE CASES

*Lindner Fund, Inc. v. Waldbaum, Inc.*, 82 N.Y.2d 219 (1993).......................................................9

## FEDERAL STATUTES

15 U.S.C. § 78u-4(b).....................................................................................................................3, 6

## FEDERAL RULES

Fed. R.Civ. P. 7(b) .................................................................................................................4

Fed. R.Civ. P. 15(a) ..............................................................................................................1

Fed. R.Civ. P. 59(e) ..........................................................................................................1, 2

Fed. R.Civ. P. 60(b) ......................................................................................................1, 2, 3

## LOCAL RULES

Local Civil Rule 6.3 ...............................................................................................................1

Plaintiff fails to carry the significant burden to justify vacating this court's judgment. Even if he were to meet this burden, the gossamer "new evidence" obtained through extensive document discovery adds nothing to the claims against the Charlesbank Defendants, and any amendment therefore would be futile.

## Argument

### I.    Plaintiff Has Not Shown "Extraordinary Circumstances" That Would Justify a Decision to Vacate This Court's Judgment.

After judgment is entered, a party seeking leave to amend his complaint must first move the court to vacate the judgment under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991).  "'[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.'"  *Nat'l Petrochemical*, 930 F.2d at 245 (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1489, at 694 (1990)).

At the outset, Plaintiff's motion should be denied to the extent it seeks relief pursuant to Rule 59(e), or seeks reconsideration pursuant to Local Civil Rule 6.3, since neither "is an appropriate vehicle for a party . . . to advance 'new facts, issues or arguments not previously presented to the court.'"  *Pasha v. William M. Mercer Consulting, Inc.*, No. 00 Civ. 8362 (RWS), 2004 WL 1474694, at *1 (S.D.N.Y. June 30, 2004) (quoting *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 83 (S.D.N.Y. 2003)).  *See also Sanluis Devs. L.L.C. v. CCP Sanluis L.L.C.*, 556 F. Supp. 2d 329, 332 (S.D.N.Y. 2008) ("New facts, issues or arguments not previously presented to the court may not be presented on a motion under Rule 59(e).") (internal quotations omitted); *Jackson v. City of New York*, No. 06 Civ. 721 (RWS) (MHD), 2006 WL

3208512, at *2 (S.D.N.Y. Nov. 3, 2006) ("on a Rule 6.3 motion, a party may not advance

new facts, issues or arguments not previously presented to the Court") (internal quotations

omitted). In particular, "a motion for reconsideration is appropriate only where the movant

demonstrates that 'the Court has overlooked controlling decisions or factual matters that were

*put before it on the underlying motion . .* and which, had they been considered, might have

reasonably altered the result before the court.'" *Range Road Music, Inc. v. Music Sales Corp.*,

90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (quoting *Yurman v. Chaindom Enters., Inc.*, No. 99

Civ. 9307 (JFK), 2000 WL 217480, at *1 (S.D.N.Y. Feb. 22, 2000)) (emphasis in *Range Road*).

Plaintiff does not argue that this Court overlooked precedent or factual matters before it, so

reconsideration is inappropriate.[1]

Therefore, before seeking leave to amend, Plaintiff must satisfy the standards for a Rule

60(b)(6) motion to vacate.[2] This is a strict standard since, as Plaintiff himself acknowledges,

vacatur is a form of "'extraordinary judicial relief.'" *Kai Wu Chen v. Reno*, 932 F. Supp. 535,

---

[1] Although Plaintiff cites *Trautenberg v. Paul Weiss Rifkind Wharton & Garrison LLP*, No. 06 Civ. 14211 (GBD), 2008 WL 850163, at *1 (S.D.N.Y. March 27, 2008), for the proposition that "the availability of new evidence" is a basis for reconsideration under Rule 59(e), Pl. Br. at 1, this case nevertheless makes clear that "[t]o merit reconsideration, 'a party must demonstrate that the Court overlooked controlling decisions or factual matters *that were put before it on the underlying motion*.'" 2008 WL 850163, at *1 (quoting *Eisemann v. Greene*, 204 F.3d 393, 395 n.5 (2d Cir. 2000)) (emphasis added). In any event, like the standard governing Rule 60(b) discussed below, "'[r]econsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 117 (S.D.N.Y. 2007) (quoting *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)).

[2] Plaintiff fails to identify the subsection of Rule 60(b) he seeks to invoke. This omission is not trivial since Plaintiff may not make a blanket motion premised on all six subsections. *See, e.g., Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 n.11 (1988) ("clause (6) and clauses (1) through (5) are mutually exclusive"); *Williams*, 219 F.R.D. at 86 ("relief under Rule 60(b)(6) cannot be premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)") (internal quotations omitted). Nevertheless, Plaintiff must be bringing his motion under Rule 60(b)(6) since the other subsections are clearly inapplicable.

538 (S.D.N.Y. 1996) (quoting *Nemazier v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)). The Second

Circuit permits relief under Rule 60(b)(6) only "where there are extraordinary circumstances or

where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger*, 38 F.3d

1266, 1272 (2d Cir. 1994) (internal quotations omitted). "By definition, such circumstances are

rare." *Dagen v. CFC Group Holdings LTD*, No. 00 Civ. 5682 (CBM), 2004 WL 830057, at *3

(S.D.N.Y. Apr. 13, 2004). The movant must clearly set forth the "extraordinary circumstances"

at issue since "blanket assertions of extraordinary circumstances and undue hardship are

insufficient . . . ." *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 119 (S.D.N.Y. 2007).

At the same time, the "[m]aterial offered in support of a motion to vacate under Rule 60(b)(6)

must be highly convincing material." *Id.* at 119 (quoting *D'Angelo v. State Farm Fire & Cas.

Co.*, 32 Fed. App'x 604, 605 (2d Cir. 2002)).

     Here, there is no extraordinary circumstances and no highly convincing material.

Plaintiff argues that this Court's decision to permit discovery during the pendency of the motions

to dismiss was "unusual" for a case governed by the PSLRA. Pl. Br. at 3. But the PSLRA stay

is occasionally lifted,[3] and in any event, whether the decision was unusual or not does not mean

that the resulting document discovery created "extraordinary circumstances" justifying vacatur of

the judgment. Documents, of course, are regularly produced during the pendency of motions to

dismiss in non-securities cases. And of the 70,000 pages of documents produced in this case to

---

[3] *See* 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery
and other proceedings shall be stayed during the pendency of any motion to dismiss, *unless the
court finds upon the motion of any party that particularized discovery is necessary to preserve
evidence or to prevent undue prejudice to that party*.") (emphasis added); *In re Royal Ahold N.V.
Sec. & ERISA Litig.*, 220 F.R.D. 246, 255 (D. Md. 2004) (lifting stay to require production of
documents "provided in connection with inquiries or investigations by governmental, regulatory,
or self-regulatory agencies"); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D.
Mass. 2002) (permitting limited discovery).

date, Plaintiff has identified precious few that are of any importance to him, and none of those add anything of substance to the allegations made against the Charlesbank Defendants.  *See* Point III, below.

II.    *Plaintiff's Motion to Amend Should Be Denied For Failing to Attach a Copy of the Proposed Amended Complaint.*

The Second Circuit has stated that "it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment."  *Nat'l Petrochemical*, 930 F.2d at 245.  Whether this is such a case or not, Plaintiff nevertheless failed to provide a proposed amended complaint, an omission that not only deprives this Court of the ability to consider "the nature of the proposed amendment," but also violates Rule 7(b) of the Federal Rules of Civil Procedure.

Rule 7(b)(1)(B) provides that motions must "state with particularity the grounds for seeking the order."  And courts within the Second Circuit have held that "[i]n the context of a motion to amend, Rule 7(b) . . . requires the movant to supply a copy of the proposed amendment."  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677 (NRB), 2007 WL 2589482, at *4 (S.D.N.Y. Sept. 7, 2007).  *See also McKinnon v. Hermes of Paris, Inc.*, No. 06 Civ. 1001 (NRB), 2007 WL 1098707, at *4 n.5 (S.D.N.Y. Apr. 10, 2007) (similar); *Deluca v. Smithkline Beecham Corp.*, No. 06 Civ. 2153 (NRB), 2007 WL 541656, at *3 n.6 (S.D.N.Y. Feb. 20, 2007) (similar).  The reason for this rule is simple:  a copy of the proposed amended complaint is necessary to give the court and opposing parties a meaningful opportunity to evaluate and respond to the potential amendments.  *See, e.g.*, *Zito v. Leasecomm Corp.*, No. 02 Civ. 8074 (GEL), 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004) ("'proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought'") (quoting *Smith v. Planas*, 151 F.R.D. 547, 500 (S.D.N.Y. 1993)).

Plaintiff's failure to provide a proposed amended complaint deprived the Court, as well as the defendants, of any visibility into the exact changes being sought. Particularly where there are strict pleading requirements, as there are under the PSLRA, seeing the proposed changes is critical. *See, e.g.*, *Zito*, 2004 WL 2211650, at *25 (by failing to attach proposed amended complaint, plaintiffs failed to meet particularity requirement); *McKinnon*, 2007 WL 1098707, at *4 n.5 ("plaintiff's failure to attach the proposed amendment provides an independent basis for us to reject her request"); *Nat'l Fire & Marine Ins. Co. v. R.R. Resource & Recovery, Inc.*, No. 93 Civ. 6379 (RLC), 1994 WL 606049, at *1 (S.D.N.Y. Nov. 3, 1994) (without proposed amended complaint, court has "no information upon which to decide whether to grant the motion [to amend], and the motion is consequently denied").

III.    *Any Amendment of the Claims Asserted Against the Charlesbank Defendants Would be Futile.*

Courts have held that under the PSLRA, leave to replead should not be freely granted because a lenient view of amendment would defeat the act's key purposes. *See*, *e.g.*, *In re Champion Enters., Inc. Sec. Litig.*, 145 F. Supp. 2d 871, 873 (E.D. Mich. 2001):

> The plain language of the Reform Act does not contemplate amending complaints; it *does* set a high standard of pleading which if not met results in a mandatory dismissal. The necessary goal of this plain, and strong language, is that it should be dismissed *with prejudice*. To conclude otherwise would be to abrogate the very purpose of the legislation.

(emphasis in original).

However, even if this Court were to assess the motion to amend on lenient terms, after attempting to divine the exact changes Plaintiff might make to his complaint, any amendment of the claims asserted against the Charlesbank Defendants nonetheless would be futile since the purported "new evidence" adds nothing material to Plaintiff's existing allegations, and an amended complaint based on this evidence would not survive a renewed motion to dismiss.

"[D]istrict courts have discretion to deny leave to amend if an amendment would be futile." *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-CV-4994 (CM)(GAY), 2007 WL 1152894, at *15 (S.D.N.Y. Apr. 16, 2007). Therefore, "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

As this Court recognized in its prior decision, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must . . . plausibly suggest[] (not merely [be] consistent with) [entitlement to relief]." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007) (internal quotations omitted). Moreover, to state a claim for securities fraud, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). For claims requiring scienter, including control person claims requiring culpable participation, the complaint must "with respect to each act or omission . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). An inference of scienter drawn from particularly stated facts "must be more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

Here, the "new evidence" presented by Plaintiff in support of his claims against the Charlesbank Defendants, consisting of the documents behind Tab 3 and Tab 5 of his submission (*see* Pl. Br. at 6), does not support, let alone establish, any of the necessary inferences.

Tab 3 is a transmittal of Mr. Segatt's stock certificate sent by an in-house lawyer at Charlesbank Capital Partners LLC to the Depository Trust Company shortly after the SPA was signed, to be held in escrow. Plaintiff suggests some nefarious purpose in putting the certificate into escrow,[4] but neglects to point out that the SPA specifically provides in Section 5.2(b) that "the Company shall hold the Shares in escrow together with separate stock powers executed by the Purchaser in blank for transfer." Compl. Exh. C at 11. The SPA, moreover, is not alleged to have been tainted by any fraud (the alleged fraud occurred months later). Finally, it is not remarkable that an in-house lawyer for Charlesbank transmitted the stock certificate given that CB Fund V was the majority shareholder of GSI Holdings and, as the First Amendment recognized, the SPA was documentation "required by [GSI] Holdings for all of its investors." Compl. Exh. D.

Tab 5 is a privilege log prepared for this litigation by counsel for GSI Holdings. Plaintiff points to two entries in the log, both of which reflect communications to lawyers at Covington & Burling, as well as to lawyers at Pepper Hamilton, one dated April 17, 2007 and the other dated May 4, 2007. Plaintiff suggests that the Covington lawyers were working for the Charlesbank Defendants in relation to the matters reflected in the two entries, even though Covington lawyers were engaged from time to time by GSI Holdings and its subsidiaries, as Plaintiff's counsel well knows from discovery, particularly in specialized areas such as employment law. Moreover, Plaintiff is unaware of the substance of the communications made to the Covington lawyers,

---

[4] See Pl. Br. at 5 ("On January 3, 2007, unbeknown to Plaintiff, the Charlesbank General Counsel delivered the share certificate into 'escrow' in a custodial account, notwithstanding that the Stock Purchase and Management Equity Agreement required that the Certificate be delivered to Plaintiff . . . ."); Pl. Br. at 8 ("That would explain delivering the share certificate into escrow immediately after it was prepared and six weeks before an audit was even requested.").

given the privilege assertion, although the subject matters are stated to have been the Second Amendment and the rescission of Mr. Segatt's stock purchase. The May email is dated the same date as the Second Amendment was signed, and may in fact, as far as one can tell from the log, have been sent after the execution of the Second Amendment.

### A. The "New Evidence" Does Not Support an Inference That Any of the Charlesbank Defendants Made Any Misrepresentation or Otherwise Defrauded Plaintiff.

Critically, the "new evidence" behind Tab 3 and Tab 5 fails to create or support any allegation that any of the Charlesbank Defendants made a misrepresentation to Plaintiff, or even had any contact with him, or otherwise orchestrated any fraud in connection with the rescission of his stock purchase.

Plaintiff suggests that the relevant legal question is whether the Charlesbank Defendants were "involved" in any way (Pl. Br. at 6) with Mr. Segatt's rescission. First, there are no particular allegations of any such involvement. But more importantly, Plaintiff's formulation misses critical developments in the securities case law from the Supreme Court. Under *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008), the real question is whether there are particular allegations by which Plaintiff shows contact with, or some other awareness of and reliance upon a deceptive act known to have been perpetrated by, the Charlesbank Defendants. *See id.* at 769 ("[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action"); *id.* at 769-70 (where "[n]o member of the investing public had knowledge, either actual or presumed," of a defendant's "own deceptive conduct," plaintiff could not "show reliance . . . except in an indirect chain . . . too remote for liability"). Here, there are no allegations to the effect that Plaintiff had contact with any of the Charlesbank Defendants in connection with the rescission of his share purchase, or otherwise was aware of and relied upon any deceptive act by any of them.

Relatedly, as demonstrated in our prior briefing, there can be no actionable omission, nor any duty to disclose, in the absence of any communication or transaction between the Charlesbank Defendants and Mr. Segatt. *See, e.g.*, *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 179 (2d Cir. 2001) ("It logically follows that just as knowledgeable corporate insiders have a fiduciary duty to disclose material facts *when entering stock deals with outsiders*, so do closed corporations buying their own stock.") (emphases added); *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992) ("reject[ing] the proposition that 'a corporation has an affirmative duty to disclose all material information even if there is no insider trading, no statute or regulation requiring disclosure, and no inaccurate, incomplete, or misleading prior disclosures'") (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 12 (1st Cir. 1990) (en banc)) (additional internal quotation omitted). *See also State Teachers Ret. Bd. v. Fluor Corp.*, 500 F. Supp. 278, 291 (S.D.N.Y. 1980) (similar), *rev'd on other grounds*, 654 F.2d 843 (2d Cir. 1981); 7 Louis Loss & Joel Seligman, *Securities Regulation* 3510-11 (3d ed. 2003) (similar); *Blanchard v. Edgemark Fin. Corp.*, No. 94 C 1890, 2001 WL 587861, at *5 (N.D. Ill. Mar. 12, 2001) ("'Mere nondisclosure, absent insider trading or some other collateral activity, will not establish a violation under Rule 10b-5.'") (quoting Cox, James D., Hazen, Thomas Lee & O'Neal, F. Hodge, *Corporations* § 12.11 (2000)); *Lindner Fund, Inc. v. Waldbaum, Inc.*, 82 N.Y.2d 219, 223 (1993) (similar).

In short, the ministerial transmittal of a stock certificate in compliance with the SPA, which itself was not alleged to have been induced by fraud, and which preceded the alleged fraud by several months, does not possibly support an inference that any of the Charlesbank Defendants engaged in fraud in relation to the Second Amendment. There likewise is absolutely nothing in the privilege log entries from which one could draw an inference of any fraud perpetrated by any of the Charlesbank Defendants, through their lawyers or otherwise. Not to

mention that the allegations and "new evidence" cannot possibly support a finding of reliance upon any deceptive act of any of the Charlesbank Defendants.

  B. *The "New Evidence" Does Not Support a Strong Inference That Any of the Charlesbank Defendants Acted with Scienter.*

  This "new evidence" also does nothing to establish a strong inference of scienter, nor culpable participation in a fraud which would be necessary for a control person claim.[5]  By contrast, there are more compelling non-fraudulent inferences from the ministerial delivery of a share certificate into escrow, including that the transmittal was made to comply with the explicit provision of the SPA requiring the certificate to be held in escrow.  The fact that legal advice was sought by GSI from lawyers at Covington likewise does not give rise to a strong inference of fraud — quite the opposite, as the most logical inference from a decision to seek legal advice is a desire to comply with, not flout, legal obligations.

  C. *Other "New Evidence," Not Specifically Identified By Plaintiff as Supporting Claims Against the Charlesbank Defendants, Likewise Does Not Bolster Plaintiff's Case.*

  The fact that the Charlesbank Defendants had representation on the board of GSI Holdings (Pl. Br. at 4 and Tab 1), was argued on the motions to dismiss.  *See, e.g.*, Pl. Op. Br. at 24; Charlesbank Reply Br. at 4.  This allegation therefore is not new and in any event does not possibly lead to an inference of any participation in a fraud, nor establishes a strong inference of fraudulent intent.

  With regard to the defendants generally, Plaintiff suggests that the audit of his improper business dealings evidences a fraudulent intent in relation to the rescission of his stock purchase,

---

[5] The state of mind of the control person must be knowing, or at least reckless.  *See In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 206 n.14 (S.D.N.Y. 2006) (citing *In re Livent Sec. Litig.*, 151 F. Supp. 2d 371, 417 (S.D.N.Y. 2001)); *Index Fund, Inc. v. Hagopian*, 609 F. Supp. 499, 506 (S.D.N.Y. 1985) ("defendant must have had actual knowledge of the violation, or the defendant must have had a fiduciary relationship with the plaintiff and have acted recklessly").

*see* Pl. Br. at 8 and Tab 4, but any logic in this inference is elusive and unexplained.  The most reasonable inference from the audit is that it was an effort to understand the nature and scope of Plaintiff's improper business dealings, not that it was a subterfuge to prepare a foundation for defrauding one executive (out of many at GSI) in order to increase immaterially the merger consideration received by other shareholders.  Finally, Plaintiff suggests that fraudulent intent was evidenced by a remark made by the GSI Group's CFO noting that the rescission benefited shareholders by decreasing dilution.  But the CFO noted only a mathematical fact, and his comment was uttered weeks *after* the rescission was completed.  It is not evidence of any fraudulent intent that must have been formed, to be actionable, *prior* to the rescission.  In any event, these latter "new facts" do not involve the Charlesbank Defendants and therefore undeniably do not strengthen any claim against them.

### Conclusion

For the reasons stated above, as well as those previously stated in support of the Charlesbank Defendants' motion to dismiss, Plaintiff's motion to vacate the judgment, for reconsideration and to amend his complaint should be denied.

Dated:  August 20, 2008

Respectfully submitted,

COVINGTON & BURLING LLP

By: s/  David W. Haller
         David W. Haller

The New York Times Building
620 Eighth Avenue
New York, New York  10018-1405
(212) 841-1000

*Attorneys for the Charlesbank Defendants*