UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LEONARDO SEGATT | : |
|               Plaintiff, | : |
| v. | :   07 CV 11413 (WHP) |
| GSI HOLDINGS CORP., et. al. | : |
|               Defendants. | : |

---

**DEFENDANTS GSI HOLDINGS CORP. AND WILLIAM J.
BRANCH'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT, RECONSIDERATION
<u>AND LEAVE TO AMEND AND SUPPLEMENT COMPLAINT</u>**

                                          Angelo A. Stio, III (AS 7880)
                                          Pepper Hamilton LLP
                                          Suite 400
                                          301 Carnegie Center
                                          Princeton, NJ 08543-5276
                                          (609) 452-0808

                                          Joseph C. Crawford (admitted *pro hac vice*)
                                          Frank H. Griffin, IV (admitted *pro hac vice*)
                                          Pepper Hamilton LLP
                                          Two Logan Square
                                          Eighteenth & Arch Streets
                                          Philadelphia, PA 19103
                                          (215) 981-4000

                                          *Attorneys for Defendants GSI Holdings Corp*
                                          *and William J. Branch*

August 25, 2008

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT............................................................................................................... 2

     A.   Standard of Review ............................................................................................. 2

     B.   The Court Correctly Found that Segatt Could Not Adequately Plead Scienter
          Under the PSLRA................................................................................................ 3

          1.   Segatt's "New Evidence" Regarding the Escrowed Share Certificate is
               Immaterial to the Court's Scienter Holding .................................................. 3

          2.   Segatt's "New Evidence" Regarding the Rokembach Audit is Duplicative of
               His Prior Arguments to the Court ................................................................ 4

          3.   Segatt's "New Evidence" Regarding the Merger Process is Immaterial to the
               Court's Scienter Holding.............................................................................. 5

          4.   Segatt's "New Evidence" Regarding GSI Shareholders Is Immaterial to the
               Court's Scienter Holding.............................................................................. 7

     C.   Segatt's New Theories Do Not Provide Any "Cogent and Compelling" Inference
          of Scienter........................................................................................................... 8

III. CONCLUSION.......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Donovan v. Sovereign Sec. Ltd.,
  726 F.2d 55 (2d Cir. 1984)..................................................................................2, 5

Harris v. Wu-Tang Productions, Inc.,
  No. 05 Civ. 3157, 2006 WL 1677127 (S.D.N.Y. June 16, 2006)...............................2

Nat'l Petrochemical Co. v. M/T Stoldt,
  930 F.2d 240 (2d Cir. 1991).......................................................................................3

Nemaizer v. Baker,
  793 F.2d 58 (2d Cir. 1986).........................................................................................3

Powers v. British Vita, P.L.C.
  57 F.3d 176 (2d Cir. 1995).........................................................................................4

Segatt v. GSI Holdings Corp., et. al.,
  No 07 Civ. 11413 (WHP) (S.D.N.Y Aug. 1, 2008)............................................ passim

Shrader v. CSX Transp., Inc.,
  70 F.3d 255 (2d Cir. 1995).........................................................................................2

**RULES**

Federal Rule of Civil Procedure 15(a) ..............................................................................3

Federal Rules of Civil Procedure 15(d) ............................................................................3

Federal Rules of Civil Procedure 59(e) ............................................................................3

Federal Rules of Civil Procedure 60(b) ............................................................................3

Local Rule 6.3...................................................................................................................3

## I. INTRODUCTION

On August 1, 2008, the Court correctly dismissed Plaintiff Leonardo Segatt's ("Segatt") Complaint in its entirety. The Court held that Segatt had failed to state a claim under Section 10(b) of the Securities and Exchange Act in connection with the May 2007 rescission of his Stock Purchase Agreement because: (1) the Complaint failed to demonstrate that any actionable misrepresentation was ever made to Segatt regarding his GSI shares; and (2) the Complaint failed to allege facts that demonstrated a "strong inference" that GSI Holdings Corp. or William Branch ("GSI Defendants") intended to defraud Segatt by failing to disclose additional information regarding a potential sale of GSI in 2007. The Court also held that the Charlesbank Defendants did not participate in the alleged fraud regarding the rescission of Segatt's Stock Purchase Agreement.[1]

Segatt now brings this motion, asking the Court to reconsider and vacate – with respect to GSI Defendants – its order dismissing his securities fraud claim for failure to plead scienter. Segatt does not contend that this Court made any legal error in its prior ruling. He also does not claim that the Court erroneously overlooked or misunderstood any of the Complaint's allegations. Rather, he argues that he is now able to show scienter on the basis of "newly discovered evidence," in the form of ten documents (out of 70,000) that were produced to him during the three months of discovery prior to the Court's ruling.

Segatt's motion fails to demonstrate the "exceptional circumstances" that he "admittedly" must show for this "extraordinary judicial relief." Pl.'s Mot. for Reconsideration at 3 ("Br."). In reality, the Court meticulously analyzed and anticipated all of the material facts

---

[1] The GSI Defendants incorporate by reference the arguments made by the Charlesbank Defendants in opposition to Plaintiff's Motion for Reconsideration.

relevant to scienter. There is nothing new in Segatt's supposed "new evidence". Each of the ten documents that Segatt refers to as "new evidence" is completely consistent with the Court's decision and the GSI Defendants' prior arguments. Not one of the ten documents provides any basis for a rational inference of scienter, much less the "cogent and compelling" inference of scienter required under the Private Securities Litigation Reform Act ("PSLRA"). See August 1, 2008 Op. and Or. ("Op.") at 9 (and cases cited therein).

Nothing in the documents changes the admissions that compelled the Complaint's dismissal:

1. GSI told Segatt in September 2006 while negotiating the Stock Purchase Agreement that GSI might be sold in 2007;

2. GSI never made any affirmative misrepresentation to Segatt about the possibility of a sale; and

3. On the day he rescinded the Stock Purchase Agreement, May 4, 2007, Segatt confirmed to Mr. Branch in writing that he knew that his shares would be worth much more when GSI was sold.

Segatt's motion for reconsideration should be denied.

## II.   ARGUMENT

### A.   Standard of Review

In the this Circuit, motions for reconsideration are reviewed under a "strict" standard and are rarely granted. E.g., Harris v. Wu-Tang Productions, Inc., No. 05 Civ. 3157, 2006 WL 1677127, at *2 (S.D.N.Y. June 16, 2006) (Pauley, J.). Such a motion "'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Id. quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Further, a motion for reconsideration may not be used to "relitigate matters settled by the original judgment." Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 60 (2d Cir. 1984). Thus, to

the extent that Segatt's motion seeks to relitigate what the Court has already decided, he is precluded by Local Rule 6.3.

More importantly, Segatt seeks the "extraordinary judicial relief" of vacating and setting aside the Court's final judgment based on "newly discovered evidence" pursuant to Federal Rules of Civil Procedure 59(e) and/or 60(b).[2]  Br. at 2.  As Segatt acknowledges, such a motion can only be granted only upon a showing of "exceptional circumstances."  Id.; Nemaizer v. Baker, 793 F.2d 58, 61  (2d Cir. 1986)

Here, when one examines each of the ten documents that comprise Segatt's supposed "new evidence," it becomes quite clear that the Court considered that Segatt had alleged (or might allege) the very facts that Segatt now seeks to portray as "new evidence".  Put simply, the Court correctly found that the facts alleged in Plaintiff's detailed, but legally insufficient Complaint did not provide any basis for a clear and cogent inference of scienter.

### B. The Court Correctly Found that Segatt Could Not Adequately Plead Scienter Under the PSLRA

#### 1. Segatt's "New Evidence" Regarding the Escrowed Share Certificate is Immaterial to the Court's Scienter Holding

Segatt has offered two documents demonstrating that GSI executed the share purchase agreement and issued a GSI share certificate in Segatt's name on December 28, 2006 (Ex. 2), and that this share certificate was placed in escrow on January 3, 2007 (Ex. 3).

---

[2] Segatt also seeks leave to amend or supplement his Complaint pursuant to Federal Rule of Civil Procedure 15(a) and/or 15(d).  However, before the Court even reaches the question of whether Segatt can amend his Complaint, the Court must conclude that the current Judgment must be vacated.  See Nat'l Petrochemical Co. v. M/T Stoldt, 930 F.2d 240, 245 (2d Cir. 1991).  Because Segatt cannot demonstrate that "extraordinary circumstances" warrant vacating the Judgment, the Court need not reach the question of his entitlement to amend the Complaint.

These documents are entirely consistent with the Court's ruling. Segatt's Complaint repeatedly alleged that GSI did not return a fully executed share purchase agreement and did not deliver the share certificate to him. Compl. ¶¶ 25, 28, 38. The Court not only accepted these allegations as true, see Op. at 3-4, but also held that the language of the Rescission Agreement sufficiently demonstrated that a share certificate existed. Id. at 6-7. In addition, even if the Court assumed that GSI was obligated to send a share certificate to Segatt under Section 2.2 of the Stock Purchase Agreement (see Compl. ¶ 19), GSI's failure to do so could not demonstrate scienter under the Court's prior holding, because it would be, at most, "the mere non-performance of [a] promise…." Op. at 12 citing Powers v. British Vita, P.L.C., 57 F.3d 176, 185 (2d Cir. 1995). Nothing in the new documents warrants reconsideration of this conclusion.

Even more fundamentally, GSI's delivery of Segatt's share certificate to an escrow agent was consistent with Section 5.2(b) of the Stock Purchase Agreement, which provided that GSI shares would be held in escrow until such time as GSI no longer held any right to repurchase those shares. Compl. Ex. C § 5.2(b). Thus, Exhibit 3 now affirmatively demonstrates that GSI was acting consistent with the terms of the SPA in January 2007, and that withholding delivery of the share certificate is not evidence of any intent to defraud Segatt.

### 2. Segatt's "New Evidence" Regarding the Rokembach Audit is Duplicative of His Prior Arguments to the Court

Segatt's exhibits include two documents relating to a 2007 audit by an accounting firm of transactions between Agromarau and companies affiliated with Segatt ("Rokembach audit"). Exhibit 4 is an email showing that GSI requested the Rokembach audit in February 2007. Exhibit 5 – GSI Defendants' privilege log – shows that GSI consulted with its lawyers regarding the Rokembach audit once it was completed.

Segatt contends that these documents are "new evidence" relating to Defendants' position that Segatt breached his Non-Competition and Consulting Agreement ("Consulting Agreement"). Br. at 6-7. However, as Segatt acknowledges, the Charlesbank Defendants referred to this audit relating to the Consulting Agreement in their motion to dismiss. Br. at 6. In his opposition papers and in oral argument, Segatt argued that the Rokembach audit provided evidence of scienter, but the Court considered and properly rejected his arguments. See Pl.'s Opp. to Mot. to Dismiss at 17 (arguing that Defendants' position regarding a breach of the Consulting Agreement "accounts for an *animus* or antipathy that explains the Defendants' scienter."); May 9, 2007 Trans. at 22 (arguing that Defendants "are angry" because of breach of Consulting Agreement).

Segatt may not use this motion to "relitigate matters settled by the original judgment." Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 60 (2d Cir. 1984). In any event, the fact that GSI chose to retain an accounting firm to audit Segatt's transactions with its subsidiary (Agromarau) provides no rational basis for an inference of scienter. Accordingly, the "new evidence" regarding the Rokembach audit does not warrant reconsideration of the prior holding.

### 3. Segatt's "New Evidence" Regarding the Merger Process is Immaterial to the Court's Scienter Holding

Segatt offers three documents to prove only what the Court expressly considered in its Opinion: that Defendants did not disclose to Segatt the precise status of the potential sale or merger of GSI as of April or May of 2007. These new Segatt documents are (a) a March 2007 draft of a generic shell GSI merger agreement with no parties or economic terms included (Ex. 6); (b) an April 4, 2007 email from UBS to Charlesbank representatives enclosing "initial bids" received to purchase GSI (Ex. 7); and (c) a May 9, 2007 email from UBS to Charlesbank representatives enclosing "second round" bids to purchase GSI (Ex. 8).

These documents are entirely consistent with the Court's prior holding. As an initial matter, the Court's opinion expressly considered the likelihood of a sale of GSI as of May 2007. See Op. at 8 ("[A]ccepting the alleged facts as true and construing all reasonable inferences in Segatt's favor, in May 2007 a sale may have been more than just a possibility.") Indeed, the Court explicitly stated that GSI "likely knew that it might receive significantly more than $150 per share" in a potential merger by May 2007. Op. at 13. The April and May bids received by GSI show offers in the $400-600/ range, and are therefore consistent with the Court's logic. Ex. 7 at 5; Ex. 8 at 5. Thus, the documents merely confirm the Court's explicit holding.

In addition, the Court accurately concluded that Mr. Branch "could not have known [in May 2007] whether the merger would occur, what specific price he would receive for his shares, or what the terms of the merger would be." Op. at 11. Plaintiffs Exhibits 7 and 8 actually show that Centerbridge Partners did not make any offer to purchase GSI before May 9, 2007. Pl's Ex. 7 at 5; Ex. 8 at 5. Thus, Mr. Branch could not have known that GSI would be sold to Centerbridge two months later, much less know the terms of that future agreement at the time of the alleged fraud.

Fundamentally, the Court quite clearly based its decision on the absence of any rational basis for an inference of scienter, **not** on the question of whether GSI had received preliminary sale or merger proposals as of April or May, 2007. The Court correctly assumed that GSI had received such proposals, and properly concluded that Segatt simply had not pled any facts that supported the essential element of scienter.

### 4. Segatt's "New Evidence" Regarding GSI Shareholders Is Immaterial to the Court's Scienter Holding

Segatt has also offered two documents relating to GSI's shareholders and the value of their shareholdings after the execution of the Rescission Agreement. Segatt Ex. 10 is a chart of GSI Shareholdings as of June 1, 2007. Segatt Exhibit 9 is a May 19, 2007 e-mail from John Henderson to Andrew Janower in which Mr. Henderson (GSI's Chief Financial Officer) observes that Segatt no longer owns GSI stock and that "[b]uying back his 3,072 at the $150 per share helps all shareholders benefit from less dilution."

In dismissing the Complaint, the Court recognized the basic mathematical fact that Mr. Henderson acknowledged fifteen days <u>after</u> the rescission of Segatt's share purchase agreement: the cancellation of any GSI shares necessarily had the effect of increasing the gain that all other GSI shareholders realized in the July 2007 Centerbridge merger. Op. at 13. However, the Court concluded that this benefit, which was common to all GSI shareholders and, indeed, inevitable in any transaction in which a corporation re-purchases shares, was insufficient to demonstrate scienter in light of the Complaint's other allegations.

Exhibit 10 confirms this. As of July 1, 2007 there were 565,484 outstanding shares of GSI Holdings, of which Segatt's 3,072 shares would have represented a tiny fraction (far less than one percent) of the total shares outstanding. Assuming (for the sake of this motion) the accuracy of Plaintiff's allegation that Centerbridge purchased GSI shares at $700 per share, the price to purchase 100% of GSI in July 2007 would have exceeded $395 million. In this context, it defies logic to infer that a general desire to benefit all GSI shareholders through incrementally reduced dilution actually motivated the GSI Defendants to intentionally defraud Segatt into rescinding his shares.

-7-

This is particularly true when one considers that Segatt admits that in September 2006 he was expressly told that GSI hoped to sell the company in 2007 and GSI never misrepresented that intention to him at any time.  In addition, Exhibit 1 – a copy of November 2006 minutes of the meeting of GSI's directors – confirms that GSI retained UBS to pursue a possible sale in November 2006, before GSI even agreed to the Stock Purchase Agreement.  If, contrary to fact, GSI had been truly motivated by a desire to exclude Segatt from the benefit of a subsequent merger, GSI would never have signed the Stock Purchase Agreement on December 28, 2006..  Once again, Segatt's "new evidence" remains consistent with the Court's scienter holding.

        **C.**     **Segatt's New Theories Do Not Provide Any "Cogent and Compelling" Inference of Scienter**

Finally, viewing the documents collectively, Segatt's motion for reconsideration presents two alternate theories of scienter based entirely on speculation: (1) that the GSI Defendants became "envious and annoyed" of Segatt's shareholdings in light of the Rokembach audit; or (2) that GSI Defendants had a secret plan to acquire Segatt's Agromarau quotas "at a low price" and then refuse to deliver the GSI shares.  Br. at 6-7.  Neither of these notions provides any rational basis for an inference of scienter – far less than the "cogent and compelling" requisite for pleading under the PSLRA.

GSI's decision to engage an accounting firm to review transactions between Agromarau and Segatt's other companies does not provide a basis for the Court to conclude that GSI intended to defraud Segatt.  To the contrary, the retention of an outside auditor demonstrates the intent to perform a conventional business practice.  At the time the audit was performed, GSI had already disclosed to Segatt its intention to sell the company in 2007.  Complaint ¶56.  Segatt knew that GSI had offered him "the prospect of a future profit on GSI Holdings shares."  Br. at

6. In fact, Segatt confirmed to GSI Defendants that he was forgoing that future profit in his May 4, 2007 email to Mr. Branch.

In addition, Segatt concedes that the GSI officers involved with the rescission "were among the ten largest individual shareholders of GSI Holdings." Br. at 6. Given that these GSI officers had such large shareholdings, it makes no sense to argue that these same officers were somehow "envious" of Segatt's shareholdings simply because they were the largest "at the operating subsidiary level." Br. at 7. Segatt's assertion belies logic. Contrary to Segatt's baseless speculation, if Mr. Branch or other GSI officers felt envious about Segatt's potential GSI shareholdings, then GSI obviously would never have offered the shares to Segatt in the first place.

Segatt's second notion fares even worse. GSI could not have hatched a secret plan to defraud Segatt, as GSI had no opportunity to acquire Plaintiff's Agromarau quotas at an artificially "low price." Br. at 7-8. As the Separation Agreement acknowledges, GSI was obligated to pay Segatt for his Agromarau quotas "amounts determined" by Section 10 of his January 1, 2002 contract entitled "Pledge of Assignment of Quotas and Other Provisions." Compl. Ex. A. at 2. In other words, Segatt was always going to receive a contractually-mandated formula payment for his Agromarau quotas, whether in the form of cash or GSI Holdings shares. GSI was not in any position to negotiate a lower price in exchange for GSI Holdings shares. If, contrary to fact, Segatt had given GSI a "discount" in order to receive GSI shares, then nothing would have prevented him from demanding additional cash when GSI requested rescission in May of 2007.

Finally, the Court must evaluate Segatt's alternate notions of scienter in the context of the Complaint's allegations and the Court's prior holding. That context includes

GSI's September 2006 disclosure to Segatt of a potential 2007 sale of GSI while negotiating the Stock Purchase Agreement, as well as Segatt's written statement to GSI on the very day of the rescission that he knew his GSI shares would be worth much more when GSI was sold. Op. at 2, 4. The proper context is also articulated in the Court's conclusion – which Segatt has not challenged – that no Defendant made any actionable misrepresentation in connection with the Rescission Agreement. In this context, the only cogent and compelling inference is that GSI Defendants reasonably believed that (a) Segatt knew that GSI might be sold in 2007 and (b) Segatt understood that he stood to make a substantial profit on his GSI shares in any potential sale. Nevertheless, Segatt chose to consent to GSI's request for rescission in order to preserve the other business relationships referred to in paragraph 30 of the Complaint.

## III.    CONCLUSION

The Court's August 1, 2008 Opinion and Order thoroughly analyzed and correctly rejected all of the assertions that Segatt now attempts to recycle as "new evidence."

The Court properly determined that Segatt failed to provide any rational basis for an inference of scienter, much less the "cogent and compelling" inference of scienter that the Private Securities Litigation Reform Act requires.

Segatt's motion for reconsideration should be denied, and the judgment left undisturbed.

                Respectfully submitted,

                <u>Joseph C. Crawford /s/</u>
                Angelo A. Stio, III (AS 7880)
                Pepper Hamilton LLP
                Suite 400
                301 Carnegie Center
                Princeton, NJ 08543-5276
                (609) 452-0808

                Joseph C. Crawford (admitted *pro hac vice*)
                Frank H. Griffin, IV (admitted *pro hac vice*)
                Pepper Hamilton LLP
                Two Logan Square
                Eighteenth & Arch Streets
                Philadelphia, PA 19103
                (215) 981-4000

August 25, 2008           *Attorneys for Defendants GSI Holdings Corp and William J. Branch*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August 2008, a copy of the foregoing Memorandum in Opposition to Plaintiff's Motion for Relief from Judgment, Reconsideration, and Leave to Amend and Supplement the Complaint was served on counsel identified below by filing the document on the Court's ECF system, where it is available for viewing and downloading, and by electronic mail.

> Mark P. Zimmett
> Law Offices of Mark P. Zimmett
> 126 East 56th Street
> New York, New York 10022
>
> *Attorney for Plaintiff*
>
> David W. Haller
> Covington & Burling LLP
> The New York Times Building
> 620 Eighth Avenue
> New York, NY 10018
>
> *Attorneys for the Charlesbank Defendants*

                                                         __/s/ Frank H. Griffin, IV_____
                                                         Frank H. Griffin, IV