```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
LEONARDO SEGATT,              :
                              :
              Plaintiff,      :    07 Civ. 11413 (WHP)
                              :
     -against-                :    MEMORANDUM AND ORDER
                              :
GSI HOLDING CORP. et. al.,    :
                              :
              Defendants.     :
                              :
------------------------------X
```

10/3/08

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Leonardo Segatt ("Segatt") brings this action against Defendants GSI Holdings Corp. ("GSI"); William J. Branch ("Branch"); and several related entities that together constituted a majority shareholder of GSI (collectively the "Charlesbank Defendants"). On August 1, 2008, this Court granted the Defendants' motions to dismiss (the "August Memorandum and Order") and dismissed the complaint in its entirety. On August 4, 2008, the Clerk of the Court issued judgment in favor of the Defendants. Segatt now moves for reconsideration, or alternatively, to set aside or vacate the judgment, and for leave to amend or supplement the complaint. For the following reasons, the Court grants Segatt's motion to vacate the judgment and amend his complaint and denies his motion for reconsideration.

BACKGROUND

        The background of this action is set forth in the August Memorandum and Order, and the Court will repeat only those facts that are necessary.

Segatt asserted claims for violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq., and Rule 10b-5 thereunder, violations of § 20(a) of the Securities Act of 1933, 15 U.S.C. § 77 et seq., and several state law claims. As to the § 10(b) claims, the Court found that the Complaint failed to allege any actionable misrepresentation, but that the alleged facts were sufficient to show that there may have been material information that Branch and GSI had a duty to, but failed to, disclose to Segatt. Segatt v. GSI Holding Corp., No. 07 Civ. 11413 (WHP), 2008 WL 2971519, at *3-4 (S.D.N.Y. Aug. 1, 2008). However, the Court dismissed the § 10(b) claims against both Branch and GSI because the Complaint failed to allege facts sufficient to give rise to a strong inference of scienter. Segatt, 2008 WL 2971519, at *6-7. The Court also dismissed the § 10(b) claims against the Charlesbank Defendants, finding that the Complaint failed to allege facts sufficient to demonstrate that the Charlesbank Defendants had a duty to disclose material information to Segatt. Segatt, 2008 WL 2971519, at *5.

Segatt submits certain documents he received from Defendants while the motions to dismiss were pending and a proposed amended complaint.[1] The new allegations are summarized below.

I. The Rescission of Segatt's GSI Stock Purchase

Pursuant to his separation agreement with Agromarau Industria e Comercio Ltd ("Agromarau"), an indirect subsidiary of GSI, in December 2006, Segatt wire transferred payment for 3,072 GSI shares at $150 per share. He never received stock certificates for those shares. Segatt, 2008 WL 2971519, at *1. Segatt telephoned and e-mailed Branch, and Claudio

---

[1] On October 8, 2008, after the completion of briefing, Segatt submitted additional documents, which Defendants produced earlier that day, for this Court's consideration. Because those documents were inadvertently omitted from Defendants' earlier production of documents, this Court will consider them.

2

Moretti, a lawyer for Agromarau, several times between February and April 2007 regarding the status of the stock certificates, but he did not receive a response. Segatt, 2008 WL 2971519, at *1. On May 4, 2007, Segatt met with Ingo Erhardt, the general manager of Agromarau, who among other things, told Segatt that the funds Segatt had transferred to purchase the GSI shares were in a segregated account that Branch had forgotten about. Segatt, 2008 WL 2971519, at *2. Segatt then signed a second amendment to his separation agreement (the "Second Amendment"), agreeing to rescind his GSI stock purchase. Segatt, 2008 WL 2971519, at *2.

Segatt now alleges that GSI issued a stock certificate in his name on December 28, 2006, and that on January 3, 2007, Defendant Charlesbank Capital Partners LLC delivered the stock certificate into escrow. (Undated Proposed Amended and Supplemental Complaint ("Proposed Amended Complaint") ¶ 28.1.) In addition, contrary to what Erhardt told him, Segatt's money had not been held in a segregated account. (Proposed Amended Complaint ¶ 43.1.)

Segatt also now alleges that after he signed the Second Amendment, Erhardt e-mailed Branch stating that he believed Branch "should have a wonderful weekend" because Erhardt was bringing the "signed contract with Leo [Segatt]." (Proposed Amended Complaint ¶ 37.1.) Branch responded: "You are my hero! I plan to buy you the best fried pork cutlet sandwich Assumption [Illinois] has to offer." (Proposed Amended Complaint ¶ 37.2.)

II. The Audit

Segatt asserts that on February 17, 2007, GSI's chief financial officer, John Henderson, asked Rafael Coletta, the Comptroller of Agromarau, to arrange for an audit of related-party transactions between Agromarau and companies in which Segatt had an interest

(the "Audit"). (Proposed Amended Complaint ¶ 28.2.) Between March 12, 2007 and May 4, 2007, Branch, Henderson, Coletta and/or Erhardt corresponded with outside attorneys over twenty times regarding the Audit, the Second Amendment, and the rescission of Segatt's stock purchase. (Proposed Amended Complaint ¶ 28.3.) Two of those e-mail conversations involved attorneys from Covington & Burling LLP, counsel for the Charlesbank Defendants in this action. (Proposed Amended Complaint ¶ 28.3.) In addition, on March 8, 2007, Andrew Janower ("Janower") of Charlesbank Partners, one of the Charlesbank Defendants, e-mailed Branch asking him whether there was "anything to be done with [Segatt's stock]" and stating that if Erhardt and Branch were "inclined to try for a clawback, sooner is probably better than later . . . ." (Segatt's letter dated Oct. 8, 2008.) On May 19, 2007, Henderson notified Janower that GSI had returned Segatt's money and explained that "[b]uying back his 3,072 shares at the $150.00 per share helps all shareholders benefit from less dilution." (Proposed Amended Complaint ¶ 42.1.)

III. Merger

On June 25, 2007, GSI announced that it had entered into an agreement (the "Merger Agreement") with Centerbridge Partners, L.P. ("Centerbridge"), which would acquire a majority stake in GSI for approximately $700 per share. Segatt, 2008 WL 2971519, at *2. GSI had conducted a staged auction process, with the final offers due on June 12, 2007. Segatt, 2008 WL 2971519, at *2.

Segatt now alleges that Defendants received initial bids on April 4, 2007 and a second round of bids on May 8, 2007. These bids were all over $500 per share. (Proposed Amended Complaint ¶ 47.1.) Segatt also alleges that GSI represented in the Merger Agreement

4

with Centerbridge Partners L.P. that no shares were ever issued to Segatt and that the Charlesbank Defendants agreed to indemnify Centerbridge for any claims arising from Segatt's stock purchase agreement. (Proposed Amended Complaint ¶¶ 52.1-52.2.)

DISCUSSION

I. Motion for Reconsideration

A motion for reconsideration pursuant to Local Rule 6.3 "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A party may not use a motion for reconsideration "to advance new theories or adduce new evidence in response to the court's rulings." De Los Santos v. Fingerson, No. 97 Civ. 3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998). Reconsideration is not an invitation for parties to "treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." De Los Santos, 1998 WL 788781, at *1. The standard for granting a motion for reconsideration is strict and the decision on such a motion is "within the sound discretion of the district court." Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276(DLC), 2004 WL 1857568, at *1 (S.D.N.Y. Aug. 18, 2004).

Because Segatt's motion for reconsideration is based entirely on new allegations that were not previously before the Court, the motion for reconsideration is denied.

II. <u>Motion to Amend</u>

"A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." <u>Ruotolo v. City of New York</u>, 514 F.3d 181, 191 (2d Cir. 2008). While Rule 59(e) of the Federal Rules of Civil Procedure does not prescribe specific grounds for granting a motion to alter or amend a judgment, "the movant must [either] present factual matters or controlling decisions the court overlooked that might materially have influenced its earlier decision ... [or] demonstrate the need to correct a clear error or prevent manifest injustice." <u>Sanluis Devs. L.L.C. v. CCP Sanluis L.L.C.</u>, 556 F. Supp. 2d 329, 332 (S.D.N.Y. 2008) (quoting <u>Griffin Indus. v. Petrojam, Ltd.</u>, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999)). Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a final judgment. The only subsection that could apply here is Rule 60(b)(6), which allows relief for "any reason that justifies relief." Rule 60(b) is "extraordinary judicial relief" and can be granted "only upon a showing of exceptional circumstances." <u>Nemaizer v. Baker</u>, 793 F.2d 58, 61 (2d Cir. 1986).

The Court of Appeals has noted that "in view of the provision in [R]ule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." <u>Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf</u>, 930 F.2d 240, 245 (2d Cir. 1991); <u>see also</u> <u>Ruotolo</u>, 514 F.3d at 191. Pursuant to Rule 15(a), if "the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999).

As an initial matter, Segatt failed to attach a copy of the Proposed Amended

Complaint to his original motion. "In order to meet the requirements of particularity in a motion to amend, 'a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.'" Zito v. Leasecomm Corp., No. 02 Civ. 8072 (GEL), 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004) (quoting Smith v. Planas, 151 F.R.D. 547, 550 (S.D.N.Y.1993)). However, the failure to file a proposed amended complaint "is not fatal where there is no undue prejudice to defendant." Fei v. WestLB AG, No. 07 Civ. 8785 (HB), 2008 WL 594768, at *2 (S.D.N.Y. Mar. 5, 2008); Christiana Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co., 745 F. Supp. 150, 164 (S.D.N.Y. 1990). Segatt's memorandum of law provides the basis for his Proposed Amended Complaint and attached the relevant documents. Moreover, Segatt attached the Proposed Amended Complaint to his reply papers; Defendants could have requested permission to file a sur-reply if the Proposed Amended Complaint raised additional issues. Accordingly, this Court finds that there is no undue prejudice to Defendants and will consider the Proposed Amended Complaint in deciding whether to grant relief under Rule 60(b).

Segatt asserts that the Proposed Amendment Complaint demonstrates: (1) the Charlesbank Defendants' involvement in the rescission of Segatt's stock purchase; and (2) that Defendants acted with scienter.

A. Charlesbank Defendants

To state a §10(b) claim, a plaintiff must allege, inter alia, that a defendant made misstatements or omissions of material fact. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 172 (2d Cir. 2005). A failure to disclose material information is actionable if the defendant had an affirmative duty to disclose those facts. Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 179 (2d Cir. 2001). A duty to disclose arises from a "relationship of trust and confidence

7

between parties to a transaction." Chiarella v. United States, 445 U.S. 222, 230 (1980). When a closely held corporation purchases its own stock from its shareholders, there is a "special obligation to disclose to sellers all material information." Castellano, 257 F.3d at 179.

The Court previously held that the Complaint failed to allege any facts demonstrating a "relationship of trust and confidence" between the Charlesbank Defendants and Segatt with regard to the rescission of Segatt's GSI stock purchase. However, the proposed allegations suggest that the Charlesbank Defendants may have been involved in the rescission of Segatt's shares—Janower specifically asked Branch about a rescission in March 2007 and he was later informed when the rescission was complete. In addition, one of the Charlesbank Defendants delivered Segatt's stock certificate into escrow. These facts may be sufficient to allege a "relationship of trust and confidence."

B. Scienter

"Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud or at least knowing misconduct." SEC v. First Jersey Sec., Inc, 101 F.3d 1450, 1467 (2d Cir. 1996). The Private Securities Litigation Reform Act requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant" acted with scienter. 15 U.S.C. § 78u-4(b)(2). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, 127 S. Ct. 2499, 2510 (2007). For an inference of scienter to be strong, "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 127 S. Ct. at 2510.

Scienter may be shown by motive and opportunity, or strong circumstantial evidence of conscious misbehavior or recklessness. Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996). In the absence of motive, the "strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater." Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001).

In the August Memorandum and Order, this Court found that Segatt failed to sufficiently plead strong circumstantial evidence of conscious misbehavior on the part of either Branch or GSI. The proposed allegations regarding the Audit and subsequent communications between Branch, Henderson, Coletta and/or Erhardt and outside counsel, between February and May 2007 regarding the Audit and rescission of Segatt's stock purchase suggest that Segatt may be able to plead circumstantial evidence of conscious misbehavior on the part of Branch and GSI. This is so particularly when these allegations are considered in light of the previous allegations that during the same time period Branch and Moretti ignored Segatt's e-mails and phone calls regarding the status of his stock purchase. In addition, the e-mail exchange between Erhardt and Branch immediately following Segatt's agreement to rescind his share purchase provides additional circumstantial evidence of Branch's conscious misbehavior.

The Court did not consider the allegations of scienter against the Charlesbank Defendants in the August Memorandum and Order. However, the inclusion of lawyers from Covington & Burling LLP, counsel for the Charlesbank Defendants in this action, in the conversations between February and May 2007, and the e-mail communication with Janower may provide circumstantial evidence of scienter.

Accordingly, because the Proposed Amended Complaint may plead sufficient facts to establish a relationship of trust and confidence between the Charlesbank Defendants and

9

Segatt and scienter as to all of the Defendants, the Court finds it in the interests of justice to grant Segatt's motion to vacate the judgment and allow him to replead.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to vacate the judgment and for leave to amend the complaint is granted. Plaintiff is directed to file an Amended Complaint by November 24, 2008. The Court will hold a status conference on December 5, 2008 at 10:15 a.m.

Dated: November 3, 2008
      New York, NY

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record*

Mark P. Zimmett, Esq.
126 East 56th Street
New York, NY 10022
*Counsel for Plaintiff*

Angelo Anthony Stio, III, Esq.
Pepper Hamilton LLP
301 Carnegie Center
Suite 400
Princeton, NJ 08543
*Counsel for Defendants GSI Holdings and William J. Branch*

David W. Haller, Esq.
Covington & Burling LLP
620 Eighth Ave.
New York, NY 10018